UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

CIV-JORDAN

MICHAEL PENZER, as assignee of
SOUTHEAST WIRELESS, INC.,

    Plaintiff,

v.

TRANSPORTATION INSURANCE
COMPANY, a wholly owned subsidiary
of CNA, a foreign corporation,

    Defendant.

_____/

## COMPLAINT

    Michael Penzer, as the assignee of Southeast Wireless, Inc. ("Plaintiff Penzer") hereby makes

the following allegations against Transportation Insurance Company, a wholly owned subsidiary of

CNA, ("Defendant"), and states as follows:

### NATURE OF ACTION

    1.    Plaintiff Penzer brings this case as the assignee of Southeast Wireless, Inc.

("Southeast") and pursuant to *Coblentz v. Am. Sur. Co. of New York*, 416 F. 2d 1059 (5th Cir. 1969)

("*Coblentz*"). Plaintiff Penzer and Southeast entered a *Coblentz* settlement agreement (the "Coblentz

Agreement"), based on Defendant's failure to provide a defense or coverage to Southeast in the class

action styled *Michael Penzer v Southeast Wireless, Inc.*, in the Circuit Court in the Seventeenth

Judicial Circuit, in and for Broward County, Florida, Case No. CACE 03-010994 (02) (the "Penzer

Action"). The Penzer Action asserted claims against Southeast under the Telephone Consumer

Protection Act, 47 U.S.C. §227(b)(1)(C) (the "TCPA" or the "Act").



CASE NO.:

2.      Pursuant to the *Coblentz* Agreement, and as alleged in detail below, Southeast consented to the entry of a judgment and assigned its rights to sue Defendant to Plaintiff Penzer.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) since the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is diversity of citizenship.  Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law, pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this District because the conduct complained of occurred within this jurisdiction.  Further, Defendant conducts, engages in and carries on a business or business venture in this District.

## PARTIES

5.      Plaintiff Penzer is a resident of Broward County, Florida, is over the age of eighteen (18) years, and is otherwise *sui juris*.

6.      Defendant is a foreign corporation with its principal place of business in Illinois.

## GENERAL ALLEGATIONS

## THE TELEPHONE CONSUMER PROTECTION ACT

7.      On December 20, 1991, Congress enacted the Act to govern and restrict telemarketing activities conducted via phone and facsimile.  Congress passed the Act based, in part, on the following findings:

(a)      The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

(b)      Over 30,000 businesses actively telemarket goods and services to business and residential customers.

2

CASE NO.:

(c)     More than 300,000 solicitors call more than 18,000,000 Americans every day.

(d)     Total United States sales generated through telemarketing amounted to $435,000,000,000 in 1990, a more than four-fold increase since 1984.

(e)     Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(f)     Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

(g)     The U.S. Constitution does not prohibit restrictions on commercial telemarketing solicitations.

(h)     Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

(i)     Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

(j)     Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

(k)     Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

(l)     Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.[1]

8.     The transmission of unsolicited advertisements via facsimile violates a person's right to privacy.

---

[1]     Section 2 of Pub. L. 102-243 (Congressional Statement of Findings).

CASE NO.:

9.      The Act makes it "unlawful for any person in the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. §227(b)(1)(C).

10.     The Act also allows a person or entity to bring in state court an action based on a violation of the Act and to (a) enjoin such conduct and (b) recover the greater of the actual loss suffered by such violation or $500 in damages for each such violation. 47 U.S.C. §227(b)(3)(A-C).

11.     Florida courts permit private individuals to bring a claim under the TCPA in state court.

**THE PENZER ACTION**

12.     Plaintiff Penzer is the owner of a facsimile machine, which is attached to telephone number (954) 454-8030.  On or about May 23, 2003, Southeast caused to be transmitted an unsolicited advertisement to Plaintiff Penzer in violation of the Act.  *See* Exhibit "A" attached hereto.[2]  Plaintiff Penzer did not give Southeast prior express permission or an invitation to send the unsolicited facsimile advertisement.

13.     On or about June 25, 2003, Plaintiff Penzer filed a Class Action Complaint against Nextel Communications, Inc., as Nextel was the only party identified in the Fax.

14.     On or about November 26, 2003, Nextel filed a Third-Party Complaint in the Penzer Action against Southeast, pursuant to which Nextel sought from Southeast indemnity and

---

[2]      Upon calling the phone number listed on Exhibit A, the caller heard the following voice-mail message: "Thank you for responding to our exclusive Nextel Fax Offer. Due to the overwhelming response we are unable to personally take your call. Please leave your name, phone number and the best time to call you back". Phone messages are returned by Defendant's authorized agents, including but not necessarily limited to, "Mobile One", which is located at 2 Oakwood Boulevard, Hollywood, Florida 33021."

contribution for Plaintiff Penzer's claims against Nextel. Southeast was and is an agent of Nextel. Southeast caused its agent to send the unsolicited facsimile advertisement to Plaintiff Penzer.

15.    On December 2, 2003, Southeast submitted Plaintiff Penzer's Class Action Complaint to Defendant, its insurer, and requested that Defendant provide a defense to Plaintiff Penzer's claims. *See* Southeast's December 2, 2003 Correspondence to Defendant attached hereto as Exhibit B. Southeast made such request pursuant to a contract of insurance issued by Defendant for the benefit of Southeast. *See* Contract of Insurance attached hereto as Exhibit C.

16.    On December 12, 2003, Plaintiff Penzer filed a Third-Party Class Action complaint against Southeast. *See* Plaintiff Penzer's Complaint attached hereto as Exhibit D.

17.    On December 18, 2004, Defendant acknowledged its receipt of Southeast's December 2. 2003 correspondence and the accompanying copy of Plaintiff Penzer's Class Action Complaint. *See* Defendant's December 18, 2003 correspondence to Southeast attached hereto as Exhibit E. In refusing to provide Southeast a defense to Plaintiff Penzer's Complaint, Defendant stated as follows:

> Transportation Insurance Company, at this time, is not in a position to either accept or reject your request for a defense in the above-referenced matter on behalf of Southeast Wireless, Inc. We are presently reviewing the coverage afforded under the policy issued to Southeast Wireless, Inc., and are evaluating the allegations with the facts, as far as they are known to us, with the provisions of the policy. . . . Since there may be a question of coverage on this claim we want to make it clear that Transportation Insurance Company will not take any action on behalf of Southeast Wireless, Inc. at this time.

*Id.*

18.    On February 3, 2004, Southeast again contacted Defendant. *See* Southeast's February 3, 2004 Correspondence to Defendant's counsel, attached hereto as Exhibit F.

19.    Defendant received Southeast's February 3, 2004 correspondence. *See* Executed Return Receipt Card attached hereto as Exhibit G.

CASE NO.:

20.     Southeast's February 3, 2004 correspondence (a) reminded Defendant that Southeast had previously submitted Plaintiff Penzer's Class Action Complaint through which Nextel sought indemnity from Southeast, (b) provided a copy of Plaintiff Penzer's Third-Party Class Action Complaint through which Plaintiff Penzer asserted claims against Southeast, (c) enclosed a copy of Southeast's Civil Remedy Notice to the Florida Department of Insurance based on Defendant's failure to provide a defense, and (d) placed Defendant on notice that it was in breach of the insurance contract.

21.     Defendant never responded, in any manner, to Southeast's February 3, 2004 correspondence, never provided a defense to Southeast for the claims asserted against it in the Penzer Action, and never provided any coverage. Defendant also never responded to the Civil Remedy Notice filed by Southeast with the Florida Department of Insurance. *See* Civil Remedy Notice attached hereto as Exhibit M, and Return Receipt Card for Civil Remedy Notice attached hereto as Exhibit N.

22.     During this time period, Southeast, through its counsel, investigated the factual allegations against it and the applicable law.

23.     Southeast's investigation, and Plaintiff Penzer's discovery, revealed that Southeast had entered a contract with a third-party that engaged in fax advertising. Pursuant to the contract, the third-party transmitted on behalf of Southeast a total 24,000 unsolicited facsimile advertisements to persons in South Florida during May 2003 and July 2003 who did not give Southeast, Nextel, or any agent of Southeast or Nextel, their prior express permission or invitation to send such fax advertisements.

24.     Recognizing the time, cost and expense of litigation, the fact that its insurer – Defendant – refused to provide Southeast with a defense as required by the Contract of Insurance, the

CASE NO.:

potential for a substantial damage award against it, and noting a Florida court had previously granted class certification of a similar TCPA claim in the matter styled *Penzer v. MSI Marketing*, Case No.: 01-30868 CA 32 (Eleventh Judicial Circuit in and for Miami Dade County, Florida May 14, 2002)(order certifying class action) (*see* Exhibit H hereto)[3], Southeast agreed to enter into good faith, arm's length settlement negotiations with counsel for Plaintiff Penzer to resolve the Penzer Action.

25.     Plaintiff Penzer and Southeast, with the assistance of counsel for Nextel, then engaged in protracted and arms-length settlement negotiations. Ultimately, Plaintiff Penzer and Southeast agreed to settle the Penzer Action through a class action settlement. *See* Class Action Settlement Agreement attached hereto as Exhibit I.

26.     The basis of the Class Action Settlement Agreement is the *Coblentz* Agreement between and among Plaintiff Penzer and Southeast, pursuant to which Southeast consented to a judgment in the amount of twelve million dollars ($12,000,000)[4] and assigned its rights to Plaintiff Penzer to pursue Defendant for such amount. *See* Consent Judgment attached hereto as Exhibit J and Assignment attached hereto as Exhibit K.

27.     The court in the Penzer Action approved the settlement of the class action lawsuit, including the Coblentz Agreement, and specifically determined it was "a fair, reasonable, and adequate settlement of th[e] case in light of the factual, legal, practical, and procedural considerations raised by th[e] case." *See* August 9, 2004 Agreed Final Order Approving Settlement,

---

3     Counsel for Plaintiff Penzer provided counsel for Southeast with a copy of this class certification decision during the course of the Penzer Action.

4     The amount of the settlement is based on the total number of unsolicited faxes sent by Southeast (24,000) multiplied by the amount of statutory damages available under the TCPA for each unsolicited facsimile advertisement ($500.00).

CASE NO.:

Certifying Settlement Class, Entering Permanent Injunction and Approving Award of Attorney's Fees and Costs attached hereto as Exhibit L.

28.     Plaintiff Penzer files the instant action as the assignee of Southeast to pursue, on his own behalf and on behalf of the Class, a claim against Defendant for the amount of the Consent Judgment.

29.     Pursuant to *Coblentz* and its progeny, Plaintiff Penzer is entitled to the full amount of the Consent Judgment, notwithstanding any policy limits contained in the Contract of Insurance.

## THE CONTRACT OF INSURANCE

30.     Southeast is the insured under the Contract of Insurance.  *See* Exhibit C.

31.     The Policy Number for the Contract of Insurance is B2057559063.  *See* Exhibit C.

32.     The Policy Period for the Contract of Insurance was October 22, 2002 – October 22, 2003.  *See* Exhibit C.

33.     The Contract of Insurance:

[a]pplies:

a.      To "bodily injury" and "property damage" only if:

   i. The bodily injury or property damage is caused by an occurrence that takes place in the "coverage territory"; and

   ii. The bodily injury or property damage occurs during the policy period.

b.      To: . . .

         (b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

         but only if the offense was committed in the "coverage territory" during the policy period.

*See* Exhibit C.

34.     The Contract defines "Advertising injury" as "[o]ral or written publication or material that violates a person's right of privacy." *See* Exhibit C.

35.     The Contract defines "Property Damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" (or) "[l]oss of use of tangible property that is not physically injured [and] [a]ll such loss of use shall be deemed to occur at the time of the "occurrence" that caused it." *See* Exhibit C at 12 of 13 . "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Exhibit C at 12 of 13 .

36.     The "Coverage Territory", as defined by the Contract of Insurance, includes "The United States of America." *See* Exhibit C.

37.     The Contract of Insurance provides coverage of one million dollars ($1,000,000) for Advertising injury. *See* Exhibit C.

## SOUTHEAST'S CONDUCT CAUSED AN ADVERTISING INJURY

38.     Southeast's conduct in causing 24,000 unsolicited facsimile advertisements to be faxed to Plaintiff Penzer and the Class constitute an Advertising injury under the Contract of Insurance for which Defendant should have provided a defense and coverage.

39.     The transmission of an unsolicited advertisement via facsimile is the publication of written material.

40.     Southeast's transmission of 24,000 unsolicited facsimile advertisements to Plaintiff Penzer and the Class violated Plaintiff Penzer and the Class' right to privacy, as recognized by the TCPA.

41.    Southeast's transmission of 24,000 unsolicited facsimile advertisements to Plaintiff Penzer and the Class constitute an Advertising injury that caused Plaintiff Penzer and the Class damages as defined by the TCPA.

### SOUTHEAST'S CONDUCT CAUSED PROPERTY DAMAGE

42.    Southeast's conduct in causing 24,000 unsolicited facsimile advertisements to be faxed to Plaintiff Penzer and the Class constitute Property Damage injury under the Contract of Insurance for which Defendant should have provided a defense and coverage.  Such Property Damage is the result of an "Occurrence" as defined by the Contract of Insurance.

43.    Southeast's conduct caused Property Damage because Plaintiff and the Class lost use of their fax machines, as well as the loss of paper and ink. *See Destination Ventures, Ltd. v. FCC*, 844 F  Supp. 632, 636 (D. Or. 1994) (quoting H.R.Rep. No. 102-317, at 5, reprinted in 14082 U.S. Congressional Serial Set, 102d Cong.1st Sess. 10, 25 (1991), *aff'd* 46 F.3d 54 (9th Cir.1995))("First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.... [T]he recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.'").

44.    The Property Damage suffered by Plaintiff and the Class and caused by Southeast also was the result of an Occurrence as defined by the Contract of Insurance because Southeast's conduct in causing unsolicited fax advertisements to be sent to Plaintiff and the Class was an accident because the conduct was not intended to cause Property Damage to Plaintiff and the Class. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1075 (Fla. 1998).

CASE NO.:

## THE CONSENT JUDGMENT IS REASONABLE

45.     Southeast's entry of the Consent Judgment was reasonable in light of, *inter alia*, the

fact that: (a) Defendant wrongfully failed to provide Southeast with a defense to Plaintiff Penzer's

Third-Party Class Action Complaint, (b) Defendant would have incurred substantial attorneys' fees

to defend against Plaintiff Penzer's and the Class' claims, (c) Defendant could have been subject to

damages in the amount of $36,000,000[5] if Plaintiff Penzer Penzer and the Class had obtained a

judgment against Southeast, and (d) the *Coblentz* Agreement, including the Consent Judgment and

assignment, were negotiated in good faith, at arm's length, and in the absence of any collusion.

46.     Likewise, the amount of the consent judgment is reasonable because, *inter alia*, (a)

Defendant could have been subject to statutory damages in the amount of $36,000,000 if Plaintiff

Penzer and the Class had obtained a judgment against Southeast, (b) the *Coblentz* Agreement,

including the consent judgment and assignment, were negotiated in good faith, at arm's length, and

in the absence of any collusion, and (c) the court in the Penzer Action found the settlement, including

the Coblentz Agreement, to be fair and reasonable.

47.     All courts to address the issues raised herein support the proposition that coverage and

a defense should be provided under the Contract of Insurance. *TIG Ins. Co. v. Dallas Basketball,*

*Ltd.*, 128 S.W.2d 232, 238 (Tex. Ct. App. 2004); *Park Univ. Enters., Inc. v. Am. Cas. Co. of*

*Readings, PA*, 314 F. Supp. 2d 1094, 1106-09 (D. Kan. 2004); *Registry Dallas Assoc., L.P. v.*

*Wausau Bus. Ins. Co.*, No. Civ.A. 3:02-CV-2662L, 2004 WL 614836, at *3-6 (N.D. Tex. Feb. 26,

---

5       The TCPA allows for an award of $1,500 per unsolicited facsimile advertisement
where the Defendant acted willingly or knowingly. 47 U.S.C. §227(b)(3)(C)(" If the court finds that
the defendant willfully or knowingly violated this subsection or the regulations prescribed under this
subsection, the court may, in its discretion, increase the amount of the award to an amount equal to
not more than 3 times the amount available under subparagraph (B) of this paragraph.").

CASE NO.:

2004); *Universal Underwriters Ins. v. Lou Fusz Auto. Network, Inc.*, 300 F. Supp. 2d 888, 893-95

(E.D. Mo. 2004); *Western Rim Inv. Advisors, Inc. v. Guld Ins. Co.*, 269 F. Supp. 2d 836, 846-49

(N.D. Tex. 2003); *American States Ins. Co. v. Capital Assoc. of Jackson Cty.*, No. 02-00975-DRH,

2003 WL 23278656, at *6-8 (S.D. Ill Dec. 9, 2003); *Acuity v. Superior Marketing Sys., Inc.*, Case

No. 02-CH-8643 Ill. Ch. Ct. May 30, 2003); *Merchants & Bus. Men's Mutual Ins. Co. v. A.P.O.*

*Health Co., Inc.* (N.J. Sup. Ct., Nassau County Aug. 29, 2002); *Prime TV, LLC v. Travelers Ins. Co.*,

223 F. Supp. 2d 744, 752-53 (M.D.N.C. 2002).

## COUNT I – DECLARATORY JUDGMENT
### (AS TO DUTY TO DEFEND)

48.     Plaintiff Penzer realleges paragraphs 1 - 47 as if set forth herein in full.

49.     Plaintiff Penzer seeks a declaration that Defendant had a duty to defend Southeast

pursuant to the Contract of Insurance. *See* Contract of Insurance at Exhibit C.

50.     There is a bona fide, actual, and present practical need for declaration.

51.     The declaration concerns a present, ascertained and ascertainable state of facts.

52.     An immunity, power, privilege or right of Plaintiff Penzer and the Class is dependent

upon the facts or the law applicable to the facts.

53.     Plaintiff Penzer and Defendant have an actual, present, adverse and antagonistic

interest in the subject matter, either in fact or law.

54.     The antagonistic and adverse interest(s) are all before the court by proper process or

class representation.

55.     The relief sought is not merely giving of legal advice or the answer to questions

propounded for curiosity.

---

CASE NO.:

**WHEREFORE,** Plaintiff Penzer seeks a declaration that Defendant had a duty under the Contract of Insurance to defend Southeast in the Penzer Action.

## COUNT II – DECLARATORY JUDGMENT
### (AS TO COVERAGE AND INDEMNIFICATION)

56.     Plaintiff Penzer realleges paragraphs 1 - 47 as if set forth herein in full.

57.     Plaintiff Penzer seeks a declaration that Defendant had a duty to provide coverage and indemnification to Southeast pursuant to the Contract of Insurance. *See* Contract of Insurance at Exhibit C.

58.     There is a bona fide, actual, and present practical need for declaration.

59.     The declaration concerns a present, ascertained and ascertainable state of facts.

60.     An immunity, power, privilege or right of Plaintiff Penzer and the Class is dependent upon the facts or the law applicable to the facts.

61.     Plaintiff Penzer and Defendant have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

62.     The antagonistic and adverse interest(s) are all before the court by proper process or class representation.

63.     The relief sought is not merely giving of legal advice or the answer to questions propounded for curiosity.

**WHEREFORE,** Plaintiff Penzer seeks a declaration that Defendant was obligated under the Contract of Insurance to provide coverage and indemnification to Southeast in the Penzer Action.

CASE NO.:

## COUNT III – BREACH OF CONTRACT

64.     Plaintiff Penzer realleges paragraphs 1 - 47 as if set forth herein in full.

65.     Southeast and Defendant are parties to a contract. *See* Contract of Insurance attached hereto as Exhibit C.

66.     Defendant breached the contract by failing to provide Southeast with a defense and coverage to Plaintiff Penzer's Third-Party Class Action Complaint.

67.     Defendant's breach caused Southeast to suffer damages.

68.     Under *Coblentz* and its progeny, Plaintiff Penzer, as the assignee of Southeast, is entitled to the full amount of the Consent Judgment, regardless of the policy limits in the Contract of Insurance.

    **WHEREFORE,** Plaintiff Penzer seeks damages for breach of contract against Defendant.

## JURY DEMAND

    Plaintiff Penzer demands a trial by jury on all issues so triable.

Dated: September 2\ 2004                    Respectfully submitted,
                                           WITES, KAPETAN & FRIEDLAND, P.A.
                                           Attorneys for Plaintiff Penzer and the Class
                                           1701 West Hillsboro Blvd., Suite 305
                                           Deerfield Beach, FL 33442
                                           (954) 570-8989/(954) 428-3929 (fax)

                                           By: _____
                                                MARC A. WITES
                                                Fla. Bar No.: 24783
                                                mwites@wklawyers.com
                                                ALEX N. KAPETAN, JR.
                                                Fla. Bar No.: 181234
                                                akapetan@wklawyers.com

                                           and

CASE NO.:

Paul J. Geller
Florida Bar No. 984795
pgeller@lerachlaw.com
Doug Wilens
Florida Bar No. 0079987
dwilens@lerachlaw.com
Stuart A. Davidson
Florida Bar No. 0082824
sdavidson@lerachlaw.com
LERACH, COUGHLIN, STOIA, GELLER
RUDMAN & ROBBINS, LLP
Attorneys for Plaintiff Penzer and the Class
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Phone:(561) 750-3000/Fax: (561) 750-3364

# EXHIBIT A

To: 9544548030

Nextel
i30sx
Reg. $139.99


NEXTEL
AUTHORIZED REPRESENTATIVE

Nextel
i60c
Reg. $219.99

# "FREE PHONE" & ACCESSORIES!

*Free i30sx
with only 1-phone
activation required
(no mail-in rebate
required)

**HURRY!
THIS
SPECIAL FLORIDA
"FAX OFFER" ENDS 5/30/03
Requires New Activation
*Call For Details**

*Free i60c's when
activating 3+ phones
(after mail-in rebate)

# SIGN-UP ON NEXTEL'S
## FREE INCOMING PLANS AND GET:

- **FREE Incoming Calls 24/7**
- **FREE Long Distance 24/7**
- **Unlimited Nights & Weekends**
- **Never Any Roaming Charges**
- **Unlimited Florida 2-Way Radio**

*(Nationwide 2-Way Radio / Available in June)*

## ALL TRADE-INS ACCEPTED
### *14 - DAY SATISFACTION GUARANTEED

For more information on this special Florida offer, fax back to:
**Fax: 954-925-0568  or Call: 954-237-5255**

Name: _____    Phone: _____
Fax: _____    Best time to call: _____

*to delete fax number, CALL 1-800-782-4804.*

Exh A

# EXHIBIT B



**B**URGER
**&T**RAILOR
**F**ARMER P.A.

ATTORNEYS        COUNSELORS        LITIGATORS

Duncan J. Farmer

Alan M. Burger

Andrew T. Trailor

**VIA UPS**

Reply to

☐ Miam

Telephone (305) 668-60⁹

(888) 261-92.

Fax (305) 668-62.

☒ West Palm Beac

Telephone (561) 689-16⁴

(800) 396-01

Fax (561) 689-17

December 2, 2003

Accordia
3225 Aviation Ave.
Suite 400
Coconut Grove, Florida 33133

Valley Forge Insurance Co.
CNA Plaza
Chicago, Il 60685

RE:   **Policy Number:  B2057559063**
      **Insured:   Southeast Wireless, Inc. d/b/a MobileOne**

To The Reader:

This office represents the Insured.  On December 1, 2003, the Insured received a demand for indemnification and a copy of a Third Party Complaint which was filed against the Insured seeking indemnity.

The Plaintiff in the underlying action seeks damages as a result of an alleged invasion of privacy (through the receipt of an unauthorized facsimile), on a class basis. The Third Party Plaintiff, Nextel South Corp., Inc. seeks indemnity both through contract and at common law as a result of this invasion of privacy (see enclosures).  MobileOne feels that the claims of the Plaintiff and Third Party Plaintiff are Advertising Injuries or Bodily Injuries as defined it its Policy of Insurance and requests both defense and indemnity.

As this office is intimately familiar with the business of MobileOne and the claims of both the Plaintiff and Third Party Plaintiff, MobileOne requests the Insurer appoint this office as its counsel with respect to this matter.   The principals of this firm all enjoy an "AV"

EXH: **B**

Union Planters Building - Suite 303 • 8603 South Dixie Highway • Miami, Florida 33143 • WWW.BURGERTRAILOR.

Accordia
Valley Forge Insurance Co.
December 2, 2003
Page 2

Martindale-Hubbell rating and are seasoned and experienced litigators. Furthermore, the principals have acted both as class counsel and as defense counsel representing other insurers and adjusters. Finally, we are competitive in our billing rates and practices.

I welcome the opportunity to discuss this matter and look forward to our relationship.

Sincerely,

Alan M. Burger

AMB/yp

cc:    MobileOne

J:\Mobile One\Penzer\3-1203a.wpd



BURGER TRAILOR FARMER P.A.

Union Planters Building - Suite 303 • 8603 South Dixie Highway • Miami, Florida 33143 • Phone (305) 668-6090 • (888) 261-9232 • Fax (305) 668- Phone (561) 689-1663 • (800) 396-0135 • Fax (561) 689-1707

# EXHIBIT C

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YY) |
|---|---|
| | 2/24/2003 |

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

PRODUCER Acordia - Miami Division
3225 Aviation Avenue #400

Coconut Grove          FL 33133
(305) 443-4886

| INSURERS AFFORDING COVERAGE | |
|---|---|
| INSURER A: | Transportation Casualty Ins Co |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

INSURED
Southeast Wireless, Incorporated dba       ●●●
Mobile One
2 Oakwood Blvd.  Suite 160
Hollywood              FL 33020

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE  X OCCUR | 2057559063 | 10/22/2002 | 10/22/2003 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 100,000 |
| | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY  PRO-JECT  LOC | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| A | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS<br>X Business Automobile | 2057559063 | 10/22/2002 | 10/22/2003 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY**<br>ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN  EA ACC<br>AUTO ONLY:  AGG | $ |
| | **EXCESS LIABILITY**<br>OCCUR  CLAIMS MADE<br>DEDUCTIBLE<br>RETENTION  $ | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU-TORY LIMITS  OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | OTHER<br>Commercial Crime Coverage | 2057559063 | 10/22/2002 | 10/22/2003 | Employee<br>Forgery<br>Deductible | 10,000<br>10,000<br>250 |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

## See Supplemental Information Page(s)

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| Universal Data Consultant, Inc.<br><br>4690 SW 78 Avenue<br><br>Davie                FL 33328 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  30  DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97)                                                                    © ACORD CORPORATION 1988

EXH: C

# SUPPLEMENTAL INFORMATION PAGE
## ATTACH TO ACORD 25-S (7/97)

DATE (MM/DD/YY)
2/24/2003

| PRODUCER | PHONE (A/C, No, Ext) | (305) 443-4886 | APPLICANT (First Named Insured) | FAX (A/C, No) |
|---|---|---|---|---|

Acordia - Miami Division

3225 Aviation Avenue #400

Coconut Grove         FL      33133

Southeast Wireless, Incorporated dba
Mobile One
Mobile One
2 Oakwood Blvd. Suite 160
Hollywood                              FL      33020

EFFECTIVE DATE   EXPIRATION DATE   CO/PLAN

CODE:                     SUB CODE:

AGENCY CUSTOMER ID

POLICY NUMBER:

ACCOUNT NUMBER:

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

Money & Securities: $10000 Inside/$5000 Outside / Employee Dishonesty Includes Money &
Securities
Certificate Holder is listed as Additional Insured on Policy.
LOC #15: 1000 WEST OAKLAND PARK BLVD. FT. LAUDERDALE FL; LOC #16: 216 EAST OAKLAND PARK
BLVD. FT. LAUDERDALE FL; LOC #17 1299 EAST COMMERCIAL BLVD FT. LAUDERDALE FL; LOC #18 450
NE 20 STREET #113 BOCA RATON, FL.

**CNA**
For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| B2057559063 | 10/22/03   10/22/04 | Valley Forge Insurance Company | 019530770 |

| Named Insured And Address | Agent |
|---|---|
| SOUTHEAST WIRELESS, INCORPORATED DBA M<br>2 OAKWOOD BLVD SUITE 160<br>HOLLYWOOD, FL  33021 | ACORDIA SOUTHEAST, INC.<br>3225 AVIATION AVE.,<br>P. O. BOX 847<br>COCONUT GROVE, FL 33133 |

**         PAYMENT PLAN SCHEDULE   **

THE BILLING FOR THIS POLICY WILL BE
FORWARDED TO YOU DIRECTLY FROM CNA.

THE PREMIUM AMOUNT FOR THIS TRANSACTION
IS            ▬▬▬▬▬▬▬

THIS PREMIUM WILL BE INVOICED BY CNA ON
A SEPARATE STATEMENT ACCORDING TO THE
PAYMENT OPTION YOU SELECT.

ISSUE DATE 08/05/03



**RENEWED BUSINESS ACCOUNT PACKAGE POLICY**

**SPECIAL FORM**

| Policy Number | Named Insured and Address | | Policy Period | |
|---|---|---|---|---|
| 2057559063 | | **From** | | **To** |
| | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

| Agency Number | Agency Address | Coverage Provided By |
|---|---|---|
| 019530770 | ACORDIA SOUTHEAST, INC. | Valley Forge Insurance Co |
| | 3225 AVIATION AVE., #400 | CNA Plaza |
| | P. O. BOX 847 | Chicago, Illinois  60685 |
| | COCONUT GROVE, FL 33133 | |

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing
address on the dates shown above.

