UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 04-61243-CIV-JORDAN

| | |
|---|---|
| MICHAEL PENZER, | ) |
|       Plaintiff | ) |
| vs. | ) |
| TRANSPORTATION INSURANCE CO., | ) |
|       Defendant | ) |
| vs. | ) |
| SOUTHEAST WIRELESS, INC., et al., | ) |
|       Third-Party Defendants | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AS TO COVERAGE**

The coverage issue in this insurance dispute is whether, under Florida law, the transmission of unsolicited commercial advertisements by facsimile constitutes "oral or written publication of material that violates a person's right to privacy," within a commercial liability policy's coverage for "advertising injury," where it is undisputed that the advertisements did not disclose any private facts about anyone. I conclude that the answer is no.

Accordingly, the partial summary judgment motion of Transportation Insurance Co. as to coverage [D.E. 62] is GRANTED, and the corresponding partial summary judgment motion of the plaintiffs [D.E. 58] is DENIED. All other pending motions are DENIED AS MOOT.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1265 (11th Cir. 2007). The facts set forth below are not disputed.

**II. FACTS**

Enacted in 1991 by Congress, the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., provides in relevant part that it is "unlawful for any person . . . to use any telephone facsimile

machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." *See* § 227(b)(1)(C). An unsolicited advertisement is "any material advertising the commercial availability of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *See* § 227(a)(5). The TCPA allows a private right of action for a violation, and permits damages comprising "actual monetary loss" or statutory damages of $500 per violation, whichever is greater. *See* § 227(b)(3)(A)-(C). If a court finds that a defendant violated the TCPA willfully or knowingly, it may, in its discretion, increase the award to an amount not exceeding treble damages. *See id.*

In June of 2003, Michael Penzer filed a class action complaint in a Florida state court against Nextel South Corporation. Mr. Penzer alleged that, in May of 2003, Nextel (or one of its authorized agents) sent him an unsolicited facsimile advertisement (a so-called "junk fax") for wireless telephone services in violation of the TCPA. Mr. Penzer also alleged that Nextel's potential customers were not afforded the option of whether to receive the facsimile advertisements, since Nextel did not seek or receive such permission from those customers. Finally, Mr. Penzer alleged that Nextel acted willfully and knowingly. Mr. Penzer requested actual or statutory damages, to be trebled due to Nextel's alleged willful and knowing violation of the TCPA.

Several months later, Nextel filed a third-party complaint against Sunbelt, a "blast-fax" advertiser, and Southeast Wireless, an authorized Nextel agent, seeking indemnity and contribution from any liability Nextel might have to the class in the *Penzer* action.[1] Nextel alleged that Southeast hired Sunbelt to create the unsolicited facsimile advertisement, and that Nextel did not authorize the transmission of the facsimiles or the use of its name or marks. According to the authorized representative agreement between Nextel and Southeast, Southeast was not allowed to use Nextel's name, trademarks, or service marks without Nextel's prior written agreement.

In December of 2003, Mr. Penzer filed a third-party complaint against Southeast on behalf of himself and the class. Mr. Penzer sought damages and injunctive relief against Southeast under the TCPA.

Southeast requested that its commercial liability insurer, Transportation Insurance Company,

---

[1] Sunbelt was never served with process.

defend the class action complaint filed by Mr. Penzer. In February of 2004, Transportation disclaimed coverage on various grounds, and declined to provide Southeast with a defense as to the *Penzer* class action or the third-party complaint filed by Nextel.

In April of 2004, Southeast and Mr. Penzer entered into a settlement stipulation which included an agreement based on *Coblenz v. American Surety Co. of New York,* 416 F.2d 1059 (5th Cir. 1969). Pursuant to the stipulation, Mr. Penzer agreed to release Southeast from any liability arising out of the alleged TCPA violations, and in exchange Southeast assigned its right to seek insurance coverage under the policy issued by Transportation. In May of 2004, pursuant to the stipulation, Southeast consented to a $12 million judgment, representing the alleged total number of unsolicited facsimile advertisements sent (24,000) multiplied by $500, the amount of statutory damages allowed by the TCPA for each violation. In August of 2004, a Florida state court issued a final order approving the settlement, certifying a settlement class, entering a permanent injunction, and approving an award of attorney's fees and costs. The state court also dismissed Mr. Penzer's claims against Nextel, as well as Nextel's claims against Southeast and Sunbelt.