The Named Insured is a Corporation.

Your policy is composed of this Declarations, with the attached Common Policy Conditions,
Coverage Forms, and Endorsements, if any.  The Policy Forms and Endorsement Schedule
shows all forms applicable to this policy at the time of policy issuance.



        The Policy Premium is
        Policy Taxes and Surcharges
        Total Policy Charges
   Terrorism Risk Insurance Act Premium

In return for the payment of the premium, and subject to all the terms and conditions
contained herein, we agree to provide the insurance as stated.

This section summarizes th███████████its and coverages on your policy.

**BUSINESS LIABILITY**                                        **Limits of Insurance**

| | |
|---|---|
| Liability and Medical Expenses | $1,000,000 |
| Medical Expenses (Per Person) | $10,000 |
| Fire Legal Liability (Any One Fire or Explosion) | $100,000 |
| Products/Completed Operations Aggregate | $2,000,000 |
| General Aggregate (Other Than Products/ | |
|         Completed Operations) | $2,000,000 |
| Hired and Non-Owned Auto Liability (Each Occurrence) | 1,000,000 |
| Hired Auto Physical Damage Coverage | $50,000 |
|     Deductible: $250 | |

**PROPERTY AND MISCELLANEOUS COVERAGES**

**Limits of Insurance**

Policy Deductible*      $500
    *Refer to Deductible Provisions in the Special
     Property Coverage Form for Deductible Exceptions.

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

## PROPERTY AND MISCELLANEOUS COVERAGES

| | |
|---|---|
| Property In Transit | $15,000 |
| Employee Dishonesty | $10,000 |
| Forgery And Alteration Coverage | $10,000 |
| Property Temporarily Off Premises | $15,000 |

### Location   1

2 OAKWOOD BLVD SUITE 160
HOLLYWOOD, FL  33021

Masonry Non-Combustible
Cellular Telephone Services - 71921A

**Limits of Insurance**

| | |
|---|---|
| Total Premises Limit of Insurance | $85,000 |
| Business Personal Property | $85,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
|     Inside | $10,000 |
|     Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location   2

Masonry Non-Combustible
Cellular Telephone Services - 71921A

**Limits of Insurance**

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
|     Inside | $10,000 |
|     Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location   3

Masonry Non-Combustible

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

## PROPERTY AND MISCELLANEOUS COVERAGES

### Location    3
Cellular Telephone Services - 71921A

| | Limits of Insurance |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
|     Inside | $10,000 |
|     Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location    4



Masonry Non-Combustible
Cellular Telephone Services - 71921A

| | Limits of Insurance |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
|     Inside | $10,000 |
|     Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location    5

Masonry Non-Combustible
Cellular Telephone Services - 71921A

| | Limits of Insurance |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL   33021

## PROPERTY AND MISCELLANEOUS COVERAGES

### Location    5

Limits of Insurance

$10,000
$5,000
$10,000
$25,000

### Location    6

5701 MARGATE BLVD
MARGATE, FL   33063

Masonry Non-Combustible
Cellular Telephone Services - 71921A

Limits of Insurance

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location    7

Masonry Non-Combustible
Cellular Telephone Services - 71921A

Limits of Insurance

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

INSURED                                    Page    4 of

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

## PROPERTY AND MISCELLANEOUS COVERAGES

### Location    8



Masonry Non-Combustible
Cellular Telephone Services - 71921A

**Limits of Insurance**

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location    9



Masonry Non-Combustible
Cellular Telephone Services - 71921A

**Limits of Insurance**

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location   10

Masonry Non-Combustible
Cellular Telephone Services - 71921A

**Limits of Insurance**

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | 10/22/2003 | | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

## PROPERTY AND MISCELLANEOUS COVERAGES

### Location  10

| | Limits of Insurance |
|---|---|
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location  11



Masonry Non-Combustible
Cellular Telephone Services - 71921A

| | Limits of Insurance |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location  12



Masonry Non-Combustible
Cellular Telephone Services - 71921A

| | Limits of Insurance |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 2057559063 | | | 10/22/2003 | 10/22/2004 |

SOUTHEAST WIRELESS, INCORPORATED DBA MOBILE ONE
2 OAKWOOD BLVD SUITE 160

HOLLYWOOD, FL  33021

## PROPERTY AND MISCELLANEOUS COVERAGES

### Location  13



Masonry Non-Combustible
Cellular Telephone Services - 71921A

Limits of Insurance

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### Location  14



Masonry Non-Combustible
Cellular Telephone Services - 71921A

Limits of Insurance

| | |
|---|---|
| Total Premises Limit of Insurance | $5,000 |
| Business Personal Property | $5,000 |
| Valuable Papers | $15,000 |
| Accounts Receivable | $25,000 |
| Money and Securities | |
| Inside | $10,000 |
| Outside | $5,000 |
| Computer Equipment | $10,000 |
| Backup of Sewers and Drains | $25,000 |

### *** LOSS PAYEE SCHEDULE ***

All loss payees as their interests may appear in the Covered Property.

The following provisions are applicable:  Loss Payable.

Descripton of Property:  Any Covered Property in which a loss payee holds an interest.



For All the Commitments You Make®

G-19340-F
(Ed. 01/00)

# BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

## TABLE OF CONTENTS

COVERAGE .................................................................................................................................................. 1

    Covered Property ..................................................................................................................................... 1
    Property Not Covered .............................................................................................................................. 1
    Covered Causes of Loss ........................................................................................................................ 2
    Limitations ............................................................................................................................................... 2
    Additional Coverages ............................................................................................................................. 2
    Coverage Extensions ............................................................................................................................. 6

EXCLUSIONS ............................................................................................................................................. 11

LIMITS OF INSURANCE ........................................................................................................................... 13

DEDUCTIBLES ........................................................................................................................................... 14

PROPERTY LOSS CONDITIONS .............................................................................................................. 14

    Abandonment ....................................................................................................................................... 14
    Appraisal ............................................................................................................................................... 14
    Duties In The Event Of Loss Or Damage ............................................................................................ 14
    Legal Action Against Us ........................................................................................................................ 15
    Limitation – Electronic Media And Records ......................................................................................... 15
    Loss Payment ....................................................................................................................................... 15
    Recovered Property .............................................................................................................................. 17
    Resumption of Operations .................................................................................................................... 17
    Vacancy ................................................................................................................................................ 17
    Pair, Sets Or Parts ............................................................................................................................... 17

PROPERTY GENERAL CONDITIONS ...................................................................................................... 17

    Control of Property ................................................................................................................................ 17
    Mortgage Holders ................................................................................................................................. 18
    No Benefit to Bailee .............................................................................................................................. 18
    Policy Period, Coverage Territory ........................................................................................................ 18

OPTIONAL COVERAGES ......................................................................................................................... 18

    Loss of Value ........................................................................................................................................ 18

PROPERTY DEFINITIONS ........................................................................................................................ 19

G-19340-F
(Ed. 01/00)

# BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **H** – PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the declarations caused by or resulting from any Covered Cause Of Loss.

### 1. Covered Property

Covered Property, as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

  **(1)** Completed additions;

  **(2)** Permanently installed:

    **(a)** Fixtures;

    **(b)** Machinery; and

    **(c)** Equipment;

  **(3)** Your personal property in apartments or rooms furnished by you as landlord;

  **(4)** Outdoor fixtures;

  **(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

    **(a)** Fire extinguishing equipment;

    **(b)** Outdoor furniture;

    **(c)** Floor coverings; and

    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

  **(6)** If not covered by other insurance:

    **(a)** Additions under construction, alterations and repairs to the buildings or structures;

    **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations

or repairs to the buildings or structures.

    **(c)** Radio or television antennas or satellite dishes including:

      **i.** Lead-in wiring and masts;

      **ii.** Guy wires;

      **iii.** Above and below ground foundations;

      **iv.** Any other property that is permanently attached to such structures.

**b.** **Business Personal Property**, meaning business personal property located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

  **(1)** Property you own that is used in your business;

  **(2)** Property of others that is in your care, custody or control; and

  **(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    **(a)** Made a part of the building or structure you occupy but do not own;

    **(b)** You acquired or made at your expense but cannot legally remove; and

  **(4)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under **A.1.b.(2). above**

### 2. Property Not Covered

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** Money or securities except as provided in the:

**(1)** Money and Securities Coverage Extension; or

**(2)** The Employee Dishonesty Coverage Extension.

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns;

**e.** Watercraft (including motors, equipment and accessories) while afloat.

**f.** Animals, unless owned by others and boarded by you, or if owned by you, only while inside the buildings;

**3. Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

**a.** Excluded in section **B.** EXCLUSIONS;

**b.** Limited in paragraph **A.4.** Limitations; or

**c.** Excluded or limited by other provisions of this policy.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Coverage Extension for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**b.** We will not pay for loss of or damage to the following types of property unless caused by "specified causes of loss" or building glass breakage:

**(1)** Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(a)** Glass that is part of the interior or exterior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**(2)** Animals, and then only if they are killed or their destruction is made necessary.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(a)** The date of direct physical loss or damage; or

**(b)** The end of the policy period.

**(2)** The most we will pay under this Additional Coverage is 25% of:

**(a)** The amount we pay for the direct physical loss of or damage to Covered Property; plus

**(b)** The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in paragraph **(4)** below.

**(3)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

4002018630770000037541063435

**(b)** Remove, restore or replace polluted land or water.

**(4)** If:

**(a)** The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

**(b)** The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph **(2)** above;

we will pay up to an additional $25,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 45 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $15,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

**(1)** The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

**(2)** Hidden decay;

**(3)** Hidden insect or vermin damage;

**(4)** Weight of people or personal property;

**(5)** Weight of rain that collects on a roof;

**(6)** Use of defective material or methods in construction, remodeling or renovation if

the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items **(2)**, **(3)**, **(4)**, **(5)** and **(6)** unless the loss or damage is a direct result of the collapse of a building:

Awnings, gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

**e. Water Damage, Other Liquids, Solder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from any Covered Cause of Loss.

We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage.

**(2)** Your loss of Business Income is covered up to 30 consecutive days when caused as a direct result of damage, by a Covered Cause of Loss, to property adjacent to your premises.

**(3)** Business Income means the:

**(a)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(b)** Continuing normal operating expenses incurred, including payroll.

**g. Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises, including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

Extra Expense means expense incurred:

**(1)** To avoid or minimize the suspension of business and to continue "operations":

**(a)** At the described premises; or

**(b)** At replacement premises or at temporary locations, including:

**(i)** Relocation expenses; and

**(ii)** Costs to equip and operate the replacement or temporary locations, but only to the extent that these expenses and costs do not exceed the expense of relocating to a temporary location and the costs to equip and operate a temporary location during the "period of restoration."

**(2)** To minimize the suspension of business if you cannot continue "operations."

**(3)** To:

**(a)** Repair or replace any property at the premises in the Declarations; or

**(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.**, Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.

This Additional Coverage is not subject to the Limits of Insurance.

**h. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property other than at the described premises, caused by or resulting from a Covered Cause of Loss.

This coverage will apply for a period of up to 30 consecutive days from the date of that action of civil authority.

**i. Extended Business Income**

We will pay for the actual loss of Business Income you incur during the period that:

**(1)** Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(2)** Ends on the earlier of:

**(a)** The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

**(b)** 30 consecutive days after the date determined in **(1)** above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**j. Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from "specified causes of loss" that occur during the policy period. The expenses

4020/1/8630/7/000003754186345/6

G-19340-F
(Ed. 01/00)

will be paid only if they are reported to us in writing within 180 days or the earlier of:

**(1)** The date of direct physical loss or damage; or

**(2)** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of "specified causes of loss" occurring during each separate 12 month period of this policy.

**k. Signs**

**(1)** We will pay for direct physical loss of or damage to all signs at the described premises;

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody or control.

**(2)** Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to this Additional Coverage, except for:

**(a)** Paragraph **B.1.b.**, Governmental Action;

**(b)** Paragraph **B.1.c.**, Nuclear Hazard; and

**(c)** Paragraph **B.1.e.**, War and Military Action.

**(3)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust;

**(d)** Corrosion; or

**(e)** Mechanical breakdown.

The provisions of this Additional Coverage supersede all other references to signs in this policy.

**l. Glass**

**(1)** We will pay for direct physical loss of or damage to all glass, including all lettering, ornamentation and alarm tape located at the described premises:

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody or control.

**(2)** We will also pay for the necessary:

**(a)** Expenses incurred to put up temporary plates or board up openings;

**(b)** Repair or replacement of encasing frames; and

**(c)** Expenses incurred to remove or replace obstructions.

**(3)** Paragraph **A.3.**, Covered Causes of Loss, and section **B.**, EXCLUSIONS, do not apply to this Additional Coverage, except for:

**(a)** Paragraph **B.1.b.**, Governmental Action;

**(b)** Paragraph **B.1.c.**, Nuclear Hazard; and

**(c)** Paragraph **B.1.e.**, War and Military Action.

**(4)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Corrosion; or

**(d)** Rust.

The provisions of this Additional Coverage supersede all other references to glass in this policy.

**m. Theft Damage**

This Additional Coverage applies only to premises where you are a tenant and are legally liable for such damage.

**(1)** We will pay for damage caused directly by theft to:

**(a)** That part of any building you occupy containing Covered Property; or

**(b)** Equipment within the building you occupy used to maintain or service the building.

**(2)** We will not pay for loss to a building or its equipment under this Additional Coverage caused by fire.

**n. Appurtenant Buildings and Structures**

You may extend the insurance that applies to BUILDINGS and BUSINESS PERSONAL PROPERTY, to cover direct loss in any one occurrence by a Covered Cause of Loss to appurtenant buildings or structures within 1,000 feet, including Business Personal Property within these buildings or structures. A storage building or parking garage occupied

G-19340-F
(Ed. 01/00)

by the insured, which is incidental to a covered location, is an appurtenant building or structure. The most we will pay for loss or damage under this Additional Coverage is 10% of the Limit of Insurance for Buildings and 10% of the Limit of Insurance for Business Personal Property shown in the Declarations, but not more than $50,000 at each building.

**6. Coverage Extensions**

In addition to the Limits Of Insurance you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the building described in the declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

**a. Newly Acquired or Constructed Property**

(1) We will pay for direct physical loss of or damage to:

(a) Your new building(s) while being built;

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as a building described in the Declarations; or

(ii) Use as a warehouse.

(c) Your business personal property at any location you acquire.

(2) The most we will pay for loss or damage, by a Covered Cause of Loss, under this Coverage Extension is:

(a) 50% of the Limit of Insurance for Buildings, at the largest location shown in the Declarations, but not more than $1,000,000 at each location.

(b) 25% of the Limit of Insurance for Your Business Personal Property, at the largest location shown in the Declarations, but not more than $500,000 at each location.

However, the most we will pay for newly acquired "hardware" is 25% of the Business Personal Property at the largest location but not more than $50,000.

(3) Insurance under this Coverage Extension for each newly acquired or constructed

property will end when any of the following first occurs:

(a) This policy expires; or

(b) 180 days expire after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b. Personal Effects**

We will pay for direct physical loss of or damage to personal effects owned by you, your officers, your partners, or your employees. The most we will pay for loss or damage, by a Covered Cause of Loss, under this Coverage Extension is $2,500 at each described premises.

**c. Valuable Papers and Records**

(1) We will pay for direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore lost information on lost or damaged "valuable papers and records," including those which exist on electronic or magnetic media, for which duplicates do not exist.

(2) This Coverage Extension does not apply to:

(a) Property held as samples or for delivery after sale;

(b) Property in storage away from the premises shown in the Declarations.

(3) The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $15,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $15,000.

(4) Section **B.** Exclusions of this Coverage Form does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.b.**, Governmental Action;

(b) Paragraph **B.1.c.**, Nuclear Hazard;

G-19340-F
(Ed. 01/00)

(c) Paragraph **B.1.e.,** War and Military Action;

**d. Personal Property Off Premises**

(1) We will pay for direct physical loss of or damage to Covered Property, other than "money," "securities," "valuable papers and records," or accounts receivable, that is:

(a) Temporarily at a location you do not own, rent, lease, occupy, or operate;

But we do not cover property at your employees place of residence.

(b) In the care, custody, or control of your marketing or sales personnel while away from your premises; or

(c) At any fair or exhibition.

The loss or damage must be caused by or result from a Covered Cause of Loss.

(2) The most we will pay under this Coverage Extension for loss or damage to property:

(a) At a fair or exhibition, including property in the care, custody, or control of your marketing or sales personnel at the fair or exhibition, is $5,000.

(b) In the care, custody, or control of your marketing or sales personnel and not at a fair or exhibition, is $5,000.

(c) Temporarily at a location you do not own, rent, lease, occupy, or operate is the limit shown in the declarations for Property Temporarily Off Premises. This limit does not apply to property at fairs or exhibitions or to property in the care, custody, or control of your marketing or sales personnel.

**e. Trees, shrubs and plants**

We will pay for direct physical loss of or damage to your outdoor trees, shrubs and plants including debris removal expenses. The most we will pay for loss or damage by a Covered Cause of Loss is $10,000 at each described premises, but not more than $1,000 for any one tree, shrub or plant. We will not pay for loss or damage to outdoor trees, shrubs, and plants resulting from the following causes of loss: windstorm or hail; vehicle; vandalism; disease.

**f. Accounts Receivable**

We will pay for the following loss and expenses which are the direct result of loss or damage, by a Covered Cause of Loss, to accounts receivable records:

(1) All sums due from customers, provided you are unable to effect collections;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by loss or damage;

(3) Collection expenses in excess of normal collection cost made necessary because of loss or damage;

(4) Other reasonable expenses incurred by you in re-establishing records of accounts receivable following such loss or damage.

The most we will pay for loss or damage under this Coverage Extension is $25,000 at each described premises, unless otherwise indicated in the Declarations. For accounts receivable not at the described premises, the most we will pay is $15,000.

**g. Fire Extinguisher Recharge**

We will pay up to an amount not exceeding $2,500 in any one occurrence for the cost of recharging your Underwriters Laboratories listed or Factory Mutual approved type ABC (multipurpose) fire extinguisher after being used in fighting a fire on your premises or on adjoining premises.

**h. Money and Securities**

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(a) Theft, meaning any act of stealing;

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

(b) Due to the giving or surrendering of property in any exchange or purchase; or

G-19340-F
(Ed. 01/00)

(c) Of property contained in any "money"-oriented device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

(3) The most we will pay for loss in any one occurrence is:

(a) $10,000, for "money" and "securities" while:

(i) In or on the described premises; or

(ii) Within a bank or savings institution; and

(b) $5,000, Outside the Premises for "money" and "securities" while anywhere else,

or the limit of insurance shown in the Declarations.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

(6) In the event of loss or damage we will determine the value as follows:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

**i. Employee Dishonesty**

(1) We will pay for direct loss of or damage to Business Personal Property, including "money" and "securities," resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(a) Cause you to sustain loss or damage; and also

(b) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(i) Any employee; or

(ii) Any other person or organization.

(2) We will not pay for loss or damage:

(a) Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

(b) The only proof of which as to its existence or amount is depended upon:

(i) An inventory computation; or

(ii) A profit and loss computation.

(c) That is an Indirect Loss. Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(i) Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

(ii) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

(iii) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

(3) The most we will pay for loss or damage, due to Employee Dishonesty in any one occurrence is $10,000 or the Limit of Insurance shown in the Declarations.

(4) All loss or damage:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

(6) This Coverage does not apply to any employee immediately upon discovery by:

4002018530770030037541863438

G-19340-F
(Ed. 01/00)

**(a)** You; or

**(b)** Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**j. Money Orders and Counterfeit Paper Currency**

We will pay for loss due to good faith acceptance of:

**(1)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

**(2)** Counterfeit United States or Canadian paper currency

in exchange for merchandise, "money" or services or as part of a normal business transaction.

The most we will pay for any loss under this Coverage Extension is $10,000.

**k. Forgery and Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, on, or in any Covered Instrument. Covered Instruments are checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money," that are:

**(a)** Made or drawn by or drawn upon you; or

**(b)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

**(2)** If you are sued for refusing to pay any Covered Instrument on the grounds that it has been forged or altered, and you have our written consent to defend against the suit, we will pay any reasonable legal expenses that you incur in that defense. The amount we will pay for these legal expenses will be a part of and not in addition to the limit of insurance applicable to the Forgery and Alteration Coverage Extension.

**(3)** The most we will pay for loss and legal expenses covered under this Coverage Extension is the limit shown in the

declarations for Forgery And Alteration Coverage.

**l. Arson Reward**

We will pay up to $10,000, for information which leads to an arson conviction in connection with a fire loss covered under this Coverage Part. Regardless of the number of persons involved in providing information our liability under this Coverage Extension will not be increased.

**m. Property in Transit**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to Business Personal Property in the due course of transit more than 1,000 feet from the described premises:

**(2)** This Coverage Extension does not apply to:

**(a)** Property shipped by mail;

**(b)** Property while waterborne, except in regular ferry operations in the course of being moved by other means of transportation, and then to include General Average and Salvage Charges for which you may become liable;

**(c)** Import or export shipments once under the protection of marine insurance; or

**(d)** Property sold by you under conditional sale, trust agreement, installment payment after delivery to customers.

**(3)** Loss or damage by theft must be caused by or result from the theft of an entire bale, case, or package by forced entry (of which there must be visible evidence) into the properly locked body or compartment of the vehicle. Properly locked means all vehicle doors, compartments and windows are closed and locked.

**(4)** The most we will pay in any one occurrence for loss or damage under this Coverage Extension is $15,000 or the limit shown in the Declarations.

**n. Demolition Cost and Increased Construction Costs**

If a Covered Cause of Loss occurs to covered Building property, we will pay:

**(1)** The cost to demolish and clear the site of undamaged parts of the property; and

G-19340-F
(Ed. 01/00)

**(2)** The increased cost to:

**(a)** repair or reconstruct damaged portions of that Building property; and/or

**(b)** reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required;

when the demolition or increased cost is a consequence of enforcement of building, zoning or land use ordinance or law.

However:

**(1)** This Coverage Extension applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

We will not pay under this Coverage Extension for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

We will not pay for increased construction costs under this Coverage Extension:

**(1)** Until the property is actually repaired or replaced at the same premises or elsewhere; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the 2 years.

With respect to the increased cost of construction:

**(1)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, we will pay only the increased cost of construction at the same location.

**(2)** If the ordinance or law requires relocation to another premises, we will pay for the increased cost of construction at the new premises.

The most we will pay under this Coverage Extension for the total of all covered losses for Demolition Cost and Increased Cost of Construction is $25,000, unless otherwise indicated in the Declarations.

The terms of this Coverage Extension apply separately to each covered building.

**o.   Computer Equipment**

**(1)** We will pay for direct "loss" to computer equipment from any of the Covered Causes of Loss, including "loss" caused by "electrical disturbance" and "power supply disturbance" if the cause of the occurrence took place within 1,000 feet of a location listed in the Declarations.

**(2)** Computer equipment is the following described property while at the locations listed in the Declarations, in transit, or duplicate "software" at unscheduled locations:

**(a)** "Hardware" owned by you or in your care, custody and control;

**(b)** "Software";

**(c)** "Communication systems."

The most we will pay for this Coverage Extension is $10,000, unless otherwise indicated in the Declarations. The most we will pay for computer equipment in transit is the amount shown in the Declarations for Computer Equipment or $25,000, whichever is less.

**p.   Inventory and Appraisal**

We will pay the expense you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals and preparing other documentation to show the extent of loss.

The most we will pay for preparation of claim data under this Coverage Extension is $1,000. We will not pay for any expenses billed by and payable to insurance adjusters or expenses from public adjusters and loss consultants.

**q.   Back Up of Sewer or Drain Water Damage**

We will pay for loss or damage to covered property caused by water that backs up from a sewer or drain. However, this Coverage Extension does not provide coverage for loss or damage due to water emanating from a sump pump, well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

The most we will pay for direct physical damage is $25,000, or the limit of insurance

shown in the Declarations for each covered location.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Earth Movement**

   (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (2) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust, or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust of particulate matter that does not cause direct physical loss of or damage to Covered Property.

   This exclusion does not apply to loss or damage to computer equipment.

   **b. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**c. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**d. Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**e. War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**f. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain, except as provided in the Back Up of Sewer or Drain Water Damage Coverage Extension; or

(4) Water under the ground surface pressing on or flowing or seeping through:

   (a) Foundations, walls, floors or paved surfaces;

   (b) Basements, whether paved or not;

   (c) Doors, windows or other openings.

But if Water, as described in **B.1.f.(1)** through **B.1.f.(3)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

G-19340-F
(Ed. 01/00)

This exclusion does not apply to loss or damage to computer equipment.

2. We will not pay for loss or damage caused by or resulting from any of the following.

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires. But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

**b. Consequential Losses**

Delay, loss of use, or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor, or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal act by you, anyone else with an interest in the property, any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment;

except as provided in the Employee Dishonesty Coverage Extension.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records," this exclusion does not apply to carriers for hire.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss."

**k. Other Types of Loss**

**(1)** Wear and tear;

**(2)** Rust, corrosion, fungus, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself.

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** "Mechanical breakdown," including rupture or bursting caused by centrifugal force; but this exclusion does not apply to computer equipment.

4002019530770000375419634440

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere; or

**(b)** Changes in or extremes of temperature;

But we will pay for such "loss" resulting from direct physical "loss" to the air conditioning system that services your computer equipment" if the damage to the system is caused by a covered cause of loss;

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **B.2.k.(1)** through **B.2.k.(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

**b. Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(1)** Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(2)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

**b.** Any other consequential loss.

**5. Computer Equipment Exclusions**

The following exclusion is added to other Exclusions and applies only to computer equipment:

We will not pay for errors or omissions in machine programming or incorrect instructions to a machine.

**C. LIMITS OF INSURANCE**

**1.** The most we will pay for loss or damage in any one occurrence under your coverage for Buildings and Business Personal Property is the applicable Premises Limit of Insurance shown in the Declarations.

**2.** The limits applicable to the Coverage Extensions, the Fire Department Service Charge, Business Income, Extra Expense and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

**3.** Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**a.** Signs;

**b.** Glass;

**c.** Preservation of Property;

**d.** Debris Removal.

**4. Inflation Guard**

**a.** The Limit of Insurance for Buildings will automatically increase by 10% annually.

The limit of Insurance for Business Personal Property will be increased by the annual

G-19340-F
(Ed. 01/00)

percentage shown in the Declarations, if you choose this optional coverage.

   **b.** The amount of increase will be:

      **(1)** The limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the limit; times

      **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 10% is .10), times

      **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the limit, divided by 365.

   Example:

   If: the applicable limit is $100,000.

   The annual percentage increase is 10%.

   The number of days since the beginning of the policy year (or last policy change) is 146.

   The amount of increase is:

   $100,000 x .10 x 146 ÷ 365 = $4,000.

   **c.** The Premises Limit(s) of Insurance will be increased to reflect the adjustments, if any, as determined in **C.4.b.** above.

**5.** **Business Personal Property Limit – Seasonal Increase**

   **a.** The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   **b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      **(1)** The 12 months immediately preceding the date on which the loss or damage occurs; or

      **(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. DEDUCTIBLES**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible amount shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

**2.** Regardless of the amount of the deductible, the most we will deduct from any loss or damage

under all of the following Coverages in any one occurrence is $100.

   **a.** Money and Securities;

   **b.** Employee Dishonesty;

   **c.** Valuable Papers and Records;

   **d.** Accounts Receivable;

   **e.** Signs;

   **f.** Glass.

But this $100 deductible will not increase the deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

**3.** No deductible applies to the following coverages:

   **a.** Fire Department Service Charge;

   **b.** Business Income;

   **c.** Extra Expense;

   **d.** Civil Authority;

   **e.** Fire Extinguisher Recharge;

   **f.** Personal Effects; and

   **g.** Inventory and Appraisal.

**E. PROPERTY LOSS CONDITIONS**

**1. Abandonment**

   There can be no abandonment of any property to us.

**2. Appraisal**

   If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Limitation – Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the shorter of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**(1)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(2)** Data stored on such media; or

**(3)** Programming records used for electronic data processing or electronically controlled equipment.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

**6. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(6)** below.

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of:

**(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

   **i.** Of comparable material and quality; and

   **ii.** Used for the same purpose; or

**(ii)** The amount you actually spend that is necessary to repair or replace the loss of damaged property.

**(2)** If the "Actual Cash Value" option applies, as shown in the Declarations, paragraph **(1)** above does not apply. Instead, we will

determine the value of Covered Property at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(c)** Manuscripts;

**(d)** Works of art, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac, antiques.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenant's Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the current replacement cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

**(a)** Blank materials for reproducing the records; and

**(b)** Labor to transcribe or copy the records.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We

4002019530770030037541863442

G-19340-F
(Ed. 01/00)

may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

    **(1)** You have complied with all of the terms of this policy; and

    **(2) (a)** We have reached agreement with you on the amount of loss; or

        **(b)** An appraisal award has been made.

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay reasonable recovery and repair expenses to the recovered property, subject to the Limit of Insurance.