In September of 2004, Mr. Penzer, as the assignee of Southeast and pursuant to the settlement stipulation, filed this declaratory judgment action against Transportation. The complaint alleges that Southeast caused 24,000 unsolicited facsimile advertisements to be sent to Mr. Penzer and the class members. The complaint further alleges that coverage for Southeast's conduct exists under the policy's "advertising injury" provision, i.e., "oral or written publication of material that violates a person's right of privacy."[2]

Transportation answered the complaint, and filed a declaratory judgment counterclaim against Mr. Penzer. In its counterclaim, Transportation alleges that it has no obligation under the policy to defend or indemnify Southeast for any violations of the TCPA.

### III. CONSTRUING INSURANCE POLICIES UNDER FLORIDA LAW

In construing an insurance policy, Florida courts look to the "plain language" of the document. The policy is "read as a whole," endeavoring to "give every provision its full meaning and

---

[2] Mr. Penzer also alleged coverage under the "property damage" provisions of the policy, but that claim has since been withdrawn.

3

operative effect." *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.,* 845 So.2d 161, 165, 166 (Fla. 2003). *See also* Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy[.]"); *Duran v. Owners Ins. Co.,* 779 So.2d 307, 308 (Fla. 2nd DCA 1999) (insurance policies are "reviewed as a whole, viewing all words in context"). "It is the policy's terms which define the coverage, not the insured's reasonable expectations." *State Farm Fire & Cas. Co. v. Castillo,* 822 So.2d 242, 245 (Fla. 3rd DCA 2002). *See also Deni Ass. of Florida v. State Farm Fire & Cas. Co.,* 711 So.2d 1135, 1140 (Fla. 1998) (rejecting the doctrine of "reasonable expectations," under which the "insured's expectations as to the scope of coverage is upheld provided that such expectations are objectively reasonable").

In Florida, whether or not a policy provision is ambiguous is a question of law. *See Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228, 1246 (11th Cir. 2003). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous. Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the insurer." *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000) (citations omitted). The absence of a definition, however, does not necessarily mean that a term is ambiguous. *See Deni Ass.,* 711 So.2d at 1139. Similarly, "just because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." *Swire Pacific,* 845 So.2d at 165.

## IV. DISCUSSION

The commercial liability policy that Transportation issued to Southeast affords coverage for "damages because of . . . 'advertising injury' to which this insurance applies." It specifically states that Transportation "shall have no duty to defend [Southeast] against any 'suit' seeking damages for . . . 'advertising injury' to which this insurance does not apply."

### A. THE RELEVANT POLICY LANGUAGE

The policy defines "advertising injury" as " injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. *Oral or written publication of material that violates a person's right of privacy*;

      c. Misappropriation of advertising ideas or style of doing business; or

      d. Infringement of copyright, title, or slogan."

(emphasis added). The terms "publication," "material," and "right of privacy" are not defined by the policy.

There are two relevant exclusions in the policy for "advertising injury." The first excludes coverage for "advertising injury" arising "out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." The second excludes coverage for "advertising injury" arising "out of breach of contract other than misappropriation of advertising ideas under an implied contract."

The policy has liability limits of $1 million for all "personal and advertising injury" to any one person or organization, subject to an annual aggregate limit of $2 million (other than products and completed operations, which are not relevant here).

### B. THE PARTIES' POSITIONS AND CASES FROM OTHER JURISDICTIONS

The plaintiffs argue that the transmission of unsolicited commercial advertisements by facsimile constitutes "oral or written publication of material that violates a person's right to privacy." Their argument is as follows. First, the commercial advertisement is "material." Second, the transmission of the advertisement by facsimile is a "publication." Third, the sending of an unsolicited facsimile violates the "right of privacy" of the recipient, on a theory that the right of privacy includes the right to be left alone. At the very least, the plaintiffs say, the phrase "right of privacy" is ambiguous, and therefore should be interpreted in their favor to provide coverage for Southeast's violations of the TCPA.