**8. Resumption of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**9. Vacancy**

**a. Description of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

        **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

        **(b)** When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when more than 75% of its total square footage:

            **i.** Is not rented; or

            **ii.** Is not used to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        **(a)** Vandalism;

        **(b)** Sprinkler leakage, unless you have protected the system against freezing;

        **(c)** Building glass breakage;

        **(d)** Water damage;

        **(e)** Theft; or

        **(f)** Attempted Theft.

    **(2)** With respect to covered Causes of Loss other than those listed in **9.b.(1)(a)** through **9.b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**10. Pair, Sets Or Parts**

**a.** Pair or Set. In case of "loss" to any part of a pair or set we may:

    **(1)** Repair or replace any part to restore the pair or set to its value before the "loss"; or

    **(2)** Pay the difference between the value of the pair or set before and after the "loss."

**b.** Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**F. PROPERTY GENERAL CONDITIONS**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

G-19340-F
(Ed. 01/00)

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgage Holders**

   **a.** The term "mortgage holder" includes trustee.

   **b.** We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

   **c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

   **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

     **(1)** Pays any premium due under this policy at our request if you have failed to do so;

     **(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All of the terms of this policy will then apply directly to the mortgage holder.

   **e.** If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

     **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

     **(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   **f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

     **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

     **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

   **a.** We cover loss or damage commencing:

     **(1)** During the policy period shown in the Declarations; and

     **(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

   **b.** The coverage territory is:

     **(1)** The United States of America (including its territories and possessions);

     **(2)** Puerto Rico; and

     **(3)** Canada.

**G. OPTIONAL COVERAGES**

**1. Loss of Value**

If shown as applicable in the declarations, the following also applies. This coverage is subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

   **a.** If a Covered Cause of Loss occurs to covered Building property, we will pay for loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law that:

     **(1)** Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

     **(2)** Regulates the construction or repair of buildings, or establishes zoning of land use requirements at the described premises; and

     **(3)** Is in force at the time of loss.

We will not pay under this Optional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize,

40020195307700000075410634443

or in any way respond to, or assess the effects of "pollutants."

**b.** When a Limit of Insurance is shown in the Declarations, loss to the Building, including loss in value of the undamaged portion of the Building due to enforcement of an ordinance or law, will be determined as follows:

If Replacement Cost Coverage applies and the property is repaired or replaced, on the same or another premises, we will not pay more than the least of:

**(1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit of Insurance applicable to the covered Building property.

If Replacement Cost Coverage applies and the property is not repaired or replaced; or if Replacement Cost Coverage does not apply; we will not pay more than the least of:

**(3)** The actual cash value of the building at the time of loss; or

**(4)** The Limit of Insurance applicable to the covered Building Property.

The terms of this Optional Coverage apply separately to each covered building.

## H. PROPERTY DEFINITIONS

**1.** "Communication systems" means telephone components and equipment including telephone switchgear, operating programs, related software, facsimile transmission equipment, telex equipment and other related hardware used for the transmission of communications.

**2.** "Electrical disturbance" means electrical injury, magnetic injury, disturbance of electronic recordings, or erasure of electronic recordings.

**3.** "Hardware" means network of machine components capable of accepting information, processing it according to a plan and producing the desired results. It includes "hardware" used exclusively in your data processing operations but does not include "software".

**4.** "Loss" means accidental loss or damage.

**5.** "Mechanical breakdown" means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

**6.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**7.** "Operations" means your business activities occurring at the described premises.

**8.** "Period of Restoration" means the period of time that:

**a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a permanent new location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants."

The expiration date of this policy will not cut short the "period of restoration."

**9.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**10.** "Power supply disturbance" means interruption of electrical power supply, power surge, blackout or brownout.

**11.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidence of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money."

**12.** "Software" means:

a. Electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells; and

b. Data and programming records used for electronic data processing or electronically controlled equipment stored on such media;

13. "Specified Causes of Loss" means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the cracking of any part of a system or appliance containing water or steam.

14. "Valuable Papers and records" means inscribed, printed, or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps, or mortgages.

But "valuable papers and records" does not mean:

d. "Money" or "Securities";

e. Converted data;

f. Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

G-20510-C
(Ed. 01/97)

# BUSINESS ACCOUNT PACKAGE POLICY
# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION **C** – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **F** – LIABILITY AND MEDICAL EXPENSES DEFINITIONS.

## A.  COVERAGES

### 1.  Business Liability

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**  The amount we will pay for damages is limited as described in SECTION **D** – LIMITS OF INSURANCE; and

**(2)**  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION – SUPPLEMENTARY PAYMENTS.

**b.**  This insurance applies:

**(1)**  To "bodily injury" and "property damage" only if:

**(a)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(b)**  The "bodily injury" or "property damage" occurs during the policy period.

**(2)**  To:

**(a)**  "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing,

broadcasting or telecasting done by or for you;

**(b)**  "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**c.**  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**d.**  "Property damage" that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the "occurrence" that caused it.

**e.  Coverage Extension – Supplementary Payments**

In addition to the Limits of Insurance, we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(1)**  All expenses we incur.

**(2)**  Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(3)**  The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(4)**  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**(5)**  All costs taxed against the insured in the "suit."

40020185307700000037541863445

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** agrees in writing to:

**(a)** cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** notify any other insurer whose coverage is available to the indemnitee; and

**(d)** cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** provides us with written authorization to:

**(a)** obtain records and other information related to the "suit"; and

**(b)** conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **B.1.b.(2)** of **EXCLUSIONS,** such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgements or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.,** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services; including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## B. EXCLUSIONS

### 1. Applicable to Business Liability Coverage

This insurance does not apply to:

**a.** Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, servicing or furnishing alcoholic beverages.

**d.** Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** Employers' Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f.** Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g.** Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h.** Mobile Equipment

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i.** War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.** Professional Services

"Bodily injury," "property damage," "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services;

**(9)** Veterinary medicine services;

**(10)** Mortician services; and

**(11)** Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**(12)** Services rendered in connection with the creation and/or development, modification, or repair of "software," including but not limited to design, specifications, system or "software" configuration and consultation.

**k.** Damage to Property

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**l.** Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

**m.** Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.** Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.** Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for

4020018530770030037541083447

damages that the insured would have in the absence of the contract or agreement;

(5) Personal injury which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or any loss, cost or expense arising out of any:

a) request, demand, or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned or reclaimed.

q. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract:

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Exclusions c. through o. do not apply to damage by fire, explosion or sprinkler leakage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage of the greater of:

a. The Fire Legal Liability Limit shown in the Declarations; or

b. $100,000.

2. **Applicable to Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Business Liability Coverage.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

3. **Nuclear Energy Liability Exclusion.**

This insurance does not apply:

a. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising

G-20510-C
(Ed. 01/97)

out of the operation of a "nuclear facility" by any person or organization.

**c.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection, with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"byproduct material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(1)** Separating the isotopes of uranium or plutonium;

**(2)** Processing or utilizing "spent fuel" or

**(3)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of or "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of

plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear material" means "source material," "special nuclear material" or "byproduct material";

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

"source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material:

**(a)** Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs **(a)** and **(b)** of the definition of "nuclear facility."

## C.  WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

40020195307700300375411063448

G-20510-C
(Ed. 01/97)

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury" to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury" or "personal injury," or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

(2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insureds with respect to their providing or failing to provide professional health care services; or

(3) "Property damage" to property owned or occupied by or used by or rented or loaned to that "employee," any of your other "employees," any of your partners or members (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. **LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits."

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury," "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal injury" and "advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire, explosion or sprinkler leakage is the Fire Legal Liability limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** Injury or damage under the "products-completed operations hazard" arising from all "occurrences" during the period is the Products-Completed Operations Aggregate limit shown in the Declarations.

**b.** All other injury or damage, including medical expenses, arising from all "occurrences" during the policy period is the General Aggregate limit shown in the Declarations. This limitation does not apply to "property damage" to premises rented to you or temporarily occupied by you with permission of the owner arising out of fire, explosion or sprinkler leakage.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. GENERAL CONDITIONS**

**1. Bankruptcy**

Bankruptcy and insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons or witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e.** If you report an "occurrence" to your workers' compensation insurer which develops into a liability claim for which coverage is provided by this policy, failure to report such "occurrence" to us at the time of "occurrence" shall not be deemed in violation of paragraphs **a., b.,** and **c.** above. However, you shall give written notice of this "occurrence" to us as soon as you are made aware of the fact that this "occurrence" is a liability claim rather than a workers' compensation claim.

4002616530770030037541963449

3. **Financial Responsibility Laws**

   a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

   b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured or

   b. To sue us on this policy unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

F. **DEFINITIONS**

   1. **"Advertising Injury"** means injury arising out of one or more of the following offenses:

      a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      b. Oral or written publication of material that violates a person's right of privacy;

      c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

   2. **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

   3. **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

   4. **"Coverage Territory"** means:

      a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

      b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

      c. All parts of the world if:

         (1) The injury or damage arises out of:

            (a) Goods or products made or sold by you in the territory described in **a.** above; or

            (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

         (2) The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above or in a settlement we agree to.

   5. **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

   6. **"Executive Officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

   7. **"Impaired Property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

      a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b. You have failed to fulfill the terms of a contract or agreement;

      if such property can be restored to use by:

         (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

         (2) Your fulfilling the terms of the contract or agreement.

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos."

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13. "Personal Injury"** means injury, other than "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14. "Products-Completed Operations Hazard";**

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**15. "Property Damage"** means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16. "Software"** means:

**a.** Electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells; and

**b.** Data and programming records used for electronic data processing or electronically controlled equipment stored on such media; and

**c.** Written or printed data, such as programs, routines, and symbolic languages, essential to the operation of computers; and

8.  **"Insured Contract"** means:

a.  A contract for a lease of premises; however, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, explosion or sprinkler leakage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(a)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(b)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(c)  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(b)** above and supervisory, inspection or engineering services; or

(d)  That indemnifies any person or organization for damage by fire, explosion or sprinkler leakage to premises rented or loaned to you or temporarily occupied by you with permission of the owner.

9.  **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10.  **"Loading or Unloading"** means the handling of property:

a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement or property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11.  **"Mobile Equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.  Vehicles maintained for use solely on or next to premises you own or rent;

c.  Vehicles that travel on crawler treads;

d.  Vehicles, whether self-propelled or not, on which are permanently mounted:

(1)  Power cranes, shovels, loaders, diggers or drills; or

(2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.  Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2)  Cherry pickers and similar devices used to raise or lower workers;

40203196307700000375410853450

**d.** Documents containing information on the operation and maintenance of computers.

**17. "Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**18. "Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**19. "Your Product"** means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**20. "Your Work"** means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992,1996



G-144234-B
(Ed. 06/03)

**For All the Commitments You Make®**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TERRORISM RISK INSURANCE ACT ENDORSEMENT

This endorsement addresses requirements of the Terrorism Risk Insurance Act of 2002 and therefore modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY – BUSINESS LIABILITY COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

### Definitions

The definitions provided in this endorsement are based on the definitions in the Act and are intended to have the same meaning. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments.

"Act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

   **a.** The act is an act of terrorism.

   **b.** The act is violent or dangerous to human life, property or infrastructure.

   **c.** The act resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels.

   **d.** The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism loss " means any loss resulting from an act of terrorism that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means:

   **a.** For the period beginning on November 26, 2002 and ending on December 31, 2002, an amount equal to 1% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding November 26, 2002.

   **b.** For the period beginning on January 1, 2003 and ending on December 31, 2003, an amount equal to 7% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2003.

   **c.** For the period beginning on January 1, 2004 and ending on December 31, 2004, an amount equal to 10% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2004.

   **d.** For the period beginning on January 1, 2005 and ending on December 31, 2005, an amount equal to 15% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2005.

### Limitation of Liability

The Act may limit our liability to you under this policy. If annual aggregate insured terrorism losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured terrorism losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

### Policyholder Disclosure Notice

1. Insured terrorism losses would be partially reimbursed by the United States Government under a formula established by the Act. Under this formula, the United States Government would pay 90% of our insured terrorism losses exceeding our insurer deductible.

2. The additional premium charged for the coverage this policy provides for insured terrorism losses is shown on the Declaration Page.

**CNA**
For All the Commitments You Make®

G-140412-A
(Ed. 02/02)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURING AGREEMENT
# KNOWN OR CONTINUING INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESS LIABILITY COVERAGE FORM

**Section A.1.b. (1), COVERAGES / Business Liability,** is amended to add the following provisions:

(c) With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

(i) Prior to the policy period, no "Authorized Insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

(ii) During the policy period, an "Authorized Insured" first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

For purposes of this paragraph, **A.1.b.(1) (c)** only, if **(a)** "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and **(b)** no "Authorized Insured" first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

(d) "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any "Authorized Insured" includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

(e) "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Authorized Insured":

(i) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(ii) Receives a written or verbal demand, claim or "suit" for damages because of the "bodily injury" or "property damage"; or

(iii) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**Section F., DEFINITIONS,** is amended to add the following one (1) definition:

**"Authorized Insured"** means any insured listed under Paragraph 1. of **Section C., Who Is An Insured,** or any "employee" authorized by such an insured to give or receive notice of an "occurrence" or claim.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CNA**
*For All the Commitments You Make®*

G-134800-A
(Ed. 05/99)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNTS PACKAGE POLICY – BUSINESSOWNERS POLICY

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to asbestos; or

**(2)** Any loss, cost or expense that may be awarded or incurred:

   **(a)** by reason of a claim or "suit" for any such injury or damage; or

   **(b)** in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or not the asbestos was at any time:

**(1)** airborne as a fiber, particle or dust;

**(2)** contained in, or formed a part of a product, structure or other real or personal property;

**(3)** carried on clothing;

**(4)** inhaled or ingested; or

**(5)** transmitted by any other means.

G-142604-A
(Ed. 02/02)

**CNA**
*For All the Commitments You Make®*

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROPERTY DAMAGE DEFINITION
## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESS LIABILITY COVERAGE FORM

**Section F., DEFINITIONS,** related to **"Property Damage"** is amended by adding the following provisions:

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts, or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CNA**
*For All the Commitments You Make®*

G-140356-A
(Ed. 02/01)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMPUTER VIRUS AND SYSTEM PENETRATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY - BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY - BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM

**A.** The following exclusions are added to **SECTION B.1., EXCLUSIONS**:

    **(1) "Computer Virus"**

    **(2) "System Penetration"**

**B.** The following definitions are added to **SECTION H., PROPERTY DEFINITIONS**:

**"Computer Virus"** means any "Software" introduced or implanted without authorization into "Hardware" or "Software" which causes the corruption, distortion, deletion, destruction, unauthorized copying or loss of functionality of "Software".

**"System Penetration"** means the intentional and malicious use of a computer to obtain unauthorized access to information and resources stored on "Hardware" in the form of "Software".



G-127618-A09
(Ed. 11/97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FLORIDA CHANGES IN PROPERTY COVERAGE**

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS PROPERTY COVERAGE FORM

**CHANGES IN PROPERTY LOSS CONDITIONS**

1.  Subparagraph **b.** of Section **E.9. Vacancy** is replaced by the following:

    **b.** Reduce the amount we would otherwise pay for the loss or damage by 15%. This reduction does not apply to a "loss" that meets or exceeds the Building limit shown in the Declarations.

**CNA**
For All the Commitments You Make®

G-126534-A
(Ed. 10/97)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EMPLOYMENT – RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESS LIABILITY COVERAGE FORM

The following exclusion is added to Section **B. EXCLUSIONS** of the Business Liability Coverage Form:

This insurance does not apply to:

**r.** "Bodily injury" or "personal injury" to:

**(1)** A person arising out of any;

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(1)**, **(2)** or **(3)** above is directed.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996.



G-121624-B
(Ed. 11/02)

**For All the Commitments You Make®**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM

### SCHEDULE*

| Premises No. | Bldg. No. | Windstorm or Hail Deductible - Fixed Dollar or Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 11 | 1 | $5,000 |
| 12 | 1 | $5,000 |
| 13 | 1 | $5,000 |
| 14 | 1 | $5,000 |

\* Information required to complete this Schedule, if not shown on this endorsement will be shown in the Declarations.

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

### WINDSTORM OR HAIL DEDUCTIBLE CLAUSE

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage. This deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;

2. The building and to personal property in that building, if both sustain loss or damage;

3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;

4. Personal property in the open.

We will not pay for loss or damage until the amount of loss or damage exceeds the Windstorm or Hail Deductible

Percentage amount, the policy deductible or the Fixed Dollar Deductible, whichever is greater. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

### EXAMPLES – APPLICATION OF DEDUCTIBLE:

The amount of loss to the damaged property is $60,000 (building) and $40,000 (business personal property in building).

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property.

The Deductible is 2%.

Building

Step (1): $80,000 X 2% = $1,600

Step (2): $60,000 - $1,600 = $58,400

Business Personal Property

Step (1): $64,000 X 2% = $1,280

Step (2): $40,000 - $1,280 = $38,720

The most we will pay is $97,120 ($58,400 + $38,720). The portion of the total loss that is not covered due to application of the Deductible is $2,880 ($1,600 + $1,280).

4020018530770030037541063429

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996.

**CNA**
*For All the Commitments You Make®*

G-121639-A09
(Ed. 09/96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM

**A.** Section **E.** Property Loss Conditions, paragraph **6.g.** Loss Payment is replaced by the following:

Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage:

**(1)** Within 20 days after we receive the sworn statement of loss and reach written agreement with you; or

**(2)** Within 30 days after we receive the sworn statement of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us.

**B.** Section **A.** Coverage – Covered Causes of Loss, paragraph **3.j.**, SINKHOLE COLLAPSE, in the Businessowners Broad Property Coverage Form is replaced by the following:

**j.** Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into manmade underground cavities.

**C.** Section **H.** PROPERTY DEFINITIONS, paragraph **13.a.** – "Specified Causes of Loss" is replaced by the following:

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into manmade underground cavities.

**D.** If Windstorm or Hail is a Covered Cause of Loss, and Covered Property is located in:

**1.** Monroe County; or

**2.** East of the west bank of the Intra-Coastal Waterway in

**a.** Broward County;

**b.** Dade County;

**c.** Indian River County;

**d.** Martin County;

**e.** Palm Beach County; or

**f.** St. Lucie County,

and if loss or damage to Covered Property is caused by or results from Windstorm, the following exclusion applies:

**WINDSTORM EXTERIOR PAINT OR WATERPROOFING EXCLUSION**

We will not pay for loss or damage to paint; or waterproofing material applies to the exterior of buildings.

We will not include the value of paint or waterproofing material to determine:

**(1)** The amount of the Windstorm or Hail Deductible; or

**(2)** The value of Covered Property.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996.

**CNA**

*For All the Commitments You Make®*

G-121624-B
(Ed. 11/02)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM

## SCHEDULE*

| Premises No. | Bldg. No. | Windstorm or Hail Deductible - Fixed Dollar or Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 6 | 1 | $5,000 |
| 7 | 1 | $5,000 |
| 8 | 1 | $5,000 |
| 9 | 1 | $5,000 |
| 10 | 1 | $5,000 |

\* Information required to complete this Schedule, if not shown on this endorsement will be shown in the Declarations.

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

## WINDSTORM OR HAIL DEDUCTIBLE CLAUSE

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage. This deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;

2. The building and to personal property in that building, if both sustain loss or damage;

3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;

4. Personal property in the open.

We will not pay for loss or damage until the amount of loss or damage exceeds the Windstorm or Hail Deductible

Percentage amount, the policy deductible or the Fixed Dollar Deductible, whichever is greater. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

## EXAMPLES – APPLICATION OF DEDUCTIBLE:

The amount of loss to the damaged property is $60,000 (building) and $40,000 (business personal property in building).

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property.

The Deductible is 2%.

Building

Step (1): $80,000 X 2% = $1,600

Step (2): $60,000 - $1,600 = $58,400

Business Personal Property

Step (1): $64,000 X 2% = $1,280

Step (2): $40,000 - $1,280 = $38,720

The most we will pay is $97,120 ($58,400 + $38,720). The portion of the total loss that is not covered due to application of the Deductible is $2,880 ($1,600 + $1,280).

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996.

**CNA**
For All the Commitments You Make®

G-121624-B
(Ed. 11/02)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS BROAD PROPERTY COVERAGE FORM

### SCHEDULE*

| Premises No. | Bldg. No. | Windstorm or Hail Deductible - Fixed Dollar or Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 1 | 1 | $5,000 |
| 2 | 1 | $5,000 |
| 3 | 1 | $5,000 |
| 4 | 1 | $5,000 |
| 5 | 1 | $5,000 |

\* Information required to complete this Schedule, if not shown on this endorsement will be shown in the Declarations.

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

### WINDSTORM OR HAIL DEDUCTIBLE CLAUSE

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage. This deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;

2. The building and to personal property in that building, if both sustain loss or damage;

3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;

4. Personal property in the open.

We will not pay for loss or damage until the amount of loss or damage exceeds the Windstorm or Hail Deductible

Percentage amount, the policy deductible or the Fixed Dollar Deductible, whichever is greater. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

### EXAMPLES – APPLICATION OF DEDUCTIBLE:

The amount of loss to the damaged property is $60,000 (building) and $40,000 (business personal property in building).

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property.

The Deductible is 2%.

Building

Step (1): $80,000 X 2% = $1,600

Step (2): $60,000 - $1,600 = $58,400

Business Personal Property

Step (1): $64,000 X 2% = $1,280

Step (2): $40,000 - $1,280 = $38,720

The most we will pay is $97,120 ($58,400 + $38,720). The portion of the total loss that is not covered due to application of the Deductible is $2,880 ($1,600 + $1,280).

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996.



**For All the Commitments You Make®**

G-110730-B
(Ed. 02/97)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS LIABILITY COVERAGE FORM
BUSINESSOWNERS COMMON POLICY CONDITIONS

The provisions of this endorsement apply only as respects Hired Auto and Non-Owned Auto Liability Coverage.

### I.   HIRED AUTO LIABILITY

The insurance provided under Paragraph **1.** Business Liability (SECTION **A.** COVERAGES) applies only to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

### II.   NON-OWNED AUTO LIABILITY

The insurance provided under Paragraph **1.** Business Liability (SECTION **A.** COVERAGES) applies only to "bodily injury" or "property damage" arising out of the maintenance or use of a "non-owned auto" by any person other than you in the course of your business.

### III.   SECTION **B.** EXCLUSIONS is amended by the following:

**A.**   Exclusions **c., e., g., h., j., k., l., m., n., o., p.,** and **q.** do not apply.

**B.**   The following exclusions are added:

#### Employer's Liability

"Bodily injury" to:

**(1)**   An "employee" of the insured arising out of and in the course of:

**(a)**   Employment by the insured; or

**(b)**   Performing duties related to the conduct of the insured's business; or

**(2)**   The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)**   Whether the insured may be liable as an employer or in any other capacity; and

**(2)**   To any obligation to share damages with or repay someone else who may pay the damages because of the injury.

This exclusion does not apply to:

**(1)**   Liability assumed by the insured under an "insured contract"; or

**(2)**   "Bodily injury" to domestic "employees" not entitled to workers' compensation benefits.

#### Damage to Property

"Property damage" to:

**(1)**   Property owned or being transported by, or rented or loaned to the insured; or

**(2)**   Property in the care, custody, or control of the insured.

#### Auto Used in Your Business

"Bodily injury" or "property damage" if you are an insured on an Auto insurance policy that insures "autos" used in your business.

### IV.   SECTION **C.** WHO IS AN INSURED is replaced by the following:

#### SECTION C. WHO IS AN INSURED

Each of the following is an insured under this insurance to the extent set forth below:

**1.**   You.

**2.**   Any other person using a "hired auto" with your permission.

**3.**   With respect to a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.

**4.**   Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs **1., 2.** or **3.** above.

None of the following is an insured:

**1.**   Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**2.**   Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

G-110730-B
(Ed. 02/97)

3. Any person while employed in or otherwise engaged in performing duties related to the conduct of an "auto business", other than an "auto business" you operate;

4. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

5. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

V. SECTION D. LIMITS OF INSURANCE is replaced by the following:

**SECTION D. LIMITS OF INSURANCE**

Regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought;

**c.** Persons or organizations making claims or bringing "suits"; or

**d.** "Autos",

the Hired Auto and Non-Owned Auto Liability Each Occurrence Limit shown in the Declarations is the most we will pay for damages under SECTION **A.** COVERAGES because of all "bodily injury" or "property damage" arising out of the maintenance or use of a:

1. "Hired auto" by you or your "employees" in the course of your business; or

2. "Non-owned auto" by any person other than you in the course of your business,

and arising out of any one "occurrence".

The limit of this endorsement applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after

issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

VI. Condition **H.** Other Insurance, of the Businessowners Common Policy Conditions, is replaced by the following:

**H.  Other Insurance.**

This insurance is excess over any other valid and collectible insurance available to you.

VII. Definition **8.** "Insured contract" (SECTION **F.** DEFINITIONS) is amended by the addition of the following:

**g.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

VIII. The following definitions (SECTION **F.** DEFINITIONS) are added:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

"Hired auto" means any "auto" you lease, hire, rent or borrow which is used in connection with your business. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

"Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1993.

POLICY NUMBER:                                                          BP 12 03 06 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

  BUSINESSOWNERS POLICY

## SCHEDULE*

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Provision Applicable (Indicate Paragraph A,B or C) |
|---|---|---|---|---|

### REFER TO LOSS PAYEE SCHEDULE

The following is added to the Businessowners Property Coverage Form LOSS PAYMENT Loss Condition, as shown in the Declarations or by an "A," "B" or "C" in the Schedule:

**A. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as:

  **a.** Warehouse receipts;

  **b.** A contract for deed;

  **c.** Bills of lading; or

  **d.** Financing statements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

  **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

  **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of the Businessowners Property Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

1

Copyright, Insurance Services Office, Inc., 1985, 1988

BP 12 03 06 89

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Businessowners Common Policy Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

BP 12 03 06 89                Copyright, Insurance Services Office, Inc., 1985, 1988



**For All the Commitments You Make®**

# IMPORTANT INFORMATION

### FROM THE MEMBER COMPANIES OF CNA INSURANCE (CNA)

An Asbestos Exclusion Endorsement has been added to your Business Accounts Package Policy. This Asbestos Exclusion Endorsement excludes coverage for Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of the actual, alleged or threatened exposure to asbestos; or any loss, cost or expense that may be awarded or incurred: by reason of a claim or suit for any such injury or damage or in complying with a governmental directive to test for, monitor, clean up, remove, contain or dispose of asbestos.

It was not CNA's intent to provide liability coverage for asbestos related injuries or losses. The Asbestos Exclusion has been added to your policy to further clarify coverage and help avoid any misunderstanding at the time of loss.

G-136061-A
(Ed. 07/99)

G-19340-F
(Ed. 01/00)

**a.** Electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells; and

**b.** Data and programming records used for electronic data processing or electronically controlled equipment stored on such media;

**13.** "Specified Causes of Loss" means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the cracking of any part of a system or appliance containing water or steam.

**14.** "Valuable Papers and records" means inscribed, printed, or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps, or mortgages.

But "valuable papers and records" does not mean:

**d.** "Money" or "Securities";

**e.** Converted data;

**f.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.



**For All the Commitments You Make**

# BUSINESS ACCOUNT PACKAGE POLICY
# BUSINESSOWNERS COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. A building is vacant when it does not contain enough business personal property to conduct customary "operations". Buildings under construction are not considered vacant. This does not apply to:

   **(a)** Seasonal unoccupancy; or

   **(b)** Buildings in the course of construction, renovation or addition.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   **(2)** After damage by a covered cause of loss, permanent repairs to the building:

   **(a)** Have not started, and

   **(b)** Have not been contracted for,

   within 60 days of initial payment of loss.

   **(3)** The building has:

   **(a)** An outstanding order to vacate;

   **(b)** An outstanding demolition order; or

   **(c)** Been declared unsafe by governmental authority.

   **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

   **(5)** Failure to:

   **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that

this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

## D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine, audit and make copies of your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of you, your workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. OTHER INSURANCE**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. Business Account Package Policy Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

3. When this insurance is excess, we will have no duty under Business Account Package Policy Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. PREMIUMS**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. Undeclared exposures or change in your business operation, acquisition or use of locations may occur

during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

1. Applicable to The Business Account Package Policy coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive you rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. Applicable to The Business Account Package Policy Liability coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having property temporary custody of your property will have your rights and duties but only with respect to that property.

Includes Copyrighted Material of Insurance Services Office, Inc., with its Permission.
Copyright, Insurance Services Office, Inc. 1989



For All the Commitments You Make®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE
## (PER LOCATION)

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS LIABILITY COVERAGE FORM

The General Aggregate Limit under LIMITS OF INSURANCE (Section **D**) applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.



**For All the Commitments You Make®**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# HIRED AUTO PHYSICAL DAMAGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS LIABILITY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY – BUSINESSOWNERS COMMON POLICY CONDITIONS

**The following provisions of this endorsement apply only as respects Hired Auto Physical Damage Coverage.**

**I.**   The following is added to COVERAGES (SECTION **A.**):

**3.**   Hired Auto Physical Damage

We will pay for "loss" to a covered "hired auto" or its equipment from any cause.