Various federal and state courts, looking at identical or similar policy language, have adopted the interpretation urged by the plaintiffs here, most in cases involving a duty to defend. Among the decisions favorable to the plaintiffs is an unpublished Eleventh Circuit decision applying Georgia law. *See, e.g., Park University Ent., Inc. v. American Casualty Co.,* 442 F.3d 1239, 1244-51 (10th Cir. 2006) (Kansas law – duty to defend – "oral or written publication of material that violates a person's right to privacy"); *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 860 N.E. 2d 307, 314-23 (Ill. 2006) (Illinois law – duty to defend – "oral or written publication, in any manner, of material that

5

violates a person's right of privacy"); *Hooters of Augusta, Inc. v. American Global Ins. Co.,* 2005 WL 3292089, *2-*9 (11th Cir. 2005) (unpublished) (Georgia law – duty to indemnify – "oral or written publication of material that violates a person's right of privacy"); *Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co.,* 269 F.Supp.2d 836, 846-47 (N.D. Tex. 2003) (Texas law – duty to defend – "oral or written publication of material that violates a person's right of privacy"), *aff'd,* 76 Fed. Appx. 960 (5th Cir. 2004). Other courts have come to the same conclusion, though in cases involving different policy language. *See, e.g., Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network,* 401 F.3d 876, 879-883 (8th Cir. 2005) (Missouri law – duty to defend – "private nuisance . . . and invasion of rights of privacy").

Transportation, not surprisingly, argues for a different reading of the relevant policy language. Transportation's argument runs as follows. First, the phrase "oral or written publication of material that violates a person's right of privacy," read as a whole and in context, provides coverage only for injuries to privacy rights caused by the content of the material. Second, Florida law interpreting the phrase "publication . . . in violation of an individual's right of privacy" makes clear that coverage exists only when private matters about one person are communicated to another person. Although Southeast's conduct in having the commercial advertisements sent by facsimile may have violated the TCPA, there is no coverage under the policy because there were no content-based privacy violations.

The reading advocated by Transportation is supported by several federal and state cases involving identical or similar policy language. *See, e.g., American States Ins. Co. v. Capital Associates,* 392 F.3d 941-43 (7th Cir. 2004) (Illinois law – duty to defend – "oral or written publication of material that violates a person's right to privacy"); *Terra Nova Ins. Co. v. Metropolitan Antiques, LLC,* 2006 WL 280967, *2-*5 (Mass. Super. Ct. 2006) (New Jersey law – duty to indemnify – "oral or written publication of material that violates a person's right of privacy"). Other courts have reached the same result, but in cases with different policy language. *See, e.g., Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 639-43 (4th Cir. 2005) (Virginia law – duty to defend and duty to indemnify – "making known to any person or organization written or spoken material that violates a person's right to privacy"); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 2007 WL 564075, *4-*6 (W.D. Wash. 2007) (Washington law – duty to defend and duty to

indemnify – "making known to any person or organization covered material that violates a person's right to privacy"); *ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App.4th 137, 147-54 (Cal. Ct. App. 2nd Div. 2007) (California law – duty to defend – "making known to any person or organization covered material that violates a person's right to privacy").

Both sides, then, have support for their respective positions.[3] A leading insurance treatise, aside from listing some of the cases, has apparently not taken a definitive position on which line of cases is more persuasive, *see* L. RUSS, 9A COUCH ON INSURANCE § 129:8 (Nov. 2006), but one group of commentators believes that the Seventh Circuit's decision in *American States* – a decision which favors Transportation here – was correctly decided. *See* W. Block, "The Duty to Defend Advertising Injuries Caused by Junk Faxes: An Analysis of Privacy, Spam, Detection, and Blackmail," 27 WHITTIER L. REV. 925, 930-32 (Summer 2006).