**II.**   The following is added to EXCLUSIONS (SECTION **B.**):

**4.   Applicable to Hired Auto Physical Damage Coverage**

**a.**   We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(1)** Nuclear Hazard.

**(a)** The explosion of any weapon employing atomic fission or fusion; or

**(b)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**(2)** War or Military Action.

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**b.**   Other Exclusions.

**(1)** We will not pay for "loss" to any of the following:

**(a)** Tape decks or other sound producing equipment unless permanently installed in a "hired auto".

**(b)** Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

**(c)** Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "hired auto" manufacturer for the installation of a radio.

**(d)** Equipment designed or used for the detection or location of radar.

**(2)** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**(a)** Wear and tear, freezing, mechanical or electrical breakdown.

**(b)** Blowouts, punctures or other road damage to tires.

**III.** Section **C.** WHO IS AN INSURED does not apply.

**IV.** Section **D.** LIMITS OF INSURANCE is deleted and replaced by the following:

**SECTION D. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one accident is the lesser of:

**1.**   The actual cash value of the damaged or stolen property as of the time of the "loss";

**2.**   The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or.

**3.**   $50,000.

**DEDUCTIBLE**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by a $250 deductible.

**V.**   SECTION **E.** GENERAL CONDITIONS is deleted and replaced by the following:

**SECTION E. CONDITIONS**

**1.   LOSS CONDITIONS**

40020196307700000375419683453

**a.** APPRAISAL

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**b.** DUTIES IN THE EVENT OF LOSS

**(1)** In the event of "loss", you must give us or our authorized representative prompt notice of the "loss". Include:

**(a)** How, when and where the "loss" occurred;

**(b)** To the extent possible, the names and addresses of any injured persons and witnesses.

**(2)** Additionally, you must:

**(a)** Assume no obligation, make no payment or incur no expense without our consent, except at your own cost.

**(b)** Cooperate with us in the investigation, settlement or defense of any "suit".

**(c)** Promptly notify the police if the covered "hired auto" or any of its equipment is stolen.

**(d)** Take all reasonable steps to protect the covered "hired auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(e)** Permit us to inspect the covered "hired auto" and records proving the "loss" before its repair or disposition.

**(f)** Agree to examination under oath at our request and give us a signed statement of your answers.

**c.** LEGAL ACTION AGAINST US

No one may bring a legal action against us under this endorsement until there has been full compliance with all the terms of this endorsement.

**d.** LOSS PAYMENT

At our option we may:

**(1)** Pay for, repair or replace damaged or stolen property;

**(2)** Return the stolen property, at our expense. We will pay for any damage that results from the "hired auto" from the theft; or

**(3)** Take all or any part of the damaged or stolen property at an agreed or appraised value.

**2.** **GENERAL CONDITIONS**

**a.** BANKRUPTCY

Bankruptcy or insolvency of the Named Insured or the Named Insured's estate will not relieve us of any obligations under this endorsement.

**b.** NO BENEFIT TO BAILEE

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this endorsement.

**c.** POLICY PERIOD, COVERAGE TERRITORY

Under this Hired Auto Physical Damage Coverage endorsement, we cover "losses" occurring:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico; and

**(4)** Canada.

We also cover "loss" to, a covered "hired auto" while being transported between any of these places.

**VI.** Under Business Account Package Policy – Businessowners Common Policy Conditions, the following Conditions are deleted and replaced:

**1.** CONDITION **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement is void in any case of fraud by you at any time as it relates to this endorsement. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This endorsement;

**b.** The covered "hired auto";

**c.** Your interest in the covered "hired auto"; or

**d.** A claim under this endorsement.

**2.** CONDITION **H.** OTHER INSURANCE

**a.** For any covered "hired auto", this endorsement provides primary insurance.

**b.** When this endorsement or any other endorsement provides coverage on the same basis, we will pay only our share. Our share is the proportion that the Limit of Insurance of this endorsement bears to the total of the limits of all the endorsement, coverage forms and policies providing coverage on the same basis.

**3.** CONDITION **J.** TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for which we make payment under this endorsement, has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to ensure our rights and must do nothing after "loss" to impair them.

**VII.** The following are added to DEFINITIONS (SECTION **F.**):

"Hired auto" means any "auto" you lease, hire, rent or borrow which is used in connection with your business. However, this does not include any "auto" that you lease, hire, rent or borrow:

**a.** From any of your "employees", your partners, or your "executive officers" or members of their household, but only while used in your business or your personal affairs; or

**b.** With a driver.

"Loss" means direct and accidental "loss" or damage.



G-144291-A
(Ed. 03/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the COMMON POLICY CONDITIONS:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

IL 01 75 09 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART

The following replaces the second paragraph of the Legal Action Against Us condition:

LEGAL ACTION AGAINST US

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

IL 02 55 03 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

**(a)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

**(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** There has been a failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(7)** On the basis of filing of claims for partial loss caused by sinkhole damage, or on the basis of the risk associated with the occurrence of such a claim, if:

**(a)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

4002019630770020037541963456

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(7)** above; and

(b) This policy does not cover a residential structure or its contents; or

(3) 90 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(7)** above; and

(b) This policy covers a residential structure or its contents.

**C.** The following is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 90 days prior to the expiration of the policy if this policy covers a residential structure or its contents; or

**b.** 45 days prior to the expiration of the policy for all other policies.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**b.** On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

(1) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

        Copyright, Insurance Services Office, Inc., 1999        **IL 02 55 03 00**



**For All the Commitments You Make®**

# POLICYHOLDER NOTICE

CNA Commercial Insurance
CNA Plaza 38S-420
Chicago, IL 60685-0001

Regarding Your:        CNA Commercial Insurance Coverage

Dear CNA Policyholder:

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit **all** United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

**CNA**
For All the Commitments You Make®

# IMPORTANT INFORMATION

## FOR FLORIDA POLICYHOLDERS

## TO OBTAIN INFORMATION ABOUT YOUR COVERAGE OR TO RECEIVE ASSISTANCE IN RESOLVING A COMPLAINT, YOU MAY CALL OUR FLORIDA BRANCH OFFICE TELEPHONE NUMBER 1-877-574-0540

**PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

G-18683-A09                                                                 Page 1 of 1



*For All the Commitments You Make*

# IMPORTANT INFORMATION

## FOR OUR FLORIDA BAP, PACKAGE AND PROPERTY POLICYHOLDERS

Per 1992 House Bill Number 141-H, every insurer transacting insurance in Florida is required to collect a surcharge of 0.1% on all Fire, Allied Lines and Multi-Peril insurance premiums written on commercial property located within the state. The 0.1% surcharge will be applied to all coverage premiums on monoline property policies, BAP policies and package policies.

The purpose of the surcharge is to develop funds for the Fire College Trust Fund.

If you have any questions, please contact your CNA independent agent.



G-134844-A
(Ed. 09/99)

For All the Commitments You Make®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NONCONTRACTOR'S BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS LIABILITY COVERAGE FORM
BUSINESS ACCOUNT PACKAGE POLICY BUSINESSOWNERS COMMON POLICY CONDITIONS

**A. WHO IS AN INSURED (Section C.** of the **Businessowners Liability Coverage Form)** is amended to include as an insured any person or organization (called additional insured) described in paragraphs **2.a.** through **2.g.** below whom you are required to add as an additional insured on this policy under:

1. A written contract or agreement; or

2. An oral contract or agreement where a certificate of insurance showing that person or organization as an additional insured has been issued; but

the written or oral contract or agreement must be:

1. Currently in effect or becoming effective during the term of this policy; or

2. Executed prior to the "bodily injury," "property damage" or "personal injury and advertising injury," but

Only the following persons or organizations are additional insureds under this endorsement and coverage provided to such additional insureds is limited as provided herein:

**a.** A state or political subdivision subject to the following provisions:

(1) This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

(a) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decorations and similar exposures; or

(b) The construction, erection, or removal of elevators; or

(c) The ownership, maintenance, or use of any elevators covered by this insurance.

(2) This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality.

**b.** Any persons or organizations with a controlling interest in you but only with respect to their liability arising out of:

(1) Their financial control of you; or

(2) Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for such additional insured.

**c.** A manager or lessor of premises but only with respect to liability arising out of the ownership, maintenance or use of that specific part of the premises leased to you and subject to the following additional exclusions:

This insurance does not apply to:

(1) Any "occurrence" which takes place after you cease to be a tenant in that premises; or

(2) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**d.** A mortgagee, assignee or receiver but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of a premises by you.

This insurance does not apply to structural alterations, new construction or demolition operations performed by or for such additional insured.

**e.** An owner or other interest from whom land has been leased by you but only with respect to liability arising out of the ownership,

G-134844-A
(Ed. 09/99)

maintenance or use of that specific part of the land leased to you and subject to the following additional exclusions:

This insurance does not apply to:

(1) Any "occurrence" which takes place after you cease to lease that land; or

(2) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

f. A co-owner of a premises co-owned by you and covered under this insurance but only with respect to the co-owners liability as co-owner of such premises.

g. Any person or organization from whom you lease equipment. Such person or organization is insured only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person or organization. A person's or organization's status as an insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

(1) To any "occurrence" which takes place after the equipment lease expires; or

(2) To "bodily injury" or "property damage" arising out of the sole negligence of such additional insured.

Any insurance provided to an additional insured designated under paragraphs **a.** through **g.** above

does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** As respects the coverage provided under this endorsement, **Section H. OTHER INSURANCE,** of the **Businessowners Common Policy Conditions** is deleted and replaced with the following:

**H.   Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance (except as indicated in **2.** below), whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. This insurance is excess over:

   Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract or agreement specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract or agreement, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

3. When this insurance is excess, we will have no duty under Business Account Package Policy Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

# EXHIBIT D

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually
and on Behalf of All Others Similarly
Situated,

CASE NO.:03-010994-02

      Plaintiff/Third Party Plaintiff,

v.

CLASS REPRESENTATION

NEXTEL SOUTH CORP., INC.,
a foreign corporation,

      Defendant/Third-Party Plaintiff,

v.

SOUTHEAST WIRELESS, INC. d/b/a
MOBIL ONE,

      Third-Party Defendant.

_____/

## THIRD-PARTY CLASS ACTION COMPLAINT

      Michael Penzer ("Plaintiff"), individually and on behalf of all others similarly situated, hereby

makes the following allegations against Third-Party Defendant Southeast Wireless, Inc. d/b/a Mobile

One ("Third-Party Defendant"), and states as follows:

### NATURE OF ACTION

      1.    Plaintiff brings this case as a class action pursuant to Florida Rule of Civil Procedure

1.220 in connection with damages that he and all other members of the class he seeks to represent

have sustained as a result of Third-Party Defendant's uniform and standard practice of sending

unsolicited facsimile advertisements to Florida residents.

      2.    Third-Party Defendant's mass dissemination of "junk faxes" constitutes a per se

EXH: D

CASE NO.:03-010994-02

violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(C) (the "Act"). Accordingly, Plaintiff and all other members of the putative class are entitled to an award of statutory damages for every such violation that Third-Party Defendant has committed.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 47 U.S.C. §227(b)(3), which vests exclusive jurisdiction for private actions based on a violation of the Act in state courts.

4.     Venue is proper in Broward County, Florida because the conduct complained of occurred within this jurisdiction. Further, Third-Party Defendant conducts, engages in and carries on a business or business venture in this County.

## PARTIES

5.     Plaintiff is a resident of Broward County, Florida, is over the age of eighteen (18) years, and is otherwise *sui juris*.

6.     Third-Party Defendant is a Florida corporation with its principal place of business located in Broward County, Florida.

## GENERAL ALLEGATIONS

7.     On December 20, 1991, Congress enacted the Act to govern and restrict telemarketing activities conducted via phone and facsimile. Congress passed the Act based, in part, on the following findings:

(a)     The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

(b)     Over 30,000 businesses actively telemarket goods and services to business and residential customers.

(c)     More than 300,000 solicitors call more than 18,000,000 Americans every day.

(d)     Total United States sales generated through telemarketing amounted to

2

C...GE NO.:03-010994-02

$435,000,000,000 in 1990, a more than four-fold increase since 1984.

      (e)    Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

      (f)    Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

      (g)    The U.S. Constitution does not prohibit restrictions on commercial telemarketing solicitations.

      (h)    Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

      (i)    Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

      (j)    Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

      (k)    Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

      (l)    Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

Section 2 of Pub. L. 102-243 (Congressional Statement of Findings). Thus, the transmission of unsolicited advertisements via facsimile violates a person's right to privacy.

    8.    The Act makes it "unlawful for any person in the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. §227(b)(1)(C).

    9.    The Act also allows a person or entity to bring in state court an action based on a violation of the Act and to (a) enjoin such conduct and (b) recover the greater of the actual loss

suffered by such violation or $500 in damages for each such violation. 47 U.S.C. §227(b)(3)(A-C).

10. Third-Party Defendant and Defendant Nextel South Corp. ("Nextel") are parties to a contract pursuant to which Third-Party Defendant solicits subscribers for Nextel's wireless communication services.

11. Third-Party Defendant solicits new customers for Nextel by, among other things, advertising the availability of Nextel's services by transmitting facsimile advertisements to persons in the absence of such persons' prior express invitation or permission.

12. Third-Party Defendant is able to generate additional business by faxing unsolicited advertisements to potential customers. The potential customers, however, are not afforded the option of whether to receive the facsimile advertisements. Third-Party Defendant does not request – nor does it receive – permission or invitation from potential customers to send its facsimile advertisements to the potential customers' facsimile machines.

13. Plaintiff is the owner of a facsimile machine, which is attached to telephone number (954) 454-8030. On or about May 23, 2003, Third-Party Defendant, individually and on behalf of Defendant Nextel, transmitted or caused to be transmitted to Plaintiff via facsimile an unsolicited advertisement in violation of the Act. *See* Exhibit "A" attached hereto.[1] Plaintiff did not give Third-Party Defendant or Defendant Nextel prior express permission or an invitation to send the unsolicited facsimile advertisement.

---

1 Upon calling the phone number listed on Exhibit A, the caller hears the following voice-mail message: "Thank you for responding to our exclusive Nextel Fax Offer. Due to the overwhelming response we are unable to personally take your call. Please leave your name, phone number and the best time to call you back". Phone messages are returned by Third-Party Defendant's authorized agents, including but not necessarily limited to, "Mobile One", which is located at 2 Oakwood Boulevard, Hollywood, Florida 33021".

4

CASE NO.:03-010994-02

## CLASS REPRESENTATION ALLEGATIONS

14.    Plaintiff brings this action on his own behalf and as a Class Action pursuant to Rule 1.220(b)(2) and 1.220(b)(3) of the Florida Rules of Civil Procedure on behalf of a class consisting of: "All persons and/or entities in Florida who have received an unsolicited facsimile advertisement from Third-Party Defendant and Defendant Nextel, including facsimiles sent directly by Third-Party Defendant or Defendant Nextel or by an agent acting on behalf of Third-Party Defendant and/or Defendant Nextel" (the "Class").   Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition.  Excluded from the Class are Third-Party Defendant and Defendant Nextel, their parents, subsidiaries and affiliates, their  directors and officers, and members of their immediate families. Also excluded from the Class are all persons and/or entities who gave Third-Party Defendant or Defendant Nextel or Sunbelt an express invitation or permission to send them facsimile advertisements.

15.    The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable.

16.    Plaintiff believes and therefore avers that there are several thousand  members of the Class in Florida.

17.    There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, inter alia, the following:

        a.    Whether Third-Party Defendant is subject to the provisions of the Act;

        b.    Whether Third-Party Defendant violated the Act;

        c.    Whether Third-Party Defendant sent unsolicited facsimile advertisements to Plaintiff and the Class;

        d.    Whether Third-Party Defendant's authorized agents sent unsolicited facsimile

5

advertisements to Plaintiff and the Class;

        e.      Whether Plaintiff and the Class are entitled to statutory damages as prescribed by the Act; and

        g.      The appropriate measure of damages suffered by Plaintiff and the Class.

18.     The claims of Plaintiff are typical of the claims of the other members of the Class, and Plaintiff has no interests that are adverse or antagonistic to the interests of the other members of the Class. Plaintiff and the Class have sustained substantially similar damage, and their claims arise from an identical factual background and identical legal theories as set forth in this complaint.

19.     Plaintiff will fairly and adequately protect the interests of the other members of the Class and is cognizant of, and determined to, faithfully discharge his fiduciary duties to the absent class members as the Class Representative. Plaintiff is committed to prosecuting this Class Action and has retained competent counsel experienced in litigation of this nature. Plaintiff's interests are coincident with, and not antagonistic to, absent Class members' interests because, by proving his individual claims, he will necessarily prove Third-Party Defendant's liability as to the Class' claims.

20.     This action is brought under Fla. R. Civ. P. 1.220(b)(2) because Third-Party Defendant has acted on grounds generally applicable to all members of the Class, thereby making final injunctive and/or declaratory relief concerning the Class as a whole appropriate. Plaintiff envisions no unusual difficulty in the management of this action as a Class Action.

21.     This action is also brought under Fla. R. Civ. P. 1.220(b)(3) because common questions of law and fact (identified in paragraph 17 above) predominate over questions of law and fact affecting individual Class members. Third-Party Defendant's course of conduct has affected, and continues to affect thousands of Class members. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.

CASE NO.:03-010994-02

Certification under Fla. R. Civ. P. 1.220(b)(3) is appropriate because a Class Action is superior to the other available methods for the fair and efficient adjudication of this action.

**COUNT I**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §227(b)(1)(C)**

22.    Plaintiff realleges the allegations set forth in paragraphs 1-21 above as if set forth herein in full.

23.    Third-Party Defendant, on its own behalf and on behalf of Defendant Nextel, used or caused to be used a telephone facsimile machine, computer or other device to send unsolicited advertisements to telephone facsimile machines owned by Plaintiff and the Class.

24.    Plaintiff and the Class did not give Third-Party Defendant an express invitation or permission to send the facsimile advertisement.

26.    Third-Party Defendant's conduct violated the Act.

27.    Plaintiff and the Class are entitled to recover statutory damages in the amount of $500 for each violation of the Act committed by Third-Party Defendant. Plaintiff and the Class are further entitled to injunctive relief to prevent Third-Party Defendant's continued violation of the Act.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on his own behalf and on behalf of the Class, respectfully requests that this Court enter judgment in favor of Plaintiff and the other members of the Class against Third-Party Defendant, and prays for the following relief:

a.    Certifying this action as a class action as set forth herein and designating Plaintiff as the Class Representatives of the Class described above;

b.    Finding Third-Party Defendant liable to Plaintiff and the other members of the Class

7

CASE NO.:03-010994-02

for statutory damages as prescribed by the Act;

     c.     Granting injunctive relief that directs Third-Party Defendant to cease its pattern and practice of violating the Act;

     d.     Awarding Plaintiff and the other members of the Class attorney's fees, costs and expenses incurred in this action, including reasonable costs of experts retained by counsel, and allowable pre-judgment and post-judgment interest; and

     e.     Granting such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

               Respectfully submitted:

               WITES & KAPETAN, P.A.
               Attorneys for Plaintiff and the Class
               1701 West Hillsboro Blvd., Suite 305
               Deerfield Beach, FL 33442
               (954) 570-8989/(954) 428-3929 (fax)

               By: _____
                   MARC A. WITES
                   Fla. Bar No.: 24783
                   ALEX N. KAPETAN, JR.
                   Fla. Bar No.: 181234
               and

               CAULEY, GELLER, BOWMAN &
                 RUDMAN, LLP
               Attorneys for Plaintiff and the Class
               2255 Glades Road, Suite 421-A
               Boca Raton, FL 33431
               Phone:(561)-750-3000/Fax: (561)-750-3364
               By:     DOUG WILENS

8

CASE NO.:03-010994-02

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via facsimile and mail on this 12th day of December 2003 to: **James B. Baldinger,** Carlton Fields, P.A., 222 Lakeview Avenue, Suite 1400, West Palm Beach, FL 33401 and **Alan M. Burger, Esq.,** Burger & Trailor, P.A., 8603 South Dixie Highway, Suite 303, Miami, FL 33143-7829.

_____
Marc A. Wites

9

To: 9544548030



Nextel
i30sx
Reg. $139.99

**AUTHORIZED REPRESENTATIVE**

Nextel
i60c
Reg. $219.99

# "FREE PHONE" & ACCESSORIES!

*Free i30sx
with only 1-phone
activation required
(no mail-in rebate
required)

*Free i60c's when
activating 3+ phones
(after mail-in rebate)

**HURRY!**
**THIS**
**SPECIAL FLORIDA**
**"FAX OFFER" ENDS 5/30/03**
**Requires New Activation**
***Call For Details**

# SIGN-UP ON NEXTEL'S
## FREE INCOMING PLANS AND GET:

- **FREE Incoming Calls 24/7**
- **FREE Long Distance 24/7**
- **Unlimited Nights & Weekends**
- **Never Any Roaming Charges**
- **Unlimited Florida 2-Way Radio**

*(Nationwide 2-Way Radio / Available in June)*

## ALL TRADE-INS ACCEPTED
### *14 - DAY SATISFACTION GUARANTEED

For more information on this special Florida offer, fax back to:
**Fax: 954-925-0568  or Call: 954-237-5255**

Name: _____     Phone: _____
Fax: _____     Best time to call: _____

*to delete fax number, CALL 1-800-782-4804.*

*Exh. A*

# EXHIBIT E



PO Box 7430 San Francisco CA 94120-7430

**Harbinder K. Johal**
Claims Consultant

December 18, 2003

Telephone  415-932-7521
          800-262-7161 x7521
Facsimile  415-932-7498

Alan M. Burger, Esq.
Burger, Trailor & Farmer, P.A.
Union Planters Building
8603 South Dixie Highway, Suite 303
Miami, FL 33143

Re:   *Michael Penzer, et al. v. Nextel South Corp., Inc., Case No. 03-010994-02,*
      In the 17th Judicial Circuit Court, Broward County, Florida
      Claim Number:      AI001190 CB
      Insured:           Southeast Wireless, Inc.
      Claimant:          Michael Penzer, et al.
      Date of Loss:      05/23/2003
      Policy No.:        2057559063
      Policy Period:     10/22/2002 – 10/22/2003
      Insurer:           Transportation Insurance Company

Dear Mr. Bunger:

This letter will acknowledge receipt of the above referenced matter.

Currently this matter is under investigation. Please understand that anything completed previously or hereafter by this writer should not be construed as a waiver of any benefits or privileges that may exist under the contract of insurance. The text of this communication is based solely on information that has been provided up to and including the date of this letter. Transportation Insurance Company, at this time, is not in a position to either accept or reject your request for defense in the above referenced matter on behalf of Southeast Wireless, Inc. We are presently reviewing the coverage afforded under the policy issued to Southeast Wireless, Inc. and are evaluating the allegations with the facts, as far as they are known to us, with the provisions of the policy. Upon completion of this review and, any additional information, we will advise you as to Transportation Insurance Company's coverage position.

Since there may be a question of coverage on this claim we want to make it clear that Transportation Insurance Company will not take any action on behalf of Southeast Wireless, Inc. at this time. If, however, our investigation indicates that there is coverage triggered under the policy, Transportation Insurance Company will participate in the handling of the claim subject to the provisions set forth in the policy and under applicable law.

Please be advised that the investigation and evaluation undertaken by the undersigned and the carrier is being conducted under a full reservation of its rights. The phrase "reservation of rights" means that the insured's rights and those of the carrier under the policy and applicable law, are fully reserved and any action taken during the course of our investigation and evaluation of this

EXH: E

2

matter should not be deemed a waiver of or "estoppel" to assert any such right.  Neither shall the carrier's investigation and evaluation of this matter prejudice the insureds' rights under the policy and applicable law.

As discussed, we have retained the services of counsel to review this matter on behalf of Transportation Insurance Company.  His information is as follows:

Andrew Butz, Esq.
Bonner, Kiernan, Trebach & Crociata
1250 Eye Street, N.W.
Washington, D.C. 20005
(202) 712-7000

If you have any information, materials, or statements which you would like us to review which might affect the coverage analysis, we ask that you forward those materials to Mr. Butz as soon as possible.

If you have any questions, please feel free to contact me.

Sincerely,

Harbinder K. Johal

cc:     Maria Bush
        Acordia

        George M. Niarchos
        Southeast Wireless, Inc.

# EXHIBIT F



# BURGER
# TRAILOR
# FARMER P.A.

ATTORNEYS    COUNSELORS    LITIGATORS

Duncan J. Farmer
Alan M. Burger
Andrew T. Trailor

Reply to

☐ Miami
Telephone (305) 668-609
(888) 261-923
Fax (305) 668-622

West Palm Beach
Telephone (561) 689-166
(800) 396-013
Fax (561) 689-170

February 3, 2004

Andrew Butz, Esq.
Bonner, Kiernan, Trebach & Crociata
1250 Eye Street, NW
Washington, DC 20005

Re:    **Policy Number:**    **B2057559063**
        **Insured:**           **Southeast Wireless, Inc. d/b/a Mon\bileOne**

Dear Mr. Butz:

This office represents MobileOne. We have previously sent a Notice of Claim and provided a copy of the lawsuit served upon MobileOne by Nextel South Corp., seeking indemnification.

Enclosed is a Third-Party Class Action Complaint asserting claims directly against MobileOne by the Plaintiff. Also enclosed is a copy of the insured's notice sent to the Department of Insurance as a result of your failure to comply with applicable Florida Statutes in defending this action. As such, MobileOne deems the insurer in breach of its insurance contract and will look to the insurance company for any and all liability which MobileOne may suffer.

Sincerely,

ALAN M

AMB/ws
Enclosures
cc:    George Niarchos, MobilOne

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Article Sent To:

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Name (Please Print ...)

Andrew Butz

Street, Apt. No. or PO Box No

City, State, ZIP+4

Exh. F

PS Form 3800, July 1999    See Reverse for Instructions

Union Planters Building - Suite 303 • 8603 South Dixie Highway •
1601 Forum Place - Suite 404 • West

# EXHIBIT G

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *R Conley*

☐ Agent
☐ Addressee

B. Received by *( Printed Name)*   C. Date of Delivery

*R Conley*

1  Article Addressed to:

Andrew Butz, Esq,
Boner, Kiernan et al.
1250 Eye Street, NW
Washington, DC 20005

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*      ☐ Yes

2. Article Number
*(Transfer from service label)*      7099  3400  0007  3209  9006

PS Form 3811, August 2001      Domestic Return Receipt      102595-01-M-0381

EXH. G

# EXHIBIT H

IN THE CIRCUIT COURT IN AND FOR
MIAMI-DADE COUNTY

GENERAL JURISDICTION DIVISION
CASE NO.: 01-30868 CA 32

MICHAEL PENZER,

      Plaintiff,

v.

                                          CLASS REPRESENTATION

MSI MARKTING, INC., a
foreign corporation, d/b/a
Y2MARKETING,

      Defendant.

_____/

## ORDER CERTIFYING CLASS ACTION

THIS CAUSE came before the Court on Plaintiff's Motion for Class Certification. The Court has carefully reviewed and considered said motion, as well as Plaintiff's Supplement to Motion for Class Certification and the evidence appended to such memoranda, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, Defendant's Supplement to Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, and argument of counsel presented at the March 24, 2003 hearing on Plaintiff's Motion for Class Certification, and is otherwise duly advised in the premises. It is hereby Ordered and Adjudged as follows.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Rule 1.220(d)(1), Fla. R.Civ.P., the Court makes the following findings of fact and conclusions of law in support of class certification.

EXH: H

CASE NO. 01-30868 CA 32

## I.   **BACKGROUND**

This class action arises from Defendant's alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(C) (the "TCPA" or the "Act"). Plaintiff brings this action in his own behalf and in a representative capacity on behalf of all persons and entities in Florida who have received unsolicited facsimile advertisements from Defendant.

On December 20, 1991, Congress enacted the Telephone Consumer Protection Act to govern and restrict telemarketing activities conducted via phone and facsimile. The TCPA makes it "unlawful for any person in the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. §227(b)(1)(C).

The TCPA also allows a person or entity to bring in state court an action based on a violation of the TCPA (see Court's Order Denying Defendant's Motion to Dismiss) and to (a) enjoin such conduct and (b) recover the greater of the actual loss suffered by such violation or $500 in damages for each such violation. 47 U.S.C. §227(b)(3)(A-C).

The vast majority of courts have approved the class certification of TCPA claims. See, e.g., Hooters of Augusta, Inc. v. Nicholson, 537 S.E.2d 468, 472 (Ga. Ct. App. 2000)(affirming certification of TCPA class action);[1] Marine Technologies, Inc. v. DirectTV, Inc., Case No. 01-635 (St. Mary's Cir. Ct., MD. October 24, 2002) (certifying TCPA class action); Coontz v. Nextel Communications, Inc., Case No. C200100349, (Tex. Dist. Ct. Johnson Cty. October 16, 2002)(certifying TCPA class action); Girards v. Inter-Contiental Hotels Corp., Case No. 01-3456-K

---

[1]     See also Nicholson v. Hooters of Augusta, Inc., Case No.: 95-RCCV-616 (Ga. Sup. Ct. Richmond Cty. Aug. 25, 1998)(trial court order granting class certification).