### C. DISCUSSION

As noted earlier, in *Hooters,* 2005 WL 3292089, at *2-*9, the Eleventh Circuit applied Georgia law and concluded that policy language identical to the language in Transportation's policy provided coverage for violations of the TCPA. *Hooters* is an unpublished decision, and it is not controlling here for two reasons. First, *Hooters* did not address the main argument made by Transportation here. *See* 2005 WL 3292089, at *6 ("We do not need to discuss the Seventh and Fourth Circuit opinions at length, since American Global does not contend that the insurance contract's reference to 'violations of privacy' does not encompass intrusions into a person's private domain. Rather, American Global's argument is that a violation of the TCPA is not the kind of intrusion into seclusion that the policy covers. Because the chief aim in contract interpretation is to discern and implement the intent of the parties, we decline to lend the contract a meaning that neither party has suggested it has.") (citations to record omitted). Second, *Hooters* involved Georgia law, and, as explained below, Florida law calls for a different result.

---

[3] The federal and state cases which have decided the issue presented here are collected and discussed in R. Johan Conrod, Jr., "Insurance Coverage of Claims of Violations of the Telephone Consumer Protection Act," 3 A.L.R. 6th 625 (2005 & 2007 Supp.), and W. Block et al., "The Unsettling Fax About Coverage Claims Under the Telephone Consumer Protection Act," 35 BRIEF 13 (Winter 2005).

### 1. THE THIRD DISTRICT'S DECISION IN *COMPUPAY*

In Florida, the common-law tort of invasion of privacy includes four distinct claims: "(1) appropriation – the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion – physically or electronically intruding into one's private quarters; (3) public disclosure of private facts – the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye – publication of facts which place a person in a false light even though the facts themselves may not be defamatory." *Allstate Ins. Co. v. Ginsberg,* 863 So.2d 156, 162 (Fla. 2003).

In *State Farm Fire & Cas. Co. v. Compupay, Inc.,* 654 So.2d 944 (Fla. 3rd DCA 1995), an insured brought an action against its insurer seeking to establish the insurer's duty to defend against a former employee's allegations of sexual harassment and discrimination. One of the "personal injury" clauses in the policy provided coverage for "a publication or utterance in violation of an individual's right of privacy." *Id.* at 948. The Third District ruled that the employee's allegations of offensive and undesired touching were not covered by this policy language, which was "clear and unambiguous." *Id.* at 949. As the Third District explained:

> "*The clause does not cover causes of action under the broader umbrella of invasion of privacy torts. Thus, the policy covers actions within traditional invasion of privacy tort: a publication of personal matter.* It does not include coverage for a physical invasion of the complainant's person unaccompanied by the other elements of the cause of action. . . . [The employee's] complaint lacks any factual allegations of publication which would bring the claim within this provision."

*Id.* (emphasis added).

As I read it, the Third District's decision in *Compupay* rested on two independent bases: that the clause only covered invasion of privacy actions involving "publication of a personal matter;" and that the employee had not alleged any "publication." At oral argument I suggested to Transportation's counsel that, given the lack of "publication" in *Compupay,* the Third District's interpretation of the policy language might be dicta. On reflection, however, the better way to read the Third District's opinion is as providing alternative holdings to support the ultimate conclusion that there was no duty to defend. And under Florida law, alternative holdings are binding. *See, e.g., Parsons v. Realty Corp.,* 143 So. 912, 920 (Fla. 1932) (on rehearing); *Patterson v. Brafman,* 530

So.2d 499, 501 n.4 (Fla. 3rd DCA 1988); *Clemons v. Flagler Hospital, Inc.,* 385 So.2d 1134, 1136 n.3 (Fla. 5th DCA 1980). This means that the Third District's construction of the policy language constitutes a binding holding.

If there were any doubts about the binding nature of this holding in *Compupay,* any such doubts have been erased by the Florida Supreme Court, which has read *Compupay* as a decision construing policy language: "*Compupay* is not a decision directly addressing the issue of whether unwelcome conduct including touching in a sexual manner and sexually offensive comments state a cause of action for the Florida common law tort claim of invasion of privacy. . . . [W]e note that in *Compupay*, the [Third District], basing its decision on the specific language of the insurance policy at issue in that case, found that the policy did not cover the cause of action under the broad umbrella of invasion of privacy torts." *Ginsberg,* 863 So.2d at 162. Again, then, the Third District's conclusion in *Compupay* – that "publication or utterance in violation of an individual's right of privacy" covers "actions within traditional invasion of privacy tort: a publication of personal matter" – is a binding holding.