(Tex. Dist. Ct. Dallas Cty. September 18, 2002)(certifying TCPA class action); <u>Gold Seal Termite and Pest Control Co. v. PrimeTV, LLC</u>, Cause No. 49C01-0012-CP-3010 (Marion Circuit Court, Indiana, August 29, 2002); (certifying TCPA class action); <u>Malka & Trainor, P.C. v. Capitol Special Risks, Inc.</u>, Civil Action No: 2001-CV-37309 (Ga. Sup. Ct. Fulton Cty. Jan. 25, 2002) (Consent Order Regarding Class Certification entered by Judge Constance C. Russell); <u>Jemiola v. XYZ Corp.</u>, Case No. 411237 (Ohio Ct. Common Pleas Cuyahoga Cty. Dec. 21, 2001) (certifying TCPA class action); <u>WPS, Inc. v. Lobel Financial, Inc.</u>, Case No. 01CP402092 (S.C. Ct. Common Pleas Oct. 12, 2001 (same) ; <u>Kondos v. Lincoln Property Co.</u>, Case No. 00-08709-H, (Tex. Dist. Ct. Dallas Cty. July 12, 2001) (same); <u>Biggerstaff v. Ramada Inn-Coliseum</u>, Case No. 98CP-10-4722 (S.C. Ct. Common Pleas, Feb. 1, 2000).

## II.   CLASS CERTIFICATION PROCEDURES

The substantive merits of a case are not to be considered by the Court on a Motion for Class Certification. Instead, the plaintiff's allegations must be taken as true. E.g., <u>Latman v. Costa Cruise Lines, N.V.</u>, 758 So.2d 699, 701 (Fla. 3rd DCA 2000)(accepting as true Plaintiff's allegations for purposes of determining class certification); <u>Oce Printing Systems USA, Inc. v. Mailers Data Services, Inc.</u>, 760 So.2d 1037 (Fla. 2nd DCA 2000); <u>Fabricant v. Sears Roebuck</u>, 202 F.R.D. 310, 313 (S.D. Florida 2001); <u>Singer v. AT&T Corp.</u>, 185 F.R.D. 681, 686 (S.D. Fla. 1998). Application of class action criteria under Rule 23, Fed. R. Civ. P.,[2] is independent of the merits of the complaint, and it is improper for a Court to conduct a "mini-hearing" on the merits in connection with class

[2]   Federal courts have developed an extensive body of governing case law dealing with issues raised under Rule 23. Florida decisions routinely look to federal case authority in conducting their analyzes under Rule 1.220. See, e.g., <u>Estate of Bobinger v. Deltona Corp.</u>, 563 So.2d 739, 745 (Fla. 2d DCA 1992); <u>Hessen v. Metropolitan Dade County</u>, 513 So.2d 1330, 1332 (Fla. 3d DCA 1987), rev. denied, 525 So.2d 876 (Fla. 1988); <u>Cohen v. Camino Sheridan, Inc.</u>, 466 So.2d 1212,

certification.  As the United States Supreme Court stated, holding that application of Rule 23 criteria

is independent of the merits of the Complaint:

> We find nothing in either the language or history of Rule 23 that gives a court any
> authority to conduct a preliminary inquiry into the merits of a suit in order to
> determine whether it may be maintained as a class action.  Indeed, such a procedure
> contravenes the Rule. ...[and] is directly contrary to the command of [the Rule] that
> Court determine whether a suit denominated as a Class action may be maintained 'as
> such as soon as practicable after the commencement of the action.'

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

## III.  **EVIDENCE SUPPORTING CERTIFICATION**

While the Court did not consider the merits of Plaintiff's claims in determining whether

Plaintiff satisfies the requirements of Rule 1.220, Fla.R.Civ.P., the Court notes that Plaintiff

presented unrebutted evidence of both the background of this action and which supports the

satisfaction of the elements of Rule 1.220.  The unrebutted evidence is as follows.

Plaintiff is the owner of a fax machine.  *See* Plaintiff's Complaint at ¶ 5.  On December 9,

2001 at 3:41 p.m., December 9, 2001 at 4:32 p.m., and again on December 16, 2001 at 3:40 p.m.,

Defendant faxed unsolicited advertisements to Plaintiff.  *Id.* at ¶ 5.  Plaintiff did not give Defendant

prior express permission or an invitation to send the unsolicited facsimile advertisement. *Id.* at ¶ 5.

To send fax advertisements, Defendant contracted with an entity named Fax.com.  See Fax

Broadcasting Agreement attached to Plaintiff's Supplement to Motion for Class Certification as

Exhibit A ("Plaintiff's Supp.").  The Fax.com agreement contains a provision warning parties of the

legal risks of fax advertising:

> Buyer acknowledges that Buyer is aware that Seller's faxing of Buyer's commercial
> message/advertisement on behalf of Buyer presents significant legal issues and risks.
> Buyer acknowledges that Seller has made no representations, promises or assurances

1213-14 (Fla. 4th DCA 1985).

4

CASE NO. 01-30868 CA 32

to Buyer in this regard, and Buyer has had the opportunity to consult with its own legal counsel with respect to the federal Telephone Consumer Protection Act and applicable state law regarding transmission by fax of unsolicited commercial messages/advertisements and the risks attended thereto.

Fax Broadcasting Agreement at ¶11.

Although Defendant's corporate representative Ray Settles stated under oath that "Defendant, through its employees, officers and agents, has never sent any advertisements via facsimile in any state" (see Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories at 4, attached to Plaintiff's Supp. as Exhibit E), Defendant later conceded that it has sent over 20 million fax advertisements in at least 37 states. See Defendant's Amended Answers and Objections to Plaintiff's First Set of Interrogatories at 4-5, attached to Plaintiff's Supp. as Exhibit C. In Florida alone Defendant has sent 1,695,524 fax advertisements since February 22, 2001. See Defendant's Amended Answers and Objections to Plaintiff's First Set of Interrogatories at 4-5, attached to Plaintiff's Supp. as Exhibit C.

Defendant also conceded in its response to a request for production that it does not possess any documents "that evidence any communications from any person requesting that Defendant send them facsimile advertisements." See Defendant's Amended Answers and Objections to Plaintiff's First Request for Documents at request no. 4, attached to Plaintiff's Supp. as Exhibit D. Defendant did not present any evidence in its memoranda or at the March 24, 2003 hearing that any person or entity gave permission, or otherwise extended a prior express invitation or permission, for Defendant to send unsolicited facsimile advertisements, including but not limited to affidavits, deposition testimony or documents.

5

Similarly, Defendant did not present any evidence that it has any policies or procedures by which it attempts to obtain a prior express invitation or permission from persons or entities to whom Defendant sends unsolicited fax advertisements.

**IV.    RULE 1.220(A), Fla.R.Civ.P.**

A.    NUMEROSITY.

Plaintiff has satisfied the numerosity requirement of Rule 1.220(a)(1), Fla. R.Civ.P. Plaintiff has demonstrated that the class of Florida residents includes at least 1,695,524 persons and entities, since Defendant sent at least 1,695,524 fax advertisements in Florida since February 2001. Even if Defendant sent multiple faxes to each recipient, such as in the case of Plaintiff who received three fax advertisements from Defendant, it is clear that the number of class members is sufficiently numerous based on the number of faxes sent by Defendant. See, e.g., Alfred v. Okeelanta Corp., 1991 WL 177658 (S.D. Fla. 1991)(number of members is but one factor; numerosity is linked to impracticability and as such a specific number of members is not held to hard and fast standards)(citation omitted); Kingston Square Tenants Assoc. v. Tuskegee Gardens, Ltd., 1994 WL 808070 (S.D. Fla. 1994); Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd., 197 F.R.D. 522, 525 (S.D. Fla. 2000).[3]

---

3        Ventura v. New York City Health and Hospitals Corp., 125 F.R.D. 595 (S.D.N.Y. 1989) (Plaintiff's lack of knowledge as to exact number of affected persons is not a bar to maintaining class action, when defendants have means to identify those persons at will); Society for Individual Rights, Inc. v. Hampton, 63 F.R.D. 399, (N.D. CAL. 1973) aff'd in part 528 F. 2d 905 (where defendants in proposed class action failed to answer interrogatory concerning number of persons discharged on particular basis per year on ground that number was so large that it would be burdensome and oppressive to count them in order to answer proper interrogatory, requirement of this rule for numerosity was met.).

The Court further notes that Defendant did not contest numerosity, and Defendant agreed to the entry of an order though which Defendant agreed to admit it sent at least 75 faxes identical to those attached as exhibits to Plaintiff's complaint to Florida residents. See Agreed Order attached to Plaintiff's Supp. as Exhibit F. Accordingly, the Class is too large and dispersed over a large geographic area as to make joinder impracticable. See, e.g., Estate of Bobinger v. Deltona Corp., 563 So. 2d 739, 743 (Fla. 2d DCA 1990) (class in excess of 400 persons would satisfy numerosity requirement, as class as small of 25 persons has fulfilled requirement); McFadden v. Staley, 687 So. 2d 357, 358-59 (Fla. 4th DCA 1997) (in affirming class certification, trial court properly concluded that separate joinder of 1,600 potential class members is impracticable). Thus, the Court finds that numerosity has been satisfied.

B.     COMMONALITY.

Plaintiff has satisfied the commonality requirement of Rule 1.220(a)(2), Fla.R.Civ.P. The second requirement, commonality, requires an assessment of whether Plaintiff's claims raise at least one question of law or fact common to the members of the Class. E.g., Fuller v. Becker & Poliakoff, P.A.,197 F.R.D. 697, 700 (M.D. Fla. 2000). Importantly, "the threshold of 'commonality' is not high. Broin v. Philip Morris Cos., Inc., 641 So.2d 888 (Fla. 3d DCA 1994). Aimed in part at determining whether there is a need for combined treatment and a benefit to be derived therefrom, the rule requires only that resolution of the common questions affect all or a substantial number of the class members." Broin, 641 So. 2d at 890 (citation omitted). The claims do not need to arise in the same factual context, but instead must arise from the "same practice or course of conduct" and be based on the same legal theory. Powell v. River Ranch Property Owners Association, Inc., 522 So. 2d 69, 70 (Fla. 2d DCA 1988), rev. denied, 531

So.2d 1354 (Fla. 1988)("The court's primary concern in considering the typicality and commonality of claims should be whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory."); Colonial Penn Ins. Co. v. Magnetic Imaging Systems I, Ltd., 694 So.2d 852, 853-54 (Fla. 3d DCA 1997)("The common or general interest must be the object of the action, in the result sought to be accomplished in the proceedings, or in the question involved in the action.")(citations omitted).

The Court finds that Plaintiff and the Class' claims raise several common questions of law and fact, including, but not necessarily limited to, the following:

A.    Whether Defendant is subject to the Act;

B.    Whether Defendant violated the Act;

C.    Whether Defendant sent unsolicited advertisements to Plaintiff and the Class;

D.    Whether Defendant's faxes were "advertisements" under the TCPA;

E.    Whether Defendant willfully or knowingly violated the Act;

F.    Whether Plaintiff and the Class suffered statutory damages as prescribed by the Act; and

G.    The extent of injuries suffered by Plaintiff and the Class.

While the presentation of common questions is itself sufficient to satisfy the commonality requirement, a class action plaintiff may also demonstrate commonality by showing that the plaintiff's and class' claims arise from a common course of conduct. E.g., McFadden, 687 So. 2d at 358-59 (class certified where all class members share common interest in obtaining relief based on Defendant's common course of conduct).   Here, Plaintiff's and the class' claims arise from a common, if not identical, background as they all received unsolicited facsimile advertisements from

Plaintiff and Defendant does not have any evidence that any person or entity gave Defendant permission or an express invitation to send such faxes.

Further, Plaintiff and the Class all assert only a claim for violation of the TCPA. This common background and common treatment of Plaintiff and the Class further satisfies the commonality requirement. Paladino v. American Dental Plan, Inc., 697 So. 2d 897, 898 (Fla. 1st DCA 1997)(commonality met where all class members aggrieved by insurance Defendant's uniform practice); Love v. General Development Corporation, 555 So. 2d 397, 398 (Fla. 3d DCA 1989)(class certification is appropriate where each member seeks enforcement of contractual remedy based on same essential facts).

Finally, Defendant's affirmative defenses also raise common and predominate issues that are amenable to class treatment. See Defendant's Answer and Affirmative Defenses attached to Plaintiff's Supp. as Exhibit I; see also Nicholson, slip op. at 5 ("The defenses urged by Hooters are applicable to all members of the class and can be evaluated on a class-wide basis."). These defenses include:

A.    Whether Defendant's faxes were "advertisements" under the TCPA;

B.    Whether the TCPA is unconstitutional; and

C.    Whether a Florida resident may assert a private claim for violation of the TCPA in state court.

See Defendant's Affirmative Defenses at 29, 32 and 33. Even though the Court has already ruled on these issues in denying Defendant's motion to dismiss, class certification would render these rulings applicable to all class members.

Thus, the Court finds that Plaintiff satisfies the commonality requirement of Rule 1.220(a)(2), Fla. R.Civ.P., because Plaintiff and the Class' claims present common questions of law and fact,

CASE NO. 01-30868 CA 32

arise from a common background and seek common relief.

C.    TYPICALITY.

The Court finds that Plaintiff satisfies the typicality requirement of Rule 1.220(a)(3), Fla. R.Civ.P., which requires that "the claim or defense of the representative party is typical of the claim or defense of each member of the class."  The United States Supreme Court has noted that the "commonality and typicality requirements of [the rule] tend to merge."  General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982).  Accordingly, like commonality, the typicality analysis is based on whether the plaintiff's claims are the same or similar to the claims of the other members of the class, or whether they allege a common course of conduct by defendant towards members of the class.  See W.S. Badcock Corp. v. Myers, 696 So. 2d 776, 780 (Fla. 1st DCA 1996); Estate of Bobinger, 563 So. 2d at 745.

Here, Plaintiff's claims are typical of the claims of each class member because Plaintiff seeks the same relief for himself as he does for the class.  Further, Plaintiff and the Class' claims arise from an identical course of conduct by Defendant.

The fact that Plaintiff and the Class may have received several different fax advertisements from Defendant (see Plaintiff's Complaint) does not defeat typicality or commonality.  Plaintiff and the Class' claims are based on Defendant's transmission of unsolicited fax advertisements, and the fact that the advertisements may differ in content does not alter the fact that faxes are all advertisements.

Thus, the Court concludes that Plaintiff satisfies the typicality requirement.

D.   ADEQUACY.

The Court finds that both Plaintiff and his counsel are adequate representatives of the Class. "The 'adequacy of representation' requirement is met if the named representative has interests in common with the proposed class members (e.g., Broin v. Phillip Morris Cos., 641 So. 2d 888, 892 (Fla. 3d DCA 1994), rev. denied, 654 So. 2d 919 (Fla. 3d DCA 1995) and plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation.   Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  Through the allegations of his complaint, which the Court accepts as true, by affidavit (see Plaintiff's Supp. at Exhibit G), and Plaintiff's deposition testimony (see Deposition Transcript of Plaintiff attached to Plaintiff's Reply to Defendant's Memoranda in Opposition to Plaintiff's Motion for Class Certification and the excerpts from Plaintiff's deposition set forth in such reply at pages 15-20), Plaintiff has demonstrated that he is cognizant of, and determined to, discharge his duties as class representatives.

Defendant's arguments about Plaintiff's adequacy are not supported by the record or case law. "It is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." Powers v. Government Employees Ins. Co., 192 F.R.D. 313, 317-18 (S.D. Fla. 1998)(proposed class representative adequate where she appeared for deposition, produced documents, and conferred with counsel). Plaintiffs may demonstrate their adequacy by appearing for deposition, producing documents and conferring with counsel. Powers, 192 F.R. D. at 318; Alfred v. Okeelanta Corp., 1991 WL 177658, *14 (S.D. Fla. 1991)(same).  Plaintiff satisfies this standard. Plaintiff has (1) demonstrated his understanding of the class action process and his duties as the class representative, (2) appeared for deposition, (3) provided deposition testimony about his receipt of

unsolicited faxes from Defendant, and (4) confirmed that he keeps in contact with counsel about the case.

Further, there is no case law that suggests that Plaintiff's prior friendship or attorney-client relationship with Plaintiff's counsel precludes a finding of adequacy.   Further, the Court believes that Mr. Wites and Wites & Kapetan, P.A. are adequate class counsel regardless of Mr. Wites' prior friendship with Plaintiff. The Court further notes that Plaintiff is represented by two law firms, that Plaintiff did not have any prior relationship with any member of the Cauley Geller firm, and that the Court has the discretion to review and approve any settlement or award of attorneys' fees and costs to Plaintiff's counsel, whether through a settlement or at trial.

Further, Plaintiff's counsel are qualified, experienced and able to conduct this litigation. Thus, the Court finds that Plaintiff and his counsel satisfy the adequacy requirement of Rule 1.220(a)(4), Fla. R.Civ.P.

## V.    **RULE 1.220(b)(3), Fla.R.Civ.P.**

In addition to Rule 1.220(a)'s requirements, a plaintiff must establish that the Class claims meet the requirements of one of the subsections of Rule 1.220(b).  Here, Plaintiff meets the requirements of Rule 1.220(b)(3), which requires the existence of common questions of law and fact that predominate over any individual issues and that class representation is superior for resolving the controversy than other available methods.

### A.    PREDOMINANCE.

The predominance requirement of Rule 1.220(b)(3), Fla.R.Civ.P., is met where the basic issue of liability common to all class members predominates over the individual issues of the class members. R.J. Reynolds Tobacco Co. v. Engle, 672 So. 2d 39, 41 (Fla. 3d DCA), rev. denied, 682

So. 2d 110 (Fla. 1996). The claims of Plaintiff and the Class arise from a common and typical – if not identical - background regarding the transmission of unsolicited facsimile advertisements on behalf of Defendant. This class-wide issue predominates over any individual issues that can be raised by Defendant.

Further, because Defendant does not have any evidence that any person gave it or any third party express permission to send facsimile advertisements, and the Class expressly excludes all persons that who gave such permission, there are no individual issues that predominate. Nicholson, slip op. at 4 ("The Court rejects Hooters' contention that individual issues of consent or permission predominate since there is   no evidence that any recipients gave permission to receive a Hooters facsimile advertisement before it was transmitted."); Jemiola, slip op. at 6 ("In the present case, 'the common nucleus of operative fact' is that all members of the class are recipients of unsolicited facsimile advertisements from the defendant. There is no evidence in the record indicating that the defendant ever obtained 'prior express invitation or permission' from any recipient before sending its facsimile advertisements. Therefore, there are no individual issues of express authorization or consent."); see also  Hooters of Augusta, Inc. v. Nicholson, 537 S.E.2d 468, 472 (Ga. Ct. App. 2001)(affirming certification of TCPA class action); ESI Ergonomic Solutions, LLC v.  Artists Theatre Circuit, Inc., 2002 Ariz. App. LEXIS 109 (Ariz. Ct. App. July 16, 2002)(reversing trial court's denial of class certification).

The Court does not agree that Defendant has raised any arguments that defeat predominance, particularly in light of the fact that (a) Plaintiff alleges that Defendant did not obtain the prior express invitation or permission of any class member (see Plaintiff's complaint at 12, 14 and 25) and the Court must accept, at this time, these allegations as true (Broin, 641 So. 2d at 890) and (b) Defendant

13

did not present any evidence to support such arguments. The issue of consent does not defeat class certification because – in addition to the fact that Defendant does not have any evidence that any person or entity consented to Defendant's intentional violation of the TCPA - it would be unreasonable to suggest that Defendant even tried to obtain and/or make record of any recipient's consent given that Defendant has sent out over 1.6 million unsolicited fax advertisements in Florida.

Similarly, Defendant's argument about the alleged "business relationship" defenses also fails because (a) the plain language of the TCPA makes clear that the defense does not apply to unsolicited facsimile advertisements[4] and (b) even if it did, Defendant does not have any evidence to support such defense.

Likewise, Defendant's argument about the mode by which a class member received an unsolicited fax advertisement also fails. Because new technology permits people to convert facsimiles received over a telephone line into an e-mail, Defendant argues that "an individualized inquiry would need to be undertaken as to whether each fax was received on a 'telephone facsimile machine,'" as required by the TCPA. Id. This interpretation is at odds with the TCPA, as it is based on the faulty premise that the facsimile advertisements are sent as e-mails (for which Defendant did

---

4       Although deference is generally afforded to the interpretations of an agency charged with administering a statute, "no deference is due to agency interpretations at odds with the plain language of the statute itself." Public Employee Retirement System v. Betts, 492 U.S. 158, 171 (1989); Heimmermann v. First Union Mortg. Corp., 305 F.3d 1257, 1261 (11th Cir. 2002) (same). Here, the TCPA expressly provides an established business relationship exclusion in the provisions of the TCPA dealing with telephone solicitations, but does not include the same exemption with respect to facsimile advertisements. Compare 47 U.S.C. § 227(a)(3) with 47 U.S.C. § 227(a)(4). Thus, the only l ogical c onclusion t hat c an b e d rawn from t his s tatutory i nterpretation i s t hat Congress did not intend to create an "established business relationship" exception to the transmission of u nsolicited f acsimile a dvertisements. Rodriguez v. U.S., 480 U.S. 522, 525 (1987)("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

not produce any evidence), rather than converted to an e-mail after it has been received over the telephone lines.

In short, since Defendant is without evidence to support the existence of any individual issues, and since it is illogical to assume that Defendant could have obtained prior express consent or permission from the hundreds of thousands, if not millions, of Florida residents to whom it sent fax advertisements, there are no individual issues that predominate or would otherwise require mini-trials over the issue of consent.

Finally, the Court also notes that even if Defendant did possess evidence of individual issues of consent as to some class members, such issues would not predominate over the many common questions of law and fact raised by both Plaintiff and the Class' claims and Defendant's defenses. For example, the class mechanism would allow for the resolution in this single class action the issues of (a) whether Defendant's faxes are advertisements, (b) whether the TCPA is constitutional, (c) whether there is a private right of action for TCPA claims in Florida, and (d) whether Defendant knowingly and intentionally violated the TCPA. The resolution of these questions in a single action would "allow class members to bring individual actions with the benefit of a res judicata finding of liability". Fabricant, 202 F.R.D. at 317 (citing Note, Utilizing Statistics & Bellwether Trials in Mass Torts, 8 Wm. & Mary Bill Rts. J. 199, 236 (1999)(advocating use of and explaining the efficiency of certifying a class to resolve liability issues, followed by mini-trials to resolve individualized issues, rather than full and separate individual trials). The resolution of these common issues in a single action also is a superior to burdening multiple courts and judges with countless hearings and hours of labor over the same, exact issues and, therefore, would be "a significant efficiency gain" for Florida's courts. In re Carbon Dioxide Antitrust Litigation, 149 F.R.D. 229, 234 (M.D. Fla. 1994). Moreover,

"[s]hould it become appropriate, the court may divide the class into subclasses to resolve these issues." Broin, 641 So. 2d at 891 (citations omitted).

Thus, the Court finds that Plaintiff satisfies the predominance requirement of Rule 1.220(b)(3), Fla.R.Civ.P.[5]

B.    SUPERIORITY.

The superiority requirement of Rule 1.220(b)(3), Fla.R.Civ.P., is satisfied where class treatment is superior "to other available methods for the fair and efficient adjudication of the controversy." Here, class certification is superior to alternative methods of adjudication because it is highly unlikely that individual class members would bring individual lawsuits against Defendant. To this end, Defendant has not presented any evidence that any other person or entity has brought a TCPA claim against Defendant in Florida. "The absence of individual lawsuits is typically viewed as supporting the superiority of a class action." See, e.g., ESI Ergonomics Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. Ct. App. 2002) (lack of individual TCPA cases supported superiority of class claims) (citing cases). The absence of other suits shows that class members may be unaware of their rights, the cost and inconvenience of individual litigation exceeds the benefits, and that other class members have no interest in controlling their own litigation. Id.

---

5    Defendant's reliance on Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995), and Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162 (S.D. Ind. 1997) is unavailing. Those cases held that a proposed class definition, which included those persons who received an unsolicited facsimile advertisement, was flawed because "[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each case." Forman, 164 F.R.D. at 403. If the courts' premise is applied, then, based on their overly broad reading of Rule 23(a)(1), class certification would never be attainable under the TCPA or under any other legal theory. The Court further notes that these Courts actually lacked jurisdiction over the cases before them, as federal courts do not have jurisdiction over private TCPA claims. International Science and Tech. Institute, Inc. v. Inacom Comm., Inc. 106 F. 3rd 146 (4th Cir. 1997); Foxhall Realty Law Offices, Inc. v Telecommunications Premium Serv., Ltd., 156 F. 3d 432 (2nd Cir. 1998); and Murphy v. Lanier, 204

Defendant's arguments that TCPA claims are not amenable to class treatment is without support. The express language of the TCPA does not preclude class action lawsuits to recover damages. Accordingly, class actions are an available and permissible vehicle to seek relief on behalf of a substantial number of persons raising common claims. See Califano v. Yamasaki, 442 U.S. 682, 699-700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court.").

The Court also finds that the possibility that class members may receive in a settlement of this class action (assuming that the case is not tried to judgment) an amount less than the statutory damages available under the TCPA does not defeat class certification. As in all lawsuits, Plaintiff and his counsel may negotiate any settlement with Defendant of any amount, which must of course be approved by this Court as fair and reasonable and must allow class members who do not find the settlement adequate to exclude themselves from the class.

Further, assuming that Defendant chooses to settle this matter rather than try the case to judgment, the class mechanism likely will provide the only means by which class members may obtain any relief, even if in an amount less than that afforded by the statute. As the Fourth District Court of Appeal noted in McFadden, the expense of litigating each of the Class members' claims individually would be so cost prohibitive as to deny the class members with a viable remedy:

> There is no error or abuse of discretion in the trial court's conclusion that a class action is particularly appropriate in this case because of the confluence of a large number of class members and the fact that the injuries suffered by each were relatively minor. It is likely that permitting a class action in this case may provide litigants with their only economically viable remedy.

F. 3d 911 (9th Cir. 2000).

CASE NO. 01-30868 CA 32

McFadden, 687 So. 2d at 360.

Likewise, the possibility that the damages awarded in a trial in this action may be substantial given the statutory penalty of $500 and that Defendant has sent over 1.6 million fax advertisements does not weigh against class certification. As reasoned by the ESI Ergonomics court, "[g]iven that Congress determined the per-violation penalty and allowed for the pursuit of class actions under the statute, it is not for the court to determine that the penalty when applied in a class action context is unfair. The fairness of statutory punishment, within due process concerns, is properly determined by the legislature." ESI Ergonomic Solutions, LLC v. Artists Theatre Circuit, Inc., 2002 Ariz. App. LEXIS 109 (Ariz. Ct. App. July 16, 2002). "To deny the superiority of a class action because the size of the class made the damages annihilating, would serve to encourage violation of the statute on a grand rather than a small scale." Id.

Finally, the Court notes that Defendant does not make any suggestion "that another organizational method is a superior to a class action for the fair and efficient adjudication of this controversy" (In re Carbon Dioxide Antitrust Litigation, 149 F.R.D. 229, 234 (M.D. Fla. 1994)) other than to suggest that a better alternative is to allow the class members to bring individual actions. The Court finds that hundreds of thousands of individual actions that could result from Defendant's mass faxing of advertisements would impose a massive and unnecessary burden on Florida's courts, and impose needless costs and time burdens on absent class members. Thus, Plaintiff satisfies the superiority requirement of Rule 1.220(b)(3), Fla. R.Civ.P.

## VI.    RULE 1.220(b)(2), Fla.R.Civ.P.

Injunctive relief under Rule 1.220(b)(2) also is appropriate to prevent a defendant from continuing its deceptive and misleading practices. See, e.g., Davis v. Powertel, Inc., 776 So. 2d 971

(Fla. 1st DCA 2000). Here, Plaintiff has alleged that Defendant has acted or refused to act on grounds generally applicable to all class members in its practice of mass faxing of unsolicited fax advertisements. Thus, while Plaintiff has yet to move for injunctive relief, class treatment provides the best mechanism through which to seek an injunction and determine whether an injunction is an appropriate remedy.

## VII.   DECISION

In consideration of all of the relevant facts under Rule 1.220, Fla.R.Civ.P., as well as a survey of appellate decisions affirming the certification of class actions with facts and individual issues far more complex than presented here,[6] the Court finds that Plaintiff and his counsel have satisfied all of the applicable elements of Rule 1.220, Fla.R.Civ.P. Plaintiff and the class' claim that Defendant sends unsolicited advertisements via facsimile without the prior express invitation or permission of the recipient is amenable to class treatment, particularly in light of Defendant's failure to present any evidence that any person or entity gave consent or that Defendant made any effort to obtain such consent, as well as the logical conclusion that it would simply be impossible

---

6      E.g., Fabricant v. Sears Roebuck, 202 F.R.D. 310, 313 (S.D. Florida 2001)(certified class against defendant that marketed and sold insurance to thousands of consumers alleging that defendant failed to make sufficient disclosures and to obtain appropriate consent in violation of TILA and Florida law); Colonial Penn Ins. Co. v. Magnetic Imaging Systems I, Ltd., 694 So.2d 852, 853-54 (Fla. 3d DCA 1997)(certification of class of medical providers against insurer that failed to pay interest due under state statute as a result of insurer's late payment for medical services); McFadden v. Staley, 687 So.2d 357, 359 (Fla. 4th DCA 1997)(certification of class of restart aunt patrons that became ill from eating adulterated food over 4-day period); Union American Ins. Co. v. Rodriguez, 696 So. 2d 1248 (Fla. 3rd DCA 1997)(certified class of persons challenging insurer's practice of canceling insurance on a date later than initially stated and failing to refund premiums);R.J. Reynolds Tobacco Co. v. Engle, 672 So. 2d 39, 41 (Fla. 3d DCA)(certification of class of Florida residents who had suffered or died from diseases and medical conditions caused by their addiction to cigarettes that contained nicotine); Broin v. Philip Morris Cos., Inc., 641 So.2d 888 (Fla. 3d DCA 1994)(certification of class of non-smoking flight attendants that suffered injuries caused by inhalation of second-hand cigarette smoke in airplane cabins despite).

for Defendant to do so in light of its alleged practice of fax blasting millions of fax advertisements to Florida residents and others throughout the country.