A district court sitting in diversity should follow the decision of a Florida intermediate appellate court "unless 'there is some really persuasive indication that the Florida Supreme Court would go the other way.'" *Gares v. Allstate Ins. Co.,* 365 F.3d 990, 995 (11th Cir. 2004) (citation omitted). There is no such persuasive indication here, so I follow the Third District's decision in *Compupay*.[4]

I recognize that under Florida law "tort law principles do not control judicial construction of insurance contracts," *FCCI Ins. Co. v. Horne,* 890 So.2d 1141, 1143 (Fla. 5th DCA 2004), but *Compupay* is not a tort case; as the Florida Supreme Court said in *Ginsberg, Compupay* is an insurance case.[5]

---

[4] Even if the language in *Compupay* construing the policy language is dicta, it is persuasive dicta, and I choose to follow it in the absence of any other Florida decisions on point. *See, e.g., General Star Indemnity Co. v. West Florida Village Inn, Inc.,* 874 So.2d 26, 35 n.8 (Fla. 2nd DCA 2004) (following dicta from federal district court case because reasoning was persuasive).

[5] Let me also add that if (as the plaintiffs suggest) Transportation is guilty of trying to use Florida tort law principles to support its reading of the relevant language in the policy, the

## 2. WHY *HOOTERS* IS NOT PERSUASIVE

Even if I have read *Compupay* incorrectly, my conclusion remains the same, as I have decided not to follow the Eleventh Circuit's unpublished decision in *Hooters*. Under Eleventh Circuit law, an unpublished decision is not "controlling authority" and is "persuasive only insofar as [its] legal analysis warrants." *Bonilla v. Baker Concrete,* 2007 WL 1544173, *4 n.7 (11th Cir. 2007).[6] *Hooters* should not dictate the result here because its analysis is not persuasive. The *Hooters* panel, like the plaintiffs here, did not, in my view, properly analyze the policy language in context. Although the tort of "invasion of privacy" in Florida includes "intrusion – physically or electronically intruding into one's private quarters,"*Ginsberg,* 863 So.2d at 162, the policy does not cover all invasions of privacy. It covers only "oral or written publication of material that violates a person's right to privacy." Read as a whole, and in context, as Florida law requires, *see Duran,* 779 So.2d at 308, this phrase refers to invasions of privacy caused by disclosure of the content of material that is published or disseminated. The terms "publication," "material," and "right of privacy" in Transportation's advertising injury coverage can be each be defined individually and separately, so that when those individual definitions are collectively aggregated, the disputed phrase can mean what the plaintiffs assert. But such a reading cannot survive a proper contextual analysis. *Cf. Resource Bankshares,* 407 F.3d at 640 ("Every word in this sentence contains different meanings, but all read clearly in context. The real question, then, is whether, when read *in context*, a reasonable purchaser of insurance would believe that the sort of privacy interests protected by the policies overlap with the sort of privacy with which the TCPA is concerned.") (emphasis in original). To paraphrase H.L.A. Hart, one of the great legal philosophers of our time, "words can only be understood in the context of sentences in which they have meaning." N. LACEY, A LIFE OF H.L.A. HART 156 (Oxford University Press 2004).

Thus, even if I were writing on a blank slate, I would agree with Transportation that the

---

plaintiffs are similarly guilty of trying to use the TCPA to suggest that Southeast's violations constituted invasions of privacy under the policy (pursuant to an intrusion/seclusion theory).

[6] Thus, when warranted, the Eleventh Circuit itself has refused to follow prior unpublished decisions. *See, e.g., Twin City Fire Ins. Co. v. Ohio Cas. Co., Inc.,* 480 F.3d 1254, 1260 n.3 (11th Cir. 2007); *Resolution Trust Corp. v. Fragetti,* 49 F.3d 715, 718 (11th Cir. 1995).

phrase "oral or written publication of material that violates a person's right of privacy" is unambiguous, and that advertising injury coverage under this provision exists only when the content of the material published violates a person's right to privacy. Having reviewed all of the relevant cases on the issue, the most persuasive analysis, in my view, is that of Judge Easterbrook in *American States*:

> "Privacy" is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. A person who wants to conceal a criminal conviction, bankruptcy, or love affair from business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted pregnancy, has both informational (secrecy) and locational (seclusion) components, with an overlay of substance (the objection to governmental regulation).
>
> American States contends that its advertising-injury coverage deals with secrecy rather than seclusion. The language reads like coverage of the tort of "invasion of privacy," where an oral or written statement reveals an embarrassing fact, or . . . brings public attention to a private figure, or casts someone in a false light through publication of true but misleading facts. Perhaps the language reasonably could be understood to cover improper disclosures of Social Security numbers, credit records, email addresses, and other details that could facilitate identity theft or spamming.
>
> . . . [The Fourth Circuit in *Int'l Science & Techonology Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146, 1150 (4th Cir. 1997) (dictum)] used the word ["privacy"] in the sense of seclusion: an unexpected fax, like a dangling telephone or knock on the door, can disrupt a householder's peace and quiet, even though it is easy to throw a junk fax, like a piece of junk mail, in the trash without any risk that someone will observe activities that occur inside one's home. [The TCPA], in [§] 227(b)(1)( C), doubtless promotes this (slight) interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipient's ink and paper. . . . But the question is not how the word "privacy" was used in the debates that led to § 227(b)(1)( C), but what the word means in this insurance policy. To say . . . that § 227(b)(1)( C) protects privacy, and then stops the analysis, is to avoid the central question in this case: whether the policy covers the sort of seclusion interest affected by faxed ads.
>
> . . . .

11

> . . . The structure of the policy strongly implies that coverage is limited to secrecy interests. It covers a "publication" that violates a right of privacy. In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant. A late-night knock on the door or other interruption can impinge on seclusion without any need for publication. Contacting one customer at a time may not be "publication" at all for purposes of advertising-injury coverage. Perhaps automated faxes to hundreds of recipients could be deemed a form of publication, but this would be irrelevant to the seclusion interest. To put this differently, § 227(b)(1)( C) condemns a particular means of communicating an advertisement, rather than the contents of that advertisement – while an advertising-injury coverage deals with informational content.

*American States,* 392 F.3d at 941-43 (most internal citations omitted).

There is a further reason why Transportation's reading is the correct one. Under Florida law, clauses within a paragraph of an insurance policy should be read together. *See Execelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 942 (Fla. 1979) ("Pomona Park's argument is misconceived in focusing exclusively on exclusion (h)(1) and representing that it eliminates bar operators from coverage. Rather the provisions of paragraph (h) should be construed together.").[7] Because all of the other "offenses" covered by the "advertising injury" paragraph of the Transportation policy are content-based (defamation, misappropriation of advertising ideas or style of doing business, infringement of copyright), it makes sense to treat the disputed provision here – "oral or written publication of material that violates a person's right to privacy" – as also being content-based. *Cf. Resource Bankshares,* 407 F.3d at 641 ("these four offenses all share the common thread of assuming that the victim of the advertising injury offense is harmed by the sharing of the *content* of the ad, not the mere *receipt* of the advertisement") (emphasis in original).

### V. CONCLUSION

Under Florida law, advertising injury coverage for "oral or written publication of material that violates a person's right of privacy" does not extend to unsolicited facsimile transmissions of

---

[7] The rationale articulated in *Pomona Park* appears to be closely related to the principle of "ejusdem generis," which provides that "where general words follow an enumeration of specific words, the general words are construed as applied to the same kind or class as those that are specifically mentioned." *Fayad v. Clarendon Nat. Ins. Co.,* 899 So.2d 1082, 1089 (Fla. 2005) (applying "ejusdem generis" to ascertain meaning of words in insurance policy).

commercial advertisements.  Transportation therefore does not have a duty to indemnify the plaintiffs for Southeast's violations of the TCPA.[8]

A final judgment will be issued separately.

DONE and ORDERED in chambers in Miami, Florida, this 13th day of July, 2007.

_____
Adalberto Jordan
United States District Judge

Copy to:    All counsel of record

---

[8] In light of my conclusion that there is no coverage, I do not address the additional arguments made by Transportation.