Therefore, Plaintiff's Motion for Class Certification is **Granted**. Plaintiff and his counsel, the law firms of Wites & Kapetan, P.A., and Cauley, Geller, Bowman, Coates & Rudman, LLP, are respectively approved as class representative and class counsel.

## VIII.   CLASS DEFINITION

The class is defined as:

> All persons and/or entities who are Florida residents, who received a facsimile advertisement from Defendant or its agents, and who did not provide a prior express permission or invitation to send them the facsimile advertisement (the "Class").

Any person who gave prior express consent for Defendant or its agents to send a facsimile advertisement offering Defendant's services is specifically excluded from the Class. See, e.g., Nicholson, slip op. at 4 ("Any recipient of a Hooters facsimile advertisement who specifically contacted either Hooters or Value-Fax to invite the transmission of the Hooters advertisement would not be a member of the class and could not recover under the TCPA."). Also excluded from the Class are Defendant, its parents, subsidiaries and affiliates, its directors and officers, and members of their immediate families.

## IX.   NOTICE

Pursuant to Rule 1.220(d)(1), Fla.R.Civ.P., the Court hereby orders class counsel to prepare appropriate forms of notice to the Class for the Court's consideration and approval.

CASE NO. 01-30868 CA 32

DONE AND ORDERED in chambers at Miami-Dade County, Florida on this _____ day of

_____, 2003.

_____
HON. LESLIE ROTHENBERG
CIRCUIT COURT JUDGE

Copies furnished to:

Marc A. Wites, counsel for Plaintiff, 1701 W. Hillsboro Blvd., Suite 305, Deerfield Beach, FL

Roy Hartman, counsel for Defendant, 1401 Brickell Avenue, Suite 700, Miami, FL

21

# EXHIBIT I

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

v.

NEXTEL SOUTH CORP., INC.,
a foreign corporation,

        Defendant,

v.

SUNBELT and SOUTHEAST WIRELESS,
INC.,

        Third Party Defendants

CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

_____/

## STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT

Plaintiff Michael Penzer, individually and on behalf of all others similarly situated, and defendant Southeast Wireless, Inc. (the "Parties") have entered into the following Stipulation and Agreement of Class Action Settlement (the "Settlement Stipulation") that provides for the settlement (the "Settlement") of the above-captioned action (the "Action"), subject to the approval of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "Court").

**WHEREAS**, plaintiff Michael Penzer ("Plaintiff") and the members of the proposed class are Florida residents for jurisdictional purposes and owners of Broward and Miami-Dade County facsimile numbers who received unsolicited facsimile advertisements from defendant Southeast Wireless, Inc. ("Southeast Wireless") that advertise cellular services.

**WHEREAS**, Plaintiff has filed complaints seeking damages under the Telephone Consumer Protection Act against Southeast Wireless and Nextel South Corp, Inc. ("Nextel").

EXH. I

**WHEREAS,** Nextel filed a third-party complaint against Southeast Wireless seeking contribution and indemnity as to Plaintiff's claims against Nextel.

**WHEREAS,** Nextel continues to deny every allegation of liability and/or wrongdoing and to deny that it has any liability to Plaintiff and/or any putative class member for any claims, causes of action, statutory penalties, costs, expenses, attorneys' fees or damages of any kind.

**WHEREAS,** Southeast Wireless submitted Plaintiff's claims to its insurer, CNA and Transportation Insurance Company (the "Insurer") under policy number 2057559063 ("the Policy"), and the Insurer has refused to provide Southeast Wireless with a defense or with coverage for Plaintiff's claims.

**WHEREAS,** Southeast Wireless seeks to protect itself from liability as allowed by law and specifically authorized by the decision in *Coblentz v. American Surety Company of New York*, 416 F.2d 1059 (5th Cir. 1969), which case has been approved by Florida's courts. See, e.g., Quintana v. Barad, 528 So. 2d 1300 (Fla. 3d DCA 1988).

**WHEREAS,** all parties, through their counsel, have engaged in arm's-length negotiations to resolve the Action.

**WHEREAS,** Plaintiff believes that the Settlement provided for herein serves the best interest of Plaintiff, the Class and the Court.

**WHEREAS,** Plaintiff's counsel have made a thorough and independent investigation of the facts and the law, including, *inter alia,* (i) reviewing documents produced in response to formal and informal document requests; (ii) reviewing information provided in response to interrogatories; (iii) conducting their own independent financial analyses of the damages calculations, and (iv) researching the law pertaining to the claims asserted in the Action.   As a result of these extensive analyses, Plaintiff's counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the best interests of Plaintiff and the Class, and appropriately minimizes the risks of continued

litigation. Likewise, counsel for Southeast Wireless supports the settlement, and counsel for Nextel supports the portions of the Settlement Stipulation to which Nextel is a party, as more fully described in Section B hereof.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED,** subject to the approval of the Court, that the Action is settled upon and subject to the following terms and conditions:

### A.    COBLENTZ AGREEMENT

1.    Plaintiff shall receive a judgment against Southeast Wireless in the amount of twelve million dollars ($12,000,000.00), which represents an amount equal to (a) the total number of persons (*i.e.,* 24,000) to whom Southeast Wireless sent an unsolicited fax advertisement during the class period times (b) five-hundred dollars ($500.00) for each unsolicited fax advertisement as provided in 47 U.S.C. §227(b)(3)(A-C) (the "Judgment"). *See* Judgment attached hereto as Exhibit A.

2.    Plaintiff agrees that he shall not, individually or on behalf of the class, now or at any time, execute, garnish, levy, attach any assets or otherwise seek to recover any sums of money under the Judgment or any amendment to the Judgment or any other Judgment arising from or relating to the Action or the transmission of fax advertisements against Southeast Wireless, its parents, subsidiaries, officers, directors or shareholders.

3.    The Judgment shall contain a clause that the Judgment can only be satisfied by and against the Insurer and/or any insurers issuing any such policies of insurance to the Insurer or Southeast Wireless for Southeast Wireless or its Insurer and/or from any insurance policy providing coverage to Southeast Wireless and/or from any excontractual damages recoverable against Insurer and/or any insurers issuing any such policies to the Insurer or Southeast Wireless. The action that Plaintiff will file against such parties pursuant to the assignment described in paragraph five (5) below shall be referred to herein as the "Coblentz Action".

4.      The Judgment and this Stipulation shall be null and void and Plaintiff and Southeast Wireless returned to their respective positions before the entry into this Stipulation if this Stipulation and/or Judgment is found to be unenforceable against the Insurer because the amount of the Judgment is found to be unreasonable, the result of collusion or otherwise unenforceable; in such case, Plaintiff may continue pursuit of the claims at issue against Southeast Wireless only if it has been determined that Southeast Wireless' Insurer must provide a defense to and coverage for Plaintiff's claims and said insurer in fact provides a defense to the Action; in such event, (a) Plaintiff may not: (i) seek damages, whether individually or on behalf of the class, in an amount that exceeds Southeast Wireless' insurance policy or such other amount that might be recoverable from the Insurer and (ii) in the event of judgment against Southeast Wireless, execute, garnish, levy and/or attach any assets or otherwise seek to recover anything tangible, intangible, assets and/or sums of money from Southeast Wireless or any person or entity doing business with Southeast Wireless other than seeking collection from the proceeds of Southeast Wireless' insurance policy and such other monies that the Insurer may be obligated to pay to Plaintiff, and (b) Southeast Wireless agrees not to raise, and hereby waives, the statute of limitations as a defense to Plaintiff's claims against Southeast Wireless.

5.      In exchange for this agreement, Southeast Wireless will assign and transfer to Plaintiff all of its individual and joint rights and causes of action it may have against the Insurer and/or any of its subsidiary companies, officers, agents, employees, or servants to recover from the Insurer on Judgment attached hereto as Exhibit A (the "Assignment"). *See* Assignment attached hereto as Exhibit B.

6.      Southeast Wireless does not assign, and retains the right to prosecute, its action against the Insurer for failure to provide Southeast Wireless a defense to or coverage for Plaintiff's claims (the "Bad Faith Claims"), provided that (a) Southeast Wireless may only assert the Bad Faith

Claims in the Coblentz Action that Plaintiff will bring against the Insurer, (b) Southeast Wireless will not make any allegations or arguments that conflict with Plaintiff's claims against the Insurer and (c) such Bad Faith Claims are limited to claims for attorneys' fees and costs incurred by Southeast Wireless in defending the Action, as well as attorneys' fees and costs incurred by Southeast Wireless in bringing the Bad Faith Claims. Similarly, Plaintiff will not oppose any effort by Southeast Wireless in the Coblentz Action to recover the attorneys' fees and costs incurred by Southeast Wireless in defending the Action, as well as attorneys' fees and costs incurred by Southeast Wireless in bringing the Bad Faith Claims. Alan M. Burger, Esq. of Burger, Trailor & Farmer, P.A. will serve as counsel to Southeast Wireless for the Bad Faith Claims. Mr. Burger will submit in word or word perfect format to Plaintiff's counsel the allegations and claims for the Bad Faith Claims for inclusion in the complaint that Plaintiff will file against Southeast Wireless' Insurer within forty-five (45) days of the date of execution of this Settlement Stipulation.

7.      The parties agree to cooperate with each other, as reasonably required by the parties and their attorneys or assigns, in any litigation that may be initiated upon the assignment of claims against the Insurer to recover damages under the Policy and for bad faith as referenced in paragraph six (6) above and further agree to execute any documents reasonably requested by the parties or their attorneys in furtherance of such claims.

8.      Southeast Wireless will consent to Plaintiff's filing of the Coblentz Action in the Action and under the same case number as the Action against the Insurer pursuant to this Stipulation and, in the event the Coblentz Action against the Insurer is filed through a new complaint, Southeast Wireless will not object to the transfer of such case to the same Judge if Plaintiff so moves. Upon payment in satisfaction of the Judgment or the event that Plaintiff cannot go forward against Southeast Wireless as described in paragraph four (4) above, Plaintiff will dismiss with prejudice Southeast Wireless with each party to bear its own attorneys' fees and costs and the parties shall

APR-21-2004 WED 09:53 AM                          FAX NO.                          P. 07

04/19/2004  21:43    9543540205              WITES&KAPETAN                    PAGE  02/02

a general and mutual release of all claims from the beginning of the world to the date of execution of this Settlement Stipulation.

## B. NEXTEL

9. Immediately upon execution of this Settlement Stipulation, Plaintiff, Nextel, and Southeast Wireless will execute, and Nextel will file with the Court, a joint motion to change case caption and stipulation of dismissal, in the form attached here to as Exhibit H, requesting the Court to enter the agreed order changing case caption and dismissing claims with prejudice, attached as Exhibit I hereto.

10. Nextel agrees that it will bear its own fees and costs, and will not in any way through set-off or otherwise seek the recovery of any fees or costs, from Plaintiff or Southeast Wireless, in connection with any claim or defense asserted in the Action by any party. Nextel and Southeast Wireless agree to a mutual release of all claims that either of them has against the other that were or could have been brought in the Action. Notwithstanding the foregoing, Nextel expressly reserves the right to assert claims for indemnification and contribution against Southeast Wireless in the event that any claims are again asserted against Nextel related to the alleged acts that gave rise to this Action. Nextel and Southeast Wireless further agree that their mutual release does not prejudice the rights that either of them have pursuant to the dealer agreement between Nextel and Southeast Wireless.

11. Nextel is not, and will not be, a party to the Coblentz agreement described above or class action settlement described below. Nextel makes no judgment or representation regarding the Coblentz Agreement or class action settlement. Plaintiff, Nextel, and Southeast Wireless agree that the agreements contained in this Section B, including the agreed stipulation of dismissal and change of caption, are binding and enforceable on Plaintiff, Nextel, and Southeast Wireless irrespective of the enforceability of any other agreements or attachments contained in this Settlement Stipulation, or any language to the contrary contained in this Settlement Stipulation or the attachments.

## CLASS ACTION SETTLEMENT FUNDED BY COBLENTZ AGREEMENT

12.    For Settlement purposes only, the Action shall be maintained and proceed as an opt-out class action, pursuant to Rules 1.220(b)(2) and 1.220(b)(3) of the Florida Rules of Civil Procedure. The class shall be defined as all persons and entities in Florida to whom Southeast Wireless or any person or entity acting on its behalf sent an unsolicited facsimile advertisement (the "Class"). Excluded from the Class are Southeast Wireless and Nextel, their parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families. Also excluded from the Class are all persons and/or entities who gave Southeast Wireless or Nextel an express invitation or permission to send them facsimile advertisements.

13.    The Settlement includes the following relief, terms and conditions:

    A.  Upon completion of the Judgment, the Assignment, certification of the class and the entry of appropriate orders by the Court approving the class certification and settlement, Plaintiff will commence an action against the Insurer pursuant to the Coblentz Agreement described above.

    B.  Upon the successful completion of Plaintiff's Coblentz Action against the Insurer, the proceeds obtained from the Insurer will be placed in an interest bearing account established and directed by Plaintiff's counsel (the "Settlement Fund").

    C.  Plaintiff may use a reasonable portion of the proceeds to hire and pay a third-party to administrator the Settlement, which may include publication notice, the identification and/or confirmation of the mailing address of each class member, and distribution of the Settlement Fund.

D.  Plaintiff will distribute, pro rata,[1] to each member of the Class, without the requirement of the submission of a claim form, the balance of the Settlement Fund, up to a maximum of five hundred dollars ($500.00) per class member. The balance of the Settlement Fund means the gross amount of the Settlement Fund less the amounts expended for (i) notice costs and settlement administration and (ii) Plaintiff's counsel fees and costs (the "Balance").

E.  Plaintiff's counsel will receive attorneys' fees in an amount equal to 25% of the Settlement Fund, which is three million dollars ($3,000,000.00) and the reimbursement of all costs expended by Plaintiff's counsel. Southeast Wireless and/or Nextel will not oppose in Court, whether at the trial court or appellate level, or otherwise, directly or indirectly, the amount of fees and costs paid to Plaintiff's counsel.

F.  The total amount of the Balance evidenced by all Class member checks that are not cleared or otherwise claimed by the Class will constitute the Net Balance.

G.  The Net Balance of the Settlement Fund will be donated to the following charities as follows:

　　　　i.  The American Cancer Society (33.33 % of the Net Balance);

　　　　ii.  The American Heart Association (33.33% of the Net Balance); and

　　　　iii.  The National Alzheimer Association (33.33% of the Net Balance).

H.  Injunction: Southeast Wireless will also agree to refrain from future violations of the Telephone Consumer Protection Act through the entry of a voluntary and permanent injunction.

---

1　　For example, if the Balance is $8,000,000, and monies are distributed to all 24,000 class members, each class member will receive $333.33.

I.  Form of Notice: Notice to the class, for both the purposes of notifying the class of this settlement and/or the distribution of settlement proceeds, which shall be approved by the Court, may include some or all of the following: (a) advertising in local newspapers where Southeast Wireless transmitted unsolicited fax advertisements by running the form of notice attached hereto as Exhibit E1 in (i) on two occasions in the Sun Sentinel and (ii) on two occasions in the Miami Herald, and (b) posting information on Plaintiff's counsel's website.

J.  Administration: Plaintiff's counsel are responsible for arranging for the publication of class notice, and the distribution of monetary relief to the Class members that timely submit a claim form.  All costs incurred in connection with such notice, administration and distribution shall be paid from the Settlement Fund.

K.  Publicity: Other than such publicity required to accomplish the notice requirements described above and otherwise required by the Court, Plaintiff and his counsel will not (i) provide any information to the press other than copies of documents filed with the Court and/or approved by the Court for purposes of notice and (ii) identify Southeast Wireless or Nextel in any brochures or websites advertising the legal services of Plaintiff's counsel.  Plaintiff further agrees that he shall not make any negative representations to any credit agencies concerning Southeast Wireless.  Such prohibition shall not prohibit Plaintiff's counsel from providing information to the press or posting on their website information that identifies Southeast Wireless or Nextel, but only to the extent that such identification is relevant to the administration of this Settlement.

14.    As soon as practicable after this Stipulation is executed, Plaintiff will move the Court (*see* Agreed Preliminary Approval Motion attached hereto as Exhibit C) to enter an order (the

"Preliminary Approval Order"), in substantially the form of Exhibit D hereto, (i) certifying the Action, for purposes of the Settlement only, as an opt-out class action, pursuant to Rules 1.220(b)(2) and (b)(3), with the named Plaintiff in the Action as the representative of the Class, (ii) defining the Class as provided in paragraph 12 above, (ii) approving the forms of notice (the "Notice"), in substantially the form annexed as Exhibits E1 (the Summary Notice) and E2 (the Full Notice) hereto, (iii) setting a hearing date for consideration of the Settlement and specifying certain procedures with respect thereto, and (iv) enjoining all members of the Class from instituting, commencing, prosecuting or continuing, directly, representatively, individually, derivatively, on behalf of the Class, or in any other capacity, any action or other proceeding asserting any claim that is a Settled Claim.

15. If the Court signs the Preliminary Approval Order, Plaintiff will move the Court for the entry of an order, in substantially the form of Exhibit F hereto (the "Final Approval Order"), which, *inter alia*:

a. permanently certifies the Class for purposes of the Settlement only;

b. approves the Settlement as fair, reasonable and adequate, directs consummation of the Settlement in accordance with the terms and conditions of this Stipulation, and determines that the Class has been adequately represented in connection with the Action and the Settlement;

c. provides that if Plaintiff succeeds in the Coblentz Action against the Insurer, the order will serve to permanently bar and enjoin the members of the Class from instituting, commencing, prosecuting, participating in or continuing any action or other proceeding in any court or tribunal of this or any other jurisdiction, either directly, representatively, derivatively or in any other capacity, asserting any claims that are, arise out of, or in any way relate to, the claims asserted and settled in the Action;

      d.      provides that if Plaintiff fails to obtain monies for Plaintiff and the Class in the Coblentz action against the Insurer, the Court will, upon receipt of request from Plaintiff or Southeast Wireless, dissolve the Preliminary Approval Order and Final Approval Order, by entering the order attached hereto as Exhibit G.

      e.      provides that the Court shall retain continuing jurisdiction over this Action and the Final Approval Order in the event that Plaintiff obtains a Settlement Fund in the Coblentz Action that is less than that set forth in paragraph 1 above.

16.     No fees or expenses shall be paid to Plaintiff's counsel, nor shall any be sought, in the absence of both the approval of the Settlement by the Court and the successful completion of the Coblentz action.

17.     Any order or proceedings relating to the fee and expense application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment approving this Stipulation and the Settlement, such that Southeast Wireless will provide relief to Plaintiff and the Class as set forth in this Stipulation regardless of any modification or delay in the payment of fees and costs to Plaintiff's counsel. Further, it is the intention of the parties that any order, proceedings or appeal relating to the application for fees and expenses not affect or delay the finality of the judgment approving this Stipulation and the Settlement. The parties agree to take such action as may be necessary, including, but not limited to, the filing of a joint motion to achieve that intention.

18.     If (a) the Court declines, in any respect, to enter the Final Approval Order and any of the parties fail to consent to the entry of another form of order in lieu thereof; or (b) the Court disapproves the Settlement proposed herein, including any amendments thereto agreed upon by all of the parties; or (c) the Court approves the Settlement proposed herein, including any amendments thereto approved by all of the parties, but such approval is reversed on appeal or petition for writ of

certiorari and such reversal becomes final by a lapse of time or otherwise; then, in any such event, this Stipulation, with the exception of the provisions in Section B, and including any amendment to this Settlement Stipulation, shall be null and void and will be of no further force or effect, and, except as provided in Section B, Plaintiff and Southeast Wireless shall be restored to his, her or its respective position as it existed prior to the execution of this Stipulation. If the Settlement Stipulation becomes null and void as provided in this paragraph, the Stipulation, any amendment to this Stipulation, and the Settlement proposed herein may not be introduced as evidence or referred to in any proceedings, except insofar as necessary to enforce the provisions of Section B.

19.     The administration of the Settlement and final decision as to all disputed questions of law and fact with respect thereto and this Stipulation shall be under the jurisdiction of the Court.

20.     This Stipulation and all negotiations, statements, proceedings and documents related to it are not, and shall not be construed to be, an admission by any of the parties respecting the validity or the invalidity of any of the claims asserted in the Action, or of the liability of any party with respect to any such claims or any alleged wrongdoing whatsoever, and shall not be offered by any party or person for any evidentiary purpose, including as an admission of any such liability or wrongdoing or for the validity or invalidity of any of the claims in the Action or any other action.

21.     The undersigned counsel for Plaintiff in the Action represent and warrant (i) their authority to bind the named Plaintiff in the Action, and (ii) that, to the best of their knowledge, no other actions, other than the Action, are currently pending concerning the subject matter of the Action.

22.     This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

23.     This Stipulation shall be interpreted according to Florida law, without reference to Florida's principles of conflicts of laws.

24.    The parties hereto and their attorneys agree to cooperate fully with one another and to use their reasonable good faith efforts in seeking Court approval of this Stipulation.

25.    If any claims that are or would be subject to the release and dismissal contemplated by the Settlement are asserted against any person in any court prior to or following Court approval of the Settlement, Plaintiffs shall join, where possible, in any motion to dismiss or stay such proceedings and shall otherwise use good faith efforts to effect a withdrawal or dismissal of the claims.

26.    This Stipulation and its exhibits (including Exhibits A – I) constitute the entire agreement of the parties with respect to the subject matter hereof and may not be amended, or any of their provisions waived, except by a writing executed by all of the parties hereto.

27.    This Stipulation may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when such counterparts have been signed by counsel for each of the parties and delivered to counsel for the other parties.

**SOUTHEAST WIRELESS, INC. D/B/A MOBILE ONE**

_____          _____
Sign Name                                              Print Name   *GEURGE NIARCHOS*

_____          _____
Title   *VP*                                                   Date   *21 April 04*

**NEXTEL SOUTH CORP., INC.**

_____          _____
Sign Name                                              Print Name

_____          _____
Title                                                        Date

24.    The parties hereto and their attorneys agree to cooperate fully with one another and to use their reasonable good faith efforts in seeking Court approval of this Stipulation.

25.    If any claims that are or would be subject to the release and dismissal contemplated by the Settlement are asserted against any person in any court prior to or following Court approval of the Settlement, Plaintiffs shall join, where possible, in any motion to dismiss or stay such proceedings and shall otherwise use good faith efforts to effect a withdrawal or dismissal of the claims.

26.    This Stipulation and its exhibits (including Exhibits A – I) constitute the entire agreement of the parties with respect to the subject matter hereof and may not be amended, or any of their provisions waived, except by a writing executed by all of the parties hereto.

27.    This Stipulation may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when such counterparts have been signed by counsel for each of the parties and delivered to counsel for the other parties.

**SOUTHEAST WIRELESS, INC. D/B/A MOBILE ONE**

_____        _____
Sign Name                               Print Name


_____        _____
Title                                   Date


**NEXTEL SOUTH CORP., INC.**

_____        _____
Sign Name                               Print Name        Susan Z. Haller


_____        _____
Title        VP & Dep GC                Date        5/5/04

**MICHAEL PENZER**

Sign Name

Date  5/15/04

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SOUTHEAST WIRELESS, INC.,

      Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

      Third Party Defendant.

_____/

CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

## FINAL JUDGMENT AGAINST
## DEFENDANT SOUTHEAST WIRELESS, INC. D/B/A MOBILEONE

THIS MATTER came before the Court on _____, 2004, and the Court

after reviewing the pleadings and being fully advised in the premises,

IT IS HEREBY ordered and adjudged as follows:

1.    A Final Judgment is hereby entered in favor of Plaintiff Michael Penzer and the

Class and against Defendant Southeast Wireless, Inc., d/b/a MobilOne, 2 Oakwood Boulevard,

Suite 160, Hollywood, FL 33020, tax identification no. *65 095 1886*.

2.    Plaintiff and the Class shall recover from Southeast Wireless, Inc. d/b/a

MobileOne the amount of twelve million dollars ($12,000,000.00) that shall bear post-judgment

EXH: A

CASE NO. 03-010994-02

interest at the maximum rate of allowed under Florida law. Execution shall be subject to the terms and conditions of the parties' April **21**, 2004 Settlement Stipulation

DONE AND ORDERED in Chambers at Broward County, Florida this ___ day of _____, 2004.

_____
HON. VICTOR TOBIN
CIRCUIT COURT JUDGE

2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

CASE NO : 03-010994 CACE (02)

      Plaintiff,

CLASS REPRESENTATION

v.

SOUTHEAST WIRELESS, INC.,

      Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

      Third Party Defendant.
      _____/

## ASSIGNMENT

    Defendant Southeast Wireless, Inc. (hereinafter referred to as "Defendant"), by this instrument

and subject to the reservations below and as contained in the parties' April 24, 2004 Settlement

Stipulation assigns and transfers to Plaintiff, individually and as representative of the Class in the

above-captioned action, (hereinafter referred to as "Plaintiff") all of its rights, and causes of action or

claims in tort, contract, equity and law, and any other claim which may exist, which it ever had, has,

or may have, against CNA and/or Transportation Insurance Company and/or any of their subsidiary

companies, officers, agents, employees or servants (collectively, "Insurers") regarding the failure to

provide a defense to and coverage for Plaintiff's claims in the above-captioned action without

recourse or warrant of any nature or kind.  However, this assignment does not include, and does not

assign, any claims that Defendant may have against the Insurers for bad faith in relation to this action

EXH: B

and as set forth in the parties' April 2λ, 2004 Settlement Stipulation.

This assignment is not to be construed as a release of the Defendant or any of its insurers.

DATED this _____ day of _____, 2004

SOUTHEAST WIRELESS, INC. D/B/A MOBILEONE

_____
Sign Name

_____
Print Name

_____
Title

_____
Date

STATE OF FLORIDA

COUNTY OF _Braun_

Being first duly sworn _George Numers_, who is personally know to me or who has produced _____ as identification, deposes and says that the attached Assignment is true and correct in all respects.

SWORN TO AND SUBSCRIBED before me this _____ day of _April_, 2004.

_____
Signature of Notary Public

ALAN M. BURGER
MY COMMISSION # CC 934119
EXPIRES May 7, 2004
1-800-3-NOTARY   FL Notary Service & Bonding, Inc.

_____
Name of Notary (print or type)

My Commission Expires:

**MICHAEL PENZER**

_____
Sign Name

_____
Date

STATE OF FLORIDA

COUNTY OF _____

      Being first duly sworn, _____, who is personally know to

me or who has produced _____ as identification, deposes and says

that the attached Assignment is true and correct in all respects.

      SWORN TO AND SUBSCRIBED before me this _____ day of _____,

2004.

                       Signature of Notary Public

                       Name of Notary (print or type)

                       My Commission Expires:

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SOUTHEAST WIRELESS, INC

      Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

      Third Party Defendant

_____/

CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

## AGREED MOTION FOR PRELIMINARY CLASS CERTIFICATION, AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FORM AND MANNER OF NOTICE, AND FINAL FAIRNESS HEARING

Pursuant to Florida Rule of Civil Procedure 1.220 ("Rule 1.220"), the parties file this joint motion seeking (i) preliminary class certification for settlement purposes only, (ii) preliminary approval of a class settlement, (iii) approval of the form and manner of notice, and (iv) a final fairness hearing and the setting of other pertinent deadlines. In support hereof, the parties would respectfully show the following:

1.    Plaintiff Michael Penzer ("Plaintiff"), individually and on behalf of all other similarly situated, brought this action against defendants Nextel South Corp., Inc. ("Nextel") and Southeast Wireless, Inc., ("Southeast Wireless"), alleging that defendants violated the Telephone Consumer Protection Act, 47 U.S.C. §227, by transmitting thousands of unsolicited facsimile advertisements to Plaintiff and the class (defined below) (the "Action"). Nextel also filed a third party complaint against

EXH: C

Southeast Wireless seeking contribution and indemnity for Plaintiff's claims against Nextel   In connection with the settlement of this action, Nextel was dismissed from this action, and is not a party to the class action settlement.

2.      Southeast Wireless submitted Plaintiff's claims to its insurer, CNA (the "Insurer"), and the Insurer has refused to provide Southeast Wireless with a defense or with coverage for Plaintiff's claims

3.      Southeast Wireless seeks to protect itself from personal liability to the extent allowed by law, and as specifically authorized by the decision in <u>Coblentz v. American Surety Co. of New York</u>, 416 F.2d 1059 (5th Cir. 1969), which case has been approved by Florida's courts. <u>See</u>, <u>e.g.</u>, <u>Quintana v. Barad</u>, 528 So. 2d 1300 (Fla. 3d DCA 1988).   As a result, the Plaintiff and Southeast entered a Coblentz agreement that serves as the basis for this class action settlement.

4.      After negotiations, on or about April __, 2004, the parties executed a Stipulation and Agreement of Class Action Settlement (the "Stipulation") of this putative class action, a copy of which is attached as Exhibit "1." The Stipulation provides, in pertinent part, that Plaintiff and the other members of the class shall receive a judgment against Southeast Wireless in the amount of twelve million dollars ($12,000,000.00), which represents an amount equal to (a) the total number of persons (<i>i.e.</i>, 24,000) to whom Southeast sent an unsolicited fax advertisement during the class period times (b) five-hundred dollars ($500.00) for each unsolicited fax advertisement as provided in 47 U.S.C. §227(b)(3)(A-C) (the "Judgment").

5.      The parties agree that the terms of the Stipulation are fair, reasonable and in the best interests of Plaintiff and the proposed class.

6.      The parties also agree that the proposed class should be certified by the Court for

2

settlement purposes pursuant to Rule 1 220(a), (b)(2) and (b)(3). The parties define the proposed

class as follows:

> All persons and entities in Florida to whom Southeast Wireless or any
> person or entity acting on its behalf sent an unsolicited facsimile
> advertisement (the "Class").

Excluded from the Class are Southeast Wireless and Nextel, their parents, subsidiaries and affiliates,

their directors and officers, and members of their immediate families. Also excluded from the Class

are all persons and/or entities who gave Southeast Wireless or Nextel an express invitation or

permission to send them facsimile advertisements.

    7.     The parties stipulate that the Class has satisfied the prerequisites of Rule 1.220(a) in

that (1) members of the Class are so numerous that joinder of all members of the Class is

impracticable, (2) there are questions of law and fact common to the Class; (3) the claims of the Class

representative are typical of the claims of the Class, and (4) the Class representative will fairly and

adequately represent the interests of the Class. The parties further stipulate that: (1) the Class has

satisfied the prerequisites of Rule 1.220(b)(2) in that the party opposing the class has acted or refused

to act on grounds generally applicable to all members of the Class, thereby making final injunctive

relief or declaratory relief concerning the Class as a whole appropriate, and (2) the Class has satisfied

the prerequisites of Rule 1.220(b)(3) in that questions of law and fact common to the claim and

defense of each Class member predominate over any questions of law and fact affecting only

individual Class members, and class representation is superior to other available methods for the fair

and efficient adjudication of the controversy.

    8.     The parties now request that the Court grant preliminary approval to the proposed

settlement, as set forth in the accompanying proposed Order Regarding Preliminary Approval of Class

Action Settlement and Notice to Class ("Order," attached hereto as Exhibit "D" to Exhibit "1").  In doing so, the parties request that the Court set a Settlement Fairness Hearing, which can be scheduled after Class members have been provided with a sufficient time in which to opt-out or otherwise object to the terms of the settlement, at which the Court will consider final approval of the proposed class action settlement.  *See* proposed Order at ¶5.

9       "Approval of class action settlements involves a two-step process   First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation." See Manual for Complex Litigation, § 30.41 (3d ed. 1995).  "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for the attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e)[1] be given to the class members for a formal hearing, at which arguments and evidence may be presented in support and opposition to the settlement." Id.

10.     The parties respectfully submit that, for the reasons set forth in the Stipulation, the proposed partial settlement is fair, adequate, reasonable and within the range of fairness such that this Court should provide notice of the proposed settlement to the members of the class so that their views may be heard.  See id.; In re Traffic Executive Ass'n E.R.R., 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is not tantamount to a finding that the settlement is fair and reasonable.  It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to

---

[1]      Because Rule 1.220 is patterned after Federal Rule of Civil Procedure 23, Florida courts may look to federal cases as persuasive authority on the interpretation of Rule 1.220. Broin v. Philip Morris Companies, Inc., 641 So.2d 888, 889 n.1 (Fla. 3d DCA 1994); Powell v. River Ranch Property Owners Association, Inc., 522 So.2d 69, 70 (Fla. 2d DCA 1988).

class members and to hold a full-scale hearing on the fairness").

11.     The parties have agreed that notice of the proposed settlement to the Class, in substantially the form attached as Exhibits E1 and E2 to the Stipulation, shall be published in various local newspapers, as approved by the Court, as soon as practicable after the Court enters the proposed Order.  The parties submit that the form and method set forth in the Stipulation of notifying the Class of the settlement and its terms and conditions meet the requirements of the Florida Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

**WHEREFORE,** the parties respectfully request that their joint motion be granted and that this Court issue a preliminary order in the form attached hereto as Exhibit "D" to Exhibit "1" that (1) preliminarily certifies the Class for settlement purposes only; (2) preliminarily approves the proposed settlement; (3) approves the form and manner of the Class notice; (4) sets a date by which Class members who choose to opt out of the Class and to pursue their claims with counsel of their own choosing at their own expense must do so; (5) sets a date by which Class members who wish to appear at the fairness hearing and object to settlement or other matters addressed at the hearing must file with the Court and serve on all counsel an appearance in writing and any pleadings and supporting documents; and (6) schedules a fairness hearing.

Respectfully submitted:

WITES, KAPETAN & FRIEDLAND, P.A.
Attorneys for Plaintiff and the Class
1701 West Hillsboro Blvd., Suite 305
Deerfield Beach, FL 33442
(954) 570-8989/(954) 428-3929 (fax)

By: _____
        MARC A. WITES
        Fla. Bar No.: 24783
        ALEX N. KAPETAN, JR.
        Fla. Bar No.: 181234
and

Paul J. Geller
Florida Bar No. 984795
Doug Wilens
Florida Bar No. 0079987
Stuart A. Davidson
Florida Bar No. 0082824
CAULEY, GELLER, BOWMAN &
   RUDMAN, LLP
Attorneys for Plaintiff and the Class
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Phone:(561)-750-3000/Fax: (561)-750-3364

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via facsimile and mail on this ___ day of April 2004 to: **James B. Baldinger, Esq.,** 222 Lakeview Avenue, Suite 1400, West Palm Beach, FL 33401 and **Alan M. Burger, Esq.,** as registered agent and legal counsel for Defendant Southeast Wireless, Inc., Burger & Trailor, P.A., 8603 South Dixie Highway, Suite 303, Miami, FL 33143-7829 .

_____
Marc A. Wites

6

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

CASE NO. 03-010994 CACE (02)

Plaintiff,

CLASS REPRESENTATION

v.

SOUTHEAST WIRELESS, INC.,

Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

Third Party Defendant

_____/

## AGREED ORDER REGARDING PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE

THIS CAUSE came before the Court on a Stipulation and Agreement of Class Action

Settlement (the "Stipulation"). The Stipulation is subject to review under Florida Rule of Civil

Procedure 1.220, and together with the exhibits thereto, sets forth the terms and conditions for the

proposed settlement of claims alleged in this action.

The Court has read and considered the Stipulation and the accompanying documents, and

noted that the parties to the Stipulation have consented to the entry of this Order. All capitalized

terms used herein have the meanings defined in the Stipulation;

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that as follows:

1.      Pursuant to Rule 1.220(a), (b)(2) and (b)(3), for purposes of settlement only, this

action is hereby preliminarily certified as a class action on behalf of a Class, defined as follows:

EXH. 1

> All persons and entities in Florida to whom Southeast Wireless or any person or entity acting on its behalf sent an unsolicited facsimile advertisement (the "Class").

Excluded from the Class are Southeast Wireless and Nextel, their parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families.  Also excluded from the Class are all persons and/or entities who gave Southeast Wireless or Nextel an express invitation or permission to send them facsimile advertisements.

2.    The Court hereby appoints Michael Penzer as Class representative and appoints the law firms of Wites, Kapetan & Friedland, P.A. and Cauley, Geller, Bowman & Rudman, LLP as Class Counsel.

3.    The Court, for purposes of settlement, preliminarily finds that the Rule 1.220 prerequisites for class treatment have been satisfied.  Specifically, the Court preliminarily finds that all of the prerequisites to a class action are satisfied pursuant to:

(a)    Rule 1.220(a), in that (1) the members of the Class are so numerous that joinder of all Class members in the action is impracticable; (2) there are questions of law and fact common to the Class; (3) the claims of the Class representative are typical of the claims of the class; and (4) the Class representative will fairly and adequately represent the interests of the Class.

(b)    Rule 1.220(b)(2), in that the party opposing the class has acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

(c)    Rule 1.220(b)(3), in that questions of law and fact common to the claim and defense of each Class member predominate over any questions of law and fact affecting only individual Class members, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

4.      The Court preliminarily approves the settlement and approves the form of the Notice, in substantially the form attached as Exhibits E1 and E2 to the Stipulation, and approves the procedures for providing Notice to the Class, for objecting to the settlement on a class-wide basis and for requesting exclusion from the Class.  Defendants shall cause Notice to be published in the Sun Sentinel and Miami Herald newspapers for seven (7) consecutive days within twenty (20) days of the entry of this Order

5.      A final hearing, pursuant to Rule 1.220(e), shall be held before the Court on _____, 2004 at _____ a.m./p.m., or as soon thereafter as may be heard, for the following purposes:

(a)      to finally determine whether this action satisfies the applicable prerequisites for class action treatment;

(b)      to determine whether the proposed settlement is fair, reasonable, adequate and in the best interests of the Class and should be approved by the Court;

(c)      to consider Class counsel's application for an award of attorney's fees and expenses; and

(d)      To rule upon such matters as the Court may deem appropriate.

6.      The Court enjoins all members of the Class from instituting, commencing, prosecuting, or continuing, directly, representatively, individually, derivatively, on behalf of the Class, or in any other capacity, any action or proceeding asserting any claim that is settled by the Stipulation.

7.      The Court reserves the right to approve the Settlement with or without modification and with or without further notice of any kind.  The Court further reserves the right to enter its Order and Final Judgment approving the Stipulation and dismissing the Complaint with prejudice.

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

v.

SOUTHEAST WIRELSS, INC.,

      Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

      Third Party Defendant

_____/

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA
CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT, PROPOSED SETTLEMENT, AND SETTLEMENT HEARING

TO:    ALL PERSONS AND ENTITIES IN FLORIDA TO WHOM DEFENDANT SOUTHEAST WIRELESS, INC. (WHICH DOES BUSINESS AS "MOBILEONE") OR ANY OTHER PERSON OR ENTITY ON ITS BEHALF SENT AN UNSOLICITED FACSIMILE ADVERTISING NEXTEL CELLULAR TELEPHONE PRODUCTS AND SERVICES

      YOU ARE HEREBY NOTIFIED, pursuant to Rule 1.220 of the Florida Rules of Civil Procedure and an Order of the Court, that the above-captioned action has been preliminarily certified as a class action, and that a settlement has been reached pursuant to which Defendant Southeast Wireless, Inc ("Southeast Wireless") has agreed to: (a) a Final Judgment against it in the amount of $12,000,000.00 (the "Settlement Fund"); (b) provide Plaintiff an assignment to pursue claims against its insurer (the "Insurer") as authorized by the decision in *Coblentz v. American Surety Co. of New York* (the "*Coblentz* Agreement"), which decision has been approved by Florida courts, to satisfy said Final Judgment; and (c) an award of attorneys' fees and expenses of Plaintiff's counsel in an amount equal to 25% of the Settlement Fund, which is $2,750,000.00, and the reimbursement of all costs expended by Plaintiff's counsel. The Court is retaining jurisdiction to, among other things, modify the amount of attorneys' fees to be paid to Plaintiff's counsel in the event the Settlement Fund is less than $12,000,000.00.

      A Coblentz Agreement allows a defendant, in situations where the defendant's insurance company refuses to provide insurance coverage and a legal defense to a claim, to agree to the entry of a judgment against it provided that the plaintiff agrees to seek payment on the judgment only from the defendant's insurance company and not from the defendant. The parties entered into the *Coblentz* Agreement because: (i) Southeast Wireless does not have sufficient assets to satisfy the amount of the Final Judgment; (ii) Southeast Wireless's Insurer has refused to provide coverage or a defense to Plaintiff's claims against Southeast Wireless; and (iii) Southeast Wireless has agreed to provide Plaintiff with an assignment of its claims against the Insurer, which, if successful, will enable Plaintiff and the class to collect on the Final Judgment from the Insurer. However, the creation of the Settlement Fund and any rights of Class members to share in the Settlement Fund is contingent on Plaintiff's successful prosecution of an action against the Insurer.  Accordingly, class members will not receive any monies from this settlement unless and until Plaintiff succeeds in the Coblentz Action. The Court will retain jurisdiction to, among other things, modify the amount of the Settlement Fund and attorneys' fees to be paid to Plaintiff's counsel in the event that the Plaintiff is unable to obtain the full amount of the Settlement Fund from the Insurer.

      A hearing will be held before the Honorable Victor Tobin in the Broward County Circuit Courthouse, 201 S.E. 6th Street, Fort Lauderdale, Florida 33301, at ____:____ ___.m., on _____, 2003 to determine whether the proposed settlement should be approved by the Court as fair, reasonable, and adequate, and to consider whether the amount of attorneys' fees to be reimbursed to Plaintiff's counsel from the Settlement Fund is appropriate. You may appear at the hearing. However, no person will be heard at the hearing unless such person serves and files the following materials, and the Clerk of Court receives such materials, by _____, 2004: (a)

EXH: E1

a notice of intention to appear; (b) a detailed statement of such person's specific objection to any matter before the Court, the grounds therefore, and the reasons for such person desiring to appear and to be heard; and (c) all documents and writings which such person desires the Court to consider. The Clerk of Court's address is: Clerk of Court, Broward County Courthouse, 201 S.E. 6th Street, Fort Lauderdale, 33301. Copies of such materials must also be served on and received by Plaintiff's counsel by _____, 2004 at the address set forth below.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND IF PLAINTIFF SUCCEEDS IN THE COBLENTZ ACTION AGAINST THE INSURER. If you wish to receive the full printed Notice of Pendency of Class Action, Proposed Settlement and Hearing, you may obtain a copy by contacting Counsel for Plaintiff and the Class, Marc A. Wites, Esq. or visiting www.wklawyers.com. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court. **IF YOU ARE A CLASS MEMBER AND DO NOT WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT YOU DO NOT NEED TO TAKE ANY ACTION AT THIS TIME; PLAINTIFF WILL PROVIDE NOTICE TO THE CLASS AGAIN UPON THE COMPLETION OF THE COBLENTZ ACTION.**

To exclude yourself from the Class, you must submit a request for exclusion postmarked no later than _____, 2004 and mailed to:

> Counsel for Plaintiff and the Class
> Marc A. Wites, Esq.
> WITES, KAPETAN & FRIEDLAND, P.A.
> 1701 W. Hillsboro Blvd., Suite 305
> Deerfield Beach, FL 33442
> (954)-570-8989
> mwites@wklawyers.com

Any other questions regarding this matter may be directed to Mr. Wites as noted above.

> By Order of the Court
> VICTOR TOBIN
> CIRCUIT COURT JUDGE

**THIS IS NOT A LAWSUIT AGAINST YOU. IT IS A NOTICE OF SETTLEMENT IN A CLASS ACTION IN WHICH YOU MAY BE ENTITLED TO RECEIVE A MONETARY PAYMENT IF THE PLAINTIFF SUCCEEDS IN A FORTHCOMING LAWSUIT .**

| | |
|---|---|
| MICHAEL PENZER, Individually and on Behalf of All Others Similarly Situated, | IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA |

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

v.

CASE NO. 03-010994 CACE (02)

SOUTHEAST WIRELESS, INC.,

CLASS REPRESENTATION

     Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

     Third Party Defendant.

_____/

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND HEARING

**TO:   ALL PERSONS AND ENTITIES IN FLORIDA TO WHOM DEFENDANT SOUTHEAST WIRELESS, INC. (WHICH DOES BUSINESS AS "MOBILEONE") OR ANY OTHER PERSON OR ENTITY ON ITS BEHALF SENT AN UNSOLICITED FACSIMILE ADVERTISING NEXTEL CELLULAR TELEPHONE PRODUCTS AND SERVICES**

### SPECIAL NOTE

THIS NOTICE MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ IT CAREFULLY. PLEASE NOTE THAT THOSE PERSONS IDENTIFIED ABOVE ARE CLASS MEMBERS AND MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE PROPOSED CLASS SETTLEMENT DESCRIBED IN THIS NOTICE IF THE PLAINTIFF SUCCEEDS IN A LAWSUIT THAT HE WILL FILE AFTER THE SETTLEMENT OF THIS ACTION. **IF YOU ARE A CLASS MEMBER AND DO NOT WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT, YOU DO NOT NEED TO TAKE ANY ACTION AT THIS TIME; PLAINTIFF WILL PROVIDE NOTICE TO THE CLASS AGAIN UPON THE COMPLETION OF THE COBLENTZ ACTION.**

**NO CLAIM IS BEING MADE AGAINST YOU.**

EXH. E2

*Michael Penzer v. Southeast Wireless, Inc.*
Case No. 03-010994 CACE (02)

## SETTLEMENT HEARING

The Court directed that Notice be sent to all persons and entities in Florida to whom Southeast Wireless, Inc., which does business as MobileOne ("Southeast Wireless") or any person or entity acting on its behalf sent an unsolicited facsimile advertising Nextel cellular telephone products and services (the "Class")

The purpose of this Notice is to inform you of the proposed settlement (the "Settlement") of the class action lawsuit captioned *Michael Penzer, Individually and on Behalf of All Others Similarly Situated v. Southeast Wireless, Inc.* , Case No. CACE 03-010994 CACE (02) (the "Lawsuit"), and of a hearing (the "Settlement Hearing") to be held on _____ a.m./p.m., before the Honorable Victor Tobin, Broward County Courthouse, 201 Southeast 6th Street, Courtroom _____, Fort Lauderdale, Florida 33401.

The purpose of the Settlement Hearing is: (i) to determine whether the proposed Class (defined below) should be permanently certified; (ii) to determine whether the Settlement is fair, reasonable, adequate, in the best interest of the Plaintiff and the proposed Class, and whether the Class has been adequately represented in the Lawsuit and the Settlement; (iii) to determine whether the Court should enter a Final Judgment (the "Judgment") against Southeast Wireless in the amount of $12,000,000.00 and permit Plaintiff to obtain an assignment from Southeast Wireless to pursue claims against its insurer (the "Insurer"), as authorized by the decision in *Coblentz v. American Surety Co. of New York* (the "*Coblentz* decision"), which has been approved by Florida courts, to satisfy said Final Judgment; (iv) to determine an award of attorneys' fees and expenses of Plaintiff's counsel, and (vi) to consider such other matters as the Court may deem appropriate.

**PLEASE READ THIS NOTICE CAREFULLY FOR A DETAILED EXPLANATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT. THE INFORMATION BELOW DOES NOT CONSTITUTE THE FINDINGS OF THE COURT. IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY ATTORNEYS FOR THE PARTIES.**

**IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE BOUND BY ITS TERMS. IF YOU ARE A CLASS MEMBER AND DO NOT WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT YOU DO NOT NEED TO TAKE ANY ACTION AT THIS TIME; PLAINTIFF WILL PROVIDE NOTICE TO THE CLASS AGAIN UPON THE COMPLETION OF THE COBLENTZ ACTION.**

## BACKGROUND AND DESCRIPTION OF THE CLASS ACTION LAWSUIT

1.      During the period of May 2003 through July 2003, Plaintiff and members of the proposed class received 24,000 unsolicited facsimile advertisements from Southeast Wireless that advertised Nextel cellular products and services.

2.      On July 28, 2003, Plaintiff filed the Lawsuit. The Lawsuit alleged that Nextel violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C), by

*Michael Penzer v. Southeast Wireless, Inc..*
Case No.: 03-010994 CACE (02)

authorizing the  sending of unsolicited facsimile advertisements to fax numbers in Broward and
Miami-Dade County without the prior express invitation or permission of the owners of such fax
numbers to receive the advertisements.   The Lawsuit requested, among other things,
five_hundred dollars ($500.00) for each unsolicited fax advertisement sent, as provided in 47
U.S.C. §227(b)(3)(A-C).

3.     On November 26, 2003, Nextel answered the Lawsuit and filed a Third Party
Complaint against Southeast Wireless and Sunbelt Communications and Marketing LLC
("Sunbelt"). Nextel's Third Party Complaint  alleged, among other things, that Nextel had not
authorized, and was not involved in, the sending of the fax advertisements at issue in this case
Nextel claimed that if Nextel was liable to Plaintiff, Nextel would be entitled to indemnity and
contribution from Southeast Wireless and Sunbelt.

4      In addition, on December 12, 2003, Plaintiff filed a Third Party Class Action
Complaint against Southeast Wireless, alleging, as Plaintiff did against Nextel, that Southeast
Wireless violated the TCPA by authorizing or sending the unsolicited facsimile advertisements
to individuals and entities in Florida without such individual's and entities' prior express
invitation or permission to receive such advertisements.

5      Southeast Wireless submitted Plaintiff's claims to the Insurer   However, the
Insurer has refused to provide Southeast Wireless with a defense or coverage for Plaintiff's
claims.

6      Beginning in February 2004, Plaintiff, Nextel and Southeast Wireless, through
their respective counsel, began voluntary, good faith settlement negotiations to resolve the
Lawsuit by way of an agreement between Plaintiff and Southeast Wireless pursuant to the
*Coblentz* decision, and, on April ____, 2004, the parties reached a settlement of the Lawsuit
Pursuant to the settlement, Nextel was dismissed from the lawsuit.  Plaintiff and Southeast
Wireless now desire to avoid any further dispute, controversy, litigation, appeal, costs, legal fees
or inconvenience and wish to fully resolve, settle and compromise any and all claims that existed
or may exist against Southeast Wireless arising out of the claims of Plaintiff and the Class.

**7.     Neither Southeast nor Nextel is paying any money to settle this lawsuit, and
this settlement may not provide any money to Plaintiff or the class.  Rather, Southeast has
agreed to assign to Plaintiff and the Class the right to sue Southeast's insurer and, if such
action is successful, the monies obtained from the insurer will be used to provide money to
Plaintiff and the Class.  If the lawsuit is not successful, no money will be distributed to
Plaintiff, the Class or the lawyers for Plaintiff and the Class.**

8.     The manner in which Southeast assigned to Plaintiff the right to sue Southeast's
insurer is called  Coblentz Agreement.  A Coblentz Agreement allows a defendant, in situations
where the defendant's insurance company refuses to provide insurance coverage and a legal
defense to a claim,  to agree to the entry of a judgment against it provided that the plaintiff agrees
to seek payment on the judgment only from the defendant's insurance company and not from the
defendant. The parties entered into the *Coblentz* Agreement because: (i) Southeast Wireless does
not have sufficient assets to satisfy the amount of the Final Judgment; (ii) Southeast Wireless's

*Michael Penzer v. Southeast Wireless, Inc..*
Case No   03-010994 CACE (02)

Insurer has refused to provide coverage or a defense to Plaintiff's claims against Southeast Wireless, and (iii) Southeast Wireless has agreed to provide Plaintiff with an assignment of its claims against the Insurer, which, if successful, will enable Plaintiff and the class to collect on the Final Judgment from the Insurer.

9.   Plaintiff's counsel have made an investigation of the facts and the law including, among other things, a review of the applicable portions of the TCPA, interviews of Plaintiff on the unsolicited fax advertisement which he received from Southeast Wireless, and a review and analysis of the documents produced by Defendants.

## THE SETTLEMENT TERMS

The principal terms and conditions of the proposed Settlement are summarized below. The Court must approve the Settlement before it can be effective.  This summary is qualified in its entirety by reference to the   Stipulation and Agreement of Class Action Settlement ("Stipulation"), and documents publicly filed with the Court in the Lawsuit, which are available for review at the time and place specified in the last paragraph of this Notice.

Among other things, the Stipulation provides as follows:

### As to Southeast Wireless

1   Plaintiff shall receive a judgment against Southeast Wireless in the amount of twelve million dollars ($12,000,000.00), which represents an amount equal to (a) the total number of persons (*i.e.*, 24,000) to whom Southeast Wireless sent an unsolicited fax advertisement during the class period times (b) five-hundred dollars ($500.00) for each unsolicited fax advertisement as provided in 47 U.S.C. § 227(b)(3)(A-C) (the "Judgment").

2.   Plaintiff agrees that he shall not now or at any time execute, garnish, levy, attach any assets or otherwise seek to recover any sums of money under that Judgment or any amendment to that Judgment or any other Judgment arising from the Lawsuit from Southeast Wireless.

3.   In exchange for this agreement, Southeast Wireless will assign and transfer to Plaintiff all of its individual and joint rights and causes of action it may have against the Insurer and/or any of its subsidiary companies, officers, agents, employees, or servants to recover from the Insurer the Judgment (the "Assignment").

4.   The Judgment shall contain a clause that the Judgment can only be satisfied by and against Southeast's Insurer.

## PROPOSED CLASS ACTION DETERMINATION

5.   The Court has preliminarily ordered that, for purposes of the Settlement only, the Lawsuit, pursuant to Fla. R. Civ. P. 1.220(a), (b)(2) and (b)(3), shall be maintained and proceed as a class action by Plaintiff on behalf of the Class, and by Plaintiff's counsel as Class Counsel,

on behalf of all persons and entities in Florida to whom Southeast Wireless or any person or entity acting on its behalf sent an unsolicited facsimile advertisement. At the Settlement Hearing, among other things, the Court will consider whether a Class should be permanently certified pursuant to Fla. R. Civ. P. 1.220(b)(2) and (b)(3).

## THE SETTLEMENT FUND & ATTORNEYS' FEES

6.    Upon completion of the Judgment, the Assignment, certification of the class and the entry of appropriate orders by the Court approving the class certification and settlement, Plaintiff will commence an action against the Insurer pursuant to the *Coblentz* Agreement described above.

7.    Upon the successful completion of Plaintiff's action against the Insurer, the proceeds obtained from the Insurer will be placed in an interest bearing account established and directed by Plaintiff's counsel (the "Settlement Fund").

8.    Plaintiff may use a reasonable portion of the proceeds to hire and pay a third-party administrator the Settlement, which may include providing notice to the class and distribution of the Settlement Fund.

9.    Plaintiff will distribute, pro rata, to each member of the Class, without the requirement of the submission of a claim form, the balance of the Settlement Fund. The balance of the Settlement Fund means the gross amount of the Settlement Fund less the amounts expended for (i) notice costs and settlement administration and (ii) Plaintiff's counsel fees and costs (the "Balance").

10.    Plaintiff's counsel will receive attorneys' fees in an amount equal to 25% of the Settlement Fund, which is two million seven hundred and fifty thousand dollars ($2,750,000.00) and the reimbursement of all costs expended by Plaintiff's counsel. Moreover, the Court will retain jurisdiction to, among other things, modify the amount of the Settlement Fund and attorneys' fees to be paid to Plaintiff's counsel in the event that the Plaintiff is unable to obtain the full amount of the Settlement Fund in the action against the Insurer.

11.    The total amount of the Balance evidenced by all Class member checks that are not cleared or otherwise claimed by the Class will constitute the Net Balance.

12.    The Net Balance of the Settlement Fund will be donated to the following charities as follows: (i) The American Cancer Society (33.33 %); (ii) The American Heart Association (33.33%); and (iii) The National Alzheimer Association (33.33%).

## NO ADMISSION OF LIABILITY

13.    The parties agree and acknowledge that the Settlement does not constitute, is not intended to be, and shall not be construed, interpreted, or treated in any respect as an admission of liability or wrongdoing by Southeast Wireless or Nextel. The administration of the settlement

*Michael Penzer v. Southeast Wireless, Inc.*
Case No.: 03-010994 CACE (02)

and final decision as to all disputed questions of law and fact which may arise shall be under the jurisdiction of the Court.

## RIGHT TO REQUEST EXCLUSION

Any member of the Class who requests to be excluded from this class action settlement shall send written or e-mail notice, for receipt no later than _____, 2004 to:

> Counsel for Plaintiff and the Class
> Marc A. Wites, Esq.
> WITES, KAPETAN & FRIEDLAND, P.A.
> 1701 W. Hillsboro Blvd., Suite 305
> Deerfield Beach, FL  33442
> (954)-570-8989
> mwites@wklawyers.com

The notice shall include the full name and address of the person requesting exclusion.

## RIGHT TO APPEAR

Any member of the Class who objects to the certification of the Class, the Settlement, the judgment to be entered in the Lawsuit, or the application for attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by attorneys at the Settlement Hearing and present any evidence or argument that may be proper and relevant; provided, however, that unless the Court, in its direction, shall otherwise direct, no person, other than attorneys for the named parties in the Lawsuit, shall be heard and no papers, briefs, pleadings or other documents submitted by any such person shall be considered by the Court, unless, not later than _____, 2004, such person files with the Court and serves upon the attorneys listed below: (a) a written notice of intention to appear; (b) proof of membership in the Class; (c) a detailed statement of such person's specific objections to any matters before the Court; and (d) the grounds thereof or the reasons that such person desires to appear and be heard, as well as all documents or writings which such person desires the Court to consider.  Copies of all such papers shall be served upon the following attorneys:

> Counsel for Plaintiff and the Class
> Marc A. Wites, Esq.
> WITES, KAPETAN & FRIEDLAND, P.A.
> 1701 W. Hillsboro Blvd., Suite 305
> Deerfield Beach, FL  33442/(954)-570-8989
> mwites@wklawyers.com
>
> and
>
> Counsel for Southeast Wireless
> Alan M. Burger, Esq.
> BURGER, TRAILOR & FARMER, P.A.

*Michael Penzer v. Southeast Wireless, Inc.*
Case No. 03-010994 CACE (02)

The Centurion Tower, 1601 Forum Place, Suite 404
West Palm Beach, FL 33401

and then filed with the Court. Unless the Court directs otherwise, no person shall be entitled to object to the certification of the Class, the Settlement, the judgment to be entered thereunder, or to the award of attorneys' fees and expenses to Plaintiff's attorneys, or otherwise to be heard, except by serving and filing written objections as described above. Any person who fails to object in the manner prescribed above shall be deemed to have waived such objection and shall be forever barred from raising such objection or any other objection to the certification of the Class, the fairness, adequacy or reasonableness of the Settlement, or the fee application in these or any other actions or proceedings.

## THE **FAIRNESS** HEARING

1.    If the Court certified the Class and approves the Settlement, the parties will ask the Court to sign an Order and Final Judgment:

(a)    permanently certifying the Class for purposes of settlement only,

(b)    approving settlement as fair, reasonable and adequate, and in the best interests of Plaintiff and the members of the Class, directing that its terms be performed, and determining that the Class has been adequately represented in connection with the Lawsuit and the Settlement;

(c)    providing that if Plaintiff succeeds in the Coblentz action against the Insurer, the order will serve to permanently bar and enjoin the members of the Class from instituting, commencing, prosecuting, participating in or continuing any action or other proceeding in any court or tribunal of this or any other jurisdiction, either directly, representatively, derivatively or in any other capacity, asserting any claims that are, arise out of, or in any way relate to, the claims asserted and settled in the Lawsuit;

(d)    providing that if Plaintiff fails to obtain monies for Plaintiff and the Class in the Coblentz action against the Insurer, the Court will, upon receipt of request from Plaintiff or Southeast Wireless, dissolve the Preliminary Approval Order and Final Approval Order; and

(e)    providing that the Court shall retain continuing jurisdiction over the Lawsuit and the Final Approval Order in the event that Plaintiff obtains a Settlement Fund in the Coblentz action that is less than $12,000,000.00.

2.    The Court has the right to approve the Settlement with modifications and without further notice to the Class. The Court may also adjourn the Settlement Hearing or any adjournment thereof without further notice other than by announcement at the Settlement Hearing or any adjournment thereof.

*Michael Penzer v. Southeast Wireless, Inc*
Case No.: 03-010994 CACE (02)

### IF YOU REMAIN A CLASS MEMBER

**IF YOU ARE A CLASS MEMBER AND DO NOT WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT YOU DO NOT NEED TO TAKE ANY ACTION AT THIS TIME; PLAINTIFF WILL PROVIDE NOTICE TO THE CLASS AGAIN UPON THE COMPLETION OF THE COBLENTZ ACTION.**

### LIMITED SCOPE OF THIS NOTICE

The foregoing description of the Lawsuit, the Settlement Hearing, the terms of the proposed Settlement and other matters described herein does not purport to be comprehensive. Members of the Class are referred to the Stipulation and documents publicly filed with the Court in the Lawsuit, including pleadings and other papers, that you or your attorney may examine during regular business hours of each business day at the offices of the Clerk of the Court, Broward County Courthouse, 201 Southeast 6th Street, Fort Lauderdale, Florida 33301.

Alternatively, you may receive a copy of the Settlement Agreement and related documents by contacting Marc A. Wites at the address listed above or by visiting **www.wklawyers.com**. Do not call the Court to answer your questions.


DATED: _____, 2004

**ENTERED BY ORDER OF:**

_____

Clerk of the Court

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

CASE NO.: 03-010994 CACE (02)

     Plaintiff,

CLASS REPRESENTATION

v.

SOUTHEAST WIRELESS, INC.,

     Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

     Third Party Defendant.

                                /

## AGREED FINAL ORDER APPROVING SETTLEMENT, CERTIFYING SETTLEMENT CLASS, ENTERING PERMANENT INJUNCTION AND APPROVING AWARD OF ATTORNEYS' FEES AND COSTS

In light of the Court's review and consideration of the parties' Settlement Stipulation and Agreement of Compromise, Settlement and Release (the "Settlement Stipulation"), the Court's _____, 2004 Agreed Order Regarding Preliminary Approval of Class Action Settlement Notice, the _____, 200__ Settlement Hearing, and the memoranda and arguments of counsel presented throughout this action, IT IS HEREBY ORDERED and ADJUDGED as follows:

     1.     This class action settlement allows Plaintiff Michael Penzer to pursue claims on behalf of himself and the Class against the insurer of Defendant Southeast Wireless, Inc. pursuant to the Coblentz agreement entered by the parties.

     2.     Pursuant to Rule 1.220 of the Florida Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Stipulation, is hereby finally approved as a fair, reasonable, and adequate settlement of this case in light of the factual, legal, practical,

EXH: F

CASE NO. 03-010994-02

and procedural considerations raised by this case.  The Settlement Stipulation is incorporated by reference into this Order (with capitalized terms as set forth in the Settlement Stipulation) and is hereby adopted as an Order of this Court.

3.     All findings of fact and law set forth in the Court's _____, 2004 Agreed Order Regarding Preliminary Approval of Class Action Settlement Notice are incorporated herein by reference.

4.     The Court finds that notice previously given to Class Members in this action was the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 1.220 of the Florida Rules of Civil Procedure.

5.     After due consideration of the fact that Plaintiff and his counsel secured all possible relief that the Class could reasonably obtain, the Settlement Stipulation should be and is approved and shall govern all issues regarding the settlement and all rights of the parties, including the Class Members.  Each Class Member (except those who have excluded themselves from the Class) shall be bound by the Settlement Stipulation, including the releases and covenants not to sue in the Settlement Stipulation, which are hereby incorporated by reference and become part of the final judgment in this action.

6.     In accordance with the Settlement Stipulation, and if Plaintiff succeeds in obtaining relief from Defendant Southeast Wireless' Insurer through the Coblentz action, Plaintiff's counsel shall cause the Plaintiff and the Class' relief, as well as attorneys' fees, costs and any other distributions required by the Settlement Stipulation, to be disbursed in accordance with the Settlement Stipulation.

7.     The Court will enter judgment in the form attached to the Settlement Stipulation and this Order as Exhibit A.  The judgment shall be without taxable fees or costs to any Party.

CASE NO.:03-010994-02

8.    This Order constitutes a permanent injunction against Defendant Southeast Wireless from future transmissions of unsolicited advertisements via facsimile. In addition to the parties' agreement as set forth in the Settlement Stipulation for such permanent injunction, the Court finds that (a) absent an injunction, Plaintiff and the Class will suffer irreparable harm, (b) Plaintiff and the Class have a clear legal right to the relief sought, (c) an injunction will serve the public interest, and (d) there is no adequate remedy at law that serves the purpose of an injunction.

9.    The Court further finds that the award of attorneys' fees as set forth in the Settlement Stipulation is fair and reasonable and, therefore approves such award. This finding is based on (a) the extra ordinary relief obtained for Plaintiff and the Class by Class Counsel, (b) an agreement to the award by the parties, and (c) the lack of any timely objection by any person or entity to the award

10    This Court hereby retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Stipulation  The Court further retains jurisdiction to enforce this Order.

DONE AND ORDERED in Chambers at Broward County, Florida this ___ day of _____, 2004.


HON. VICTOR TOBIN
CIRCUIT COURT JUDGE

Cc:    Copies Furnished To:

Marc A. Wites, Esq.
Paul J. Geller, Esq.
Alan M. Burger, Esq.
James B. Baldinger, Esq.

3

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually
and on Behalf of All Others Similarly
Situated,

CASE NO. 03-010994-02

     Plaintiff/Third Party Plaintiff,

v.

CLASS REPRESENTATION

SOUTHEAST WIRELESS, INC.

     Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING, LLC,

     Third-Party Defendant

_____/

## AGREED FINAL ORDER DISSOLVING (1) ORDER APPROVING SETTLEMENT, CERTIFYING SETTLEMENT CLASS, ENTERING PERMANENT INJUNCTION AND APPROVING AWARD OF ATTORNEYS' FEES AND COSTS AND (2) JUDGMENT AGAINST SOUTHEAST WIRELESS, INC. D/B/A MOBILONE

This Cause came before the Court on _____'s Motion to Dissolve the (1) _____,

2004 Order Approving Settlement, Certifying Settlement Class, Entering Permanent Injunction

and Approving Award of Attorneys' Fees and Costs ("Order Approving Settlement") and (2)

Judgment Against Southeast Wireless, Inc. Pursuant to the parties' Settlement Stipulation and

the Court's Order Approving Settlement, the Court hereby dissolves the Order Approving

Settlement and Judgment Against Southeast Wireless.

DONE AND ORDERED in Chambers at Broward County, Florida this ___ day of

_____, 2004.

_____
HON. VICTOR TOBIN
CIRCUIT COURT JUDGE

Cc:    Copies Furnished To:

EXH. 6

CASE NO. 03-010994-02

Marc A. Wites, Esq.
Paul J. Geller, Esq.
Alan M. Burger, Esq.
James B. Baldinger, Esq.

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

v.

NEXTEL SOUTH CORP., INC.,
a foreign corporation,

        Defendant,

v.

SUNBELT and SOUTHEAST WIRELESS,
INC., d/b/a MOBILE ONE,

        Third Party Defendants.

_____/

CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

## JOINT MOTION TO CHANGE CASE CAPTION AND STIPULATION OF DISMISSAL

        Plaintiff Michael Penzer individually and on behalf of all others similarly situated ("Plaintiff"),

Defendant Southeast Wireless Inc., d/b/a Mobile One ("Southeast Wireless"), and Defendant Nextel

South Corp, Inc ("Nextel") (collectively, the "Parties") file this Joint Motion to Change Case Caption

and Stipulation of Dismissal, and state as follows:

        1.      Plaintiff brought this action against defendants Nextel and Southeast Wireless, alleging

that defendants violated the Telephone Consumer Protection Act, 47 U.S.C. §227, by transmitting

thousands of unsolicited facsimile advertisements to Plaintiff and the class (defined below) (the

"Action").   Nextel filed a third party complaint against Southeast Wireless and Sunbelt

Communications and Marketing, LLC ("Sunbelt") seeking contribution and indemnity for Plaintiff's

claims against Nextel.  Southeast Wireless also filed a third party complaint against Sunbelt.

        1

EXH.: H

2     Sunbelt has not appeared in the Action.

3.    After negotiations, on or about April __, 2004, the Parties executed a Stipulation and Agreement of Class Action Settlement (the "Stipulation").  The Stipulation provides, in pertinent part, for Nextel to be dropped as a party in the case and for all of the claims against Nextel to be dismissed with prejudice.  The Stipulation also provides for Nextel's third party claims to be dismissed without prejudice.

4     The Stipulation further provides for the case caption to be modified to reflect the elimination of Nextel and its third party claims.

5     Plaintiff, Southeast Wireless, and Nextel have appeared in this Action, consent to, and join in this motion.

WHEREFORE, the Parties respectfully request that their joint motion be granted and that this Court direct the Clerk of Court to change the caption of this case in the Clerk's files and on all further orders, motions, and documents of any kind, to read as follows:

**MICHAEL PENZER, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**SOUTHEAST WIRELESS, INC.,**

**Defendant / Third-Party Plaintiff,**

**v.**

**SUNBELT COMMUNICATIONS AND MARKETING LLC,**

**Third-Party Defendant**

In addition, the Parties respectfully request that their joint motion be granted and that this Court enter an order dismissing Plaintiff's claims against Nextel with prejudice, dismissing Nextel's claims against Southeast Wireless without prejudice, and dismissing Nextel's claims against Sunbelt without prejudice

Respectfully submitted:

WITES, KAPETAN & FRIEDLAND, P.A
Attorneys for Plaintiff and the Class
1701 West Hillsboro Blvd., Suite 305
Deerfield Beach, FL 33442
(954) 570-8989/(954) 428-3929 (fax)

By: _____

MARC A. WITES
Fla. Bar No.: 24783
ALEX N. KAPETAN, JR.
Fla. Bar No.: 181234
and

Paul J. Geller
Florida Bar No. 984795
Doug Wilens
Florida Bar No. 0079987
Stuart A. Davidson
Florida Bar No. 0082824
CAULEY, GELLER, BOWMAN &
   RUDMAN, LLP
Attorneys for Plaintiff and the Class
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Phone:(561)-750-3000/Fax: (561)-750-3364

[SIGNATURE BLOCK]

**Attorneys for Southeast Wireless**

James B. Baldinger
Florida Bar Number 869899
Carlton Fields, PA
222 Lakeview Ave., Suite 1400
West Palm Beach, FL 33401
Telephone: 561.659.7070
Facsimile: 561.659.7368
E-mail: jbaldinger@carltonfields.com

**Attorneys for Nextel South Corp.**

OF COUNSEL:

James W. Cannon, Jr.
State Bar No. 03746600
Joseph R. Knight
State Bar No. 11601275
William P. Johnson
State Bar No. 24002367
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
512.322.2500
512.322.2501 Facsimile

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

CASE NO.: 03-010994 CACE (02)

    Plaintiff,

CLASS REPRESENTATION

v.

NEXTEL SOUTH CORP., INC.,
a foreign corporation,

    Defendant,

v.

SUNBELT and SOUTHEAST WIRELESS,
INC., d/b/a MOBILE ONE,

    Third Party Defendants.

_____/

## AGREED ORDER CHANGING CASE CAPTION
## AND DISMISSING CLAIMS WITH PREJUDICE

THIS CAUSE came before the Court on the parties' Joint Motion to Change Case Caption

and Enter Stipulation of Dismissal ("Joint Motion"), requesting that the caption in the case be

modified to reflect the changes in parties and claims and requesting the dismissal of certain claims

pursuant to the Stipulation and Agreement of Class Action Settlement (the "Stipulation") executed by

the parties on or about April ___, 2004.

Plaintiff Michael Penzer ("Plaintiff") filed this lawsuit against Defendant Nextel South Corp.

("Nextel") seeking damages pursuant to the Telephone Consumer Protection Act ("TCPA"). Nextel

has filed an answer to Plaintiff's claims. Additionally, Nextel filed a third-party complaint against

1

EXH.: 1

Sunbelt Communications and Marketing L.L.C. ("Sunbelt") and Southeast Wireless, Inc. d/b/a Mobile One ("Mobile One")   Mobile One has filed an answer to Nextel's claims.  Sunbelt has not appeared in this lawsuit to date

The Court having reviewed and considered the Agreed Motion, and being otherwise duly advised in the premises, it is hereby

ORDERED and ADJUDGED that the Clerk of Court shall change the caption of this case in the Clerk's files and on all further orders, motions, and documents of any kind, to read as follows

**MICHAEL PENZER, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**SOUTHEAST WIRELESS, INC.,**

**Defendant / Third-Party Plaintiff,**

**v.**

**SUNBELT COMMUNICATIONS AND MARKETING LLC,**

**Third-Party Defendant**

The Court further ORDERS the following:

(i)     Plaintiff's claims against Nextel are hereby DISMISSED with prejudice;

(ii)    Nextel's claims against Mobile One are hereby DISMISSED without prejudice;

(iii)   Nextel's claims against Sunbelt are hereby DISMISSED without prejudice, and

(iv)    all costs in connection with the above-referenced claims shall be borne by the

parties that incurred same.

DONE AND ORDERED in Chambers at Broward County, Florida, this ____ day of

_____ 2004.


                                                    _____   _____
                                                    VICTOR TOBIN
                                                    Circuit Court Judge

Copies Furnished To:

Marc A. Wites, Esq.
Paul J. Geller, Esq.
Alan M. Burger, Esq.
James B. Baldinger, Esq.

# EXHIBIT J

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

       CASE NO.: 03-010994 CACE (02)

      Plaintiff,

       CLASS REPRESENTATION

v.

SOUTHEAST WIRELESS, INC.,

      Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

      Third Party Defendant.

_____/

## FINAL JUDGMENT AGAINST
## DEFENDANT SOUTHEAST WIRELESS, INC. D/B/A MOBILEONE

THIS MATTER came before the Court on _____, 2004, and the Court

after reviewing the pleadings and being fully advised in the premises,

IT IS HEREBY ordered and adjudged as follows:

1.    A Final Judgment is hereby entered in favor of Plaintiff Michael Penzer and the

Class and against Defendant Southeast Wireless, Inc., d/b/a MobilOne, 2 Oakwood Boulevard,

Suite 160, Hollywood, FL 33020, tax identification no. 65-0951886.

2.    Plaintiff and the Class shall recover from Southeast Wireless, Inc. d/b/a

MobileOne the amount of twelve million dollars ($12,000,000.00) that shall bear post-judgment

EXH: J

CASE NO.:03-010994-02

interest at the maximum rate of allowed under Florida law. Execution shall be subject to the terms and conditions of the parties' April 21, 2004 Settlement Stipulation.

DONE AND ORDERED in Chambers at Broward County, Florida this ____ day of _____, 2004.

VICTOR TOBIN

MAY 1 8 2004

A TRUE COPY

_____
HON. VICTOR TOBIN
CIRCUIT COURT JUDGE

2

# EXHIBIT K

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

   Plaintiff,

v.

SOUTHEAST WIRELESS, INC.,

   Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

   Third Party Defendant.

_____/

CASE NO. 03-010994 CACE (02)

CLASS REPRESENTATION

## ASSIGNMENT

Defendant Southeast Wireless, Inc. (hereinafter referred to as "Defendant"), by this instrument

and subject to the reservations below and as contained in the parties' April 24, 2004 Settlement

Stipulation assigns and transfers to Plaintiff, individually and as representative of the Class in the

above-captioned action, (hereinafter referred to as "Plaintiff") all of its rights, and causes of action or

claims in tort, contract, equity and law, and any other claim which may exist, which it ever had, has,

or may have, against CNA and/or Transportation Insurance Company and/or any of their subsidiary

companies, officers, agents, employees or servants (collectively, "Insurers") regarding the failure to

provide a defense to and coverage for Plaintiff's claims in the above-captioned action without

recourse or warrant of any nature or kind. However, this assignment does not include, and does not

assign, any claims that Defendant may have against the Insurers for bad faith in relation to this action

EXH. K

and as set forth in the parties' April 21, 2004 Settlement Stipulation.

This assignment is not to be construed as a release of the Defendant or any of its insurers.

DATED this _____ day of _____, 2004.

**SOUTHEAST WIRELESS, INC. D/B/A MOBILEONE**

_____
Sign Name

_____
Print Name

_____
Title

_____
Date

STATE OF FLORIDA

COUNTY OF _Broward_

Being first duly sworn _____, who is personally know to

me or who has produced _____ as identification, deposes and says

that the attached Assignment is true and correct in all respects.

SWORN TO AND SUBSCRIBED before me this ____ day of _____,

2004.

_____
Signature of Notary Public

ALAN M. BURGER
MY COMMISSION # CC 934119
EXPIRES May 7, 2004
1-800-3-NOTARY   FL Notary Service & Bonding, Inc

_____
Name of Notary (print or type)

My Commission Expires:

2 of 3

MICHAEL PENZER

_Sign Name_

5/15/04

Date

STATE OF FLORIDA

COUNTY OF _Broward_

Being first duly sworn, _Michael Penzer_, who is personally known to me or who has produced _____ as identification, deposes and says that the attached Assignment is true and correct in all respects

SWORN TO AND SUBSCRIBED before me this _15_ day of _May_, 2004

Signature of Notary Public

Name of Notary (print or type)

My Commission Expires:

MARC A. WITES
MY COMMISSION EXPIRES
September 17, 2004
#CC 967864
NOTARY PUBLIC, STATE OF FLORIDA

3 of 3

# EXHIBIT L

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

       Plaintiff,

v.

SOUTHEAST WIRELESS, INC.,

       Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

       Third Party Defendant.

_____/

CASE NO.: 03-010994 CACE (02)

CLASS REPRESENTATION

## AGREED FINAL ORDER APPROVING SETTLEMENT, CERTIFYING SETTLEMENT CLASS, ENTERING PERMANENT INJUNCTION AND APPROVING AWARD OF ATTORNEYS' FEES AND COSTS

In light of the Court's review and consideration of the parties' Settlement Stipulation and Agreement of Compromise, Settlement and Release (the "Settlement Stipulation"), the Court's May 18, 2004 Agreed Order Regarding Preliminary Approval of Class Action Settlement Notice, and the memoranda and arguments of counsel presented throughout this action, IT IS HEREBY ORDERED and ADJUDGED as follows:

1.     This class action settlement allows Plaintiff Michael Penzer to pursue claims on behalf of himself and the Class against the insurer of Defendant Southeast Wireless, Inc. pursuant to the Coblentz agreement entered by the parties.

2.     Pursuant to Rule 1.220 of the Florida Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Stipulation, is hereby finally approved as a fair, reasonable, and adequate settlement of this case in light of the factual, legal, practical,

EXH. L

and procedural considerations raised by this case. The Settlement Stipulation is incorporated by reference into this Order (with capitalized terms as set forth in the Settlement Stipulation) and is hereby adopted as an Order of this Court.

3.     All findings of fact and law set forth in the Court's May 18, 2004 Agreed Order Regarding Preliminary Approval of Class Action Settlement Notice are incorporated herein by reference.

4.     The Court finds that notice previously given to Class Members in this action was the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 1.220 of the Florida Rules of Civil Procedure.

5.     After due consideration of the fact that Plaintiff and his counsel secured all possible relief that the Class could reasonably obtain, the Settlement Stipulation should be and is approved and shall govern all issues regarding the settlement and all rights of the parties, including the Class Members. Each Class Member (except those who have excluded themselves from the Class) shall be bound by the Settlement Stipulation, including the releases and covenants not to sue in the Settlement Stipulation, which are hereby incorporated by reference and become part of the final judgment in this action.

6.     In accordance with the Settlement Stipulation, and if Plaintiff succeeds in obtaining relief from Defendant Southeast Wireless' Insurer through the Coblentz action, Plaintiff's counsel shall cause the Plaintiff and the Class' relief, as well as attorneys' fees, costs and any other distributions required by the Settlement Stipulation, to be disbursed in accordance with the Settlement Stipulation.

7.     The Court will enter judgment in the form attached to the Settlement Stipulation and this Order as Exhibit A. The judgment shall be without taxable fees or costs to any Party.

CASE NO.:03-010994-02

8.      This Order constitutes a permanent injunction against Defendant Southeast Wireless from future transmissions of unsolicited advertisements via facsimile. In addition to the parties' agreement as set forth in the Settlement Stipulation for such permanent injunction, the Court finds that (a) absent an injunction, Plaintiff and the Class will suffer irreparable harm, (b) Plaintiff and the Class have a clear legal right to the relief sought, (c) an injunction will serve the public interest, and (d) there is no adequate remedy at law that serves the purpose of an injunction.

9.      The Court further finds that the award of attorneys' fees as set forth in the Settlement Stipulation is fair and reasonable and, therefore approves such award. This finding is based on (a) the extra ordinary relief obtained for Plaintiff and the Class by Class Counsel, (b) an agreement to the award by the parties, and (c) the lack of any timely objection by any person or entity to the award.

10.      This Court hereby retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Stipulation. The Court further retains jurisdiction to enforce this Order.

DONE AND ORDERED in Chambers at Broward County, Florida this ___ day of _____, 2004.

VICTOR TOBIN

AUG - 9 2004

_____
HON. VICTOR TOBIN     A TRUE COPY
CIRCUIT COURT JUDGE

Cc:      Copies Furnished To:

Marc A. Wites, Esq.
Paul J. Geller, Esq.
Alan M. Burger, Esq.
James B. Baldinger, Esq.

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

MICHAEL PENZER, Individually and on
Behalf of All Others Similarly Situated,

       CASE NO.: 03-010994 CACE (02)

       Plaintiff,

       CLASS REPRESENTATION

v.

SOUTHEAST WIRELESS, INC.,

       Defendant/Third-Party Plaintiff,

v.

SUNBELT COMMUNICATIONS AND
MARKETING LLC,

       Third Party Defendant.

## FINAL JUDGMENT AGAINST
## DEFENDANT SOUTHEAST WIRELESS, INC. D/B/A MOBILEONE

THIS MATTER came before the Court on _____, 2004, and the Court

after reviewing the pleadings and being fully advised in the premises,

IT IS HEREBY ordered and adjudged as follows:

1.    A Final Judgment is hereby entered in favor of Plaintiff Michael Penzer and the

Class and against Defendant Southeast Wireless, Inc., d/b/a MobilOne, 2 Oakwood Boulevard,

Suite 160, Hollywood, FL 33020, tax identification no. 65-0951886.

2.    Plaintiff and the Class shall recover from Southeast Wireless, Inc. d/b/a

MobileOne the amount of twelve million dollars ($12,000,000.00) that shall bear post-judgment

Exh A

CASE NO.:03-010994-02

interest at the maximum rate of allowed under Florida law. Execution shall be subject to the

terms and conditions of the parties' April 21, 2004 Settlement Stipulation.

DONE AND ORDERED in Chambers at Broward County, Florida this ___ day of

_____, 2004.

VICTOR TOBIN

MAY 1 8 2004

A TRUE COPY

HON. VICTOR TOBIN
CIRCUIT COURT JUDGE

# EXHIBIT M

DOI FILE #:

### *CIVIL REMEDY NOTICE OF INSURER VIOLATION*
**INSTRUCTIONS FOR COMPLETING THIS FORM ON REVERSE SIDE**

Date Submitted: 2 | 3 | 4                     INS. CO. FEIN #:

1. **Company:** Transportation Insurance Company
   Street Address: c/o CNA, P.O. Box 7430
   City/State/Zip: San Francisco CA 94120
   Individual(s) Involved: Harbinder K. Johal

   This notice is given for the purpose of *perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.*

2. **Complainant:**  ☑ Insured   ☐ Third Party   ☐ Other
   Insured Name: Southeast Wireless, Inc.               Policy No.: 2057559063
   Complainant Name: Same as above                      Claim No.: AI001190CB
   Attorney (if any): Burger, Trailor & Farmer
   Street Address: 1607 Forum Place, Suite 404
   City/State/Zip/Cnty: West Palm Beach       FL       33401

3. **TYPE OF INSURANCE:**
   ☐ Accident & Health                 ☐ Life & Annuity          ☐ Residential Property & Casualty
   ☐ Medicare Supplement               ☐ Auto                    ☐ Commercial Property & Casualty
   ☑ Miscellaneous _____

4. **REASON FOR NOTICE:**
   ☐ Cancellation/Non-renew            ☐ Claim Denial            ☐ Unsatisfactory Settlement Offer
   ☑ Claim Delay                       ☐ Unfair Trade Practice   ☐ Other _____

5. PURSUANT TO SECTION 624.155(2)(b)1, F.S. please provide the statutory provision, including the specific language of the statute, which the insurer allegedly violated.
   List Statue number(s): 627.426; 626.9541(1)(i); and 627.155(1)(b)
   Statute Language: _____
   _____
   _____

6. Briefly reference the specific policy language that is relevant to the violation, if any.  If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.
   _____
   _____
   _____

7. Briefly describe the facts and circumstances giving rise to the violation.
   The insured forwarded a lawsuit in which the insured was named as a defendant. The insurer indicated that it knew or should have known of coverage defense by virtue of a letter of 12/18/3. The insurer has failed or refused to either provide a defense, under reservation of rights, or timely deny or take any appropriate action as required by Florida Statutes

DI4-363
(rev. 11/99)

EXH. I

# EXHIBIT N

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Florida Department of Insurance
Consumer Assistance/Civil Remedy Section
Larson Building, 200 E. Gaines St.
Tallahassee, FL  32399-0322

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery   FEB 5 - 2004

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

102595-01-M-0381

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

MICHAEL PENZER, AS ASSIGNEE OF SOUTHEAST WIRELESS, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF <u>BROWARD</u>
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Wites, Kapetan & Friedland, P.A.
1701 West Hillsboro Boulevard, Suite 305
Deerfield Beach, FL 33442
Tel.: 954-570-8989

## DEFENDANTS

TRANSPORTATION INSURANCE COMPANY, an Illinois Corporation

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT <u>COOK COUNTY</u>
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

0'04cv61243 AJ/STE

**(d)** Circle COUNTY WHERE ACTION AROSE:  DADE, MONROE, ~~BROWARD~~, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OCKEECHOBEE HIGLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | A FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury-- Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury-- Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **A PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates, etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers Liability | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 650 Airline Regs | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | [ ] 690 Other | **B SOCIAL SECURITY** | [ ] 850 Securities/Commodities Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | **A LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS--Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Other | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

LENGTH OF TRIAL
Via 3 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
[ ] UNDER F.R.C.P. 23

**DEMAND >$75,000** Check YES only if demanded in complaint:

JURY DEMAND: [X] YES  [ ] NO

## VIII. RELATED CASE(S) (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 9/21/04

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICIAL USE ONLY

RECEIPT # 53974   AMOUNT 150.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